UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE OF CONNECTICUT, *et al.*, | : | CIVIL ACTION NO. |
| | : | 3:16-CV-002056 (VLB) |
| Plaintiffs, | : | |
| | : | |
| v. | : | Hon. Vanessa L. Bryant |
| | : | |
| AUROBINDO PHARMA USA, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | May 1, 2017 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ..................................................................................... 1

SUMMARY OF RELEVANT FACTUAL ALLEGATIONS ............................... 3

ARGUMENT ........................................................................................... 4

I.   PLAINTIFFS' FEDERAL ANTITRUST CLAIMS FAIL AS A
     MATTER OF LAW.............................................................................. 4

     A.   Plaintiffs Do Not Plausibly Allege an Ongoing or
          Threatened Injury, as Required to State a Claim for
          Injunctive Relief ...................................................................... 5

     B.   Plaintiffs Cannot Obtain Monetary Relief Under
          Federal Law............................................................................. 6

     C.   Plaintiffs Lack *Parens Patriae* Standing to Sue on
          Behalf of Their Citizens........................................................... 9

     D.   Plaintiffs Fail to Allege that the States or Those They
          Purport to Represent Have Suffered Antitrust Injury ............... 11

II.  BECAUSE PLAINTIFFS' FEDERAL-LAW CLAIMS FAIL,
     THEIR STATE-LAW CLAIMS ALSO FAIL ....................................... 13

III. PLAINTIFFS' STATE ANTITRUST CLAIMS FAIL ........................... 15

     A.   Plaintiffs Lack Statutory Authority to Seek Damages
          on Behalf of Injured Citizens Under Various State
          Laws ..................................................................................... 15

     B.   Plaintiffs' State Damages Claims on Behalf of Indirect
          Purchasers Are Barred Under Various State Laws.................. 18

     C.   Plaintiffs Lack Standing To Sue on Behalf of
          Governmental Entities Under Various State Laws................... 19

     D.   Plaintiffs Fail To Plausibly Allege a Substantial Effect
          on Intrastate Commerce, as Required Under Various
          State Laws and the Dormant Commerce Clause .................... 20

<u>TABLE OF CONTENTS—Continued</u>

<u>Page</u>

IV.   PLAINTIFFS' STATE CONSUMER PROTECTION CLAIMS
      FAIL ............................................................................................. 21

      A.    Plaintiffs Are Not Entitled to Damages ............................ 24

      B.    Plaintiffs Fail To Plausibly Allege Deceptive Conduct
            as Required Under Various State Laws ............................ 24

      C.    Plaintiffs Fail To Plausibly Allege Unfair or
            Unconscionable Conduct as Required Under Various
            State Laws ............................................................................ 26

      D.    Plaintiffs Lack Statutory Authority to Challenge
            Antitrust Conduct Under Various State Consumer
            Protection Laws .................................................................. 28

      E.    Plaintiffs Fail To Plausibly Allege In-State Injury as
            Required Under Various State Laws ................................. 30

      F.    Plaintiffs Lack Statutory Authority Under Vermont
            Law Because Defendants Do Not Sell Directly to
            Consumers ........................................................................... 31

      G.    Plaintiffs' Claims on Behalf of Indirect Purchasers
            Fail Under the Laws of Several States ............................. 32

CONCLUSION .................................................................................... 33

APPENDIX A: GROUNDS FOR DISMISSAL OF STATE-LAW CLAIMS ................... 37

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

CASES:

*Alaska v. Chevron Chem. Co.,*
    669 F.2d 1299 (9th Cir. 1982) ................................................................. 19

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
    458 U.S. 592 (1982) ...................................................................... 9, 10

*Alsides v. Brown Inst., Ltd.,*
    592 N.W.2d 468 (Minn. Ct. App. 1999) .................................................. 25

*Alvord-Polk, Inc. v. F. Schumacher & Co.,*
    37 F.3d 996 (3d Cir. 1994) ............................................................ 13, 15

*Anheuser-Busch, Inc. v. Abrams,*
    520 N.E.2d 535 (N.Y. 1988) ................................................................ 13

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*
    *Carpenters,*
    459 U.S. 519 (1983) .................................................................... 12, 15

*Atl. Richfield Co. v. USA Petroleum Co.,*
    495 U.S. 328 (1990) ........................................................................ 11

*Berghausen v. Microsoft Corp.,*
    765 N.E.2d 592 (Ind. Ct. App. 2002) .......................................... 18, 28, 32

*Bergstrom v. Noah,*
    974 P.2d 520 (Kan. 1999) .................................................................. 13

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.,*
    476 U.S. 573 (1986) ........................................................................ 21

*Brownsburg Cmty. Sch. Corp. v. Natare Corp.,*
    824 N.E.2d 336 (Ind. 2005) ............................................................... 13

*California v. Frito-Lay, Inc.,*
    474 F.2d 774 (9th Cir. 1973) .............................................................. 17

*California v. Infineon Techs.,*
    531 F. Supp. 2d 1124 (N.D. Cal. 2007) ............................................ 17, 21

*Carell v. Shubert Org., Inc.,*
    104 F. Supp. 2d 236 (S.D.N.Y. 2000) .................................................... 12

iii

TABLE OF AUTHORITIES—Continued

Page(s)

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983)................................................................ 1, 5

*Cohlmia v. Ardent Health Servs., LLC,*
    448 F. Supp. 2d 1253 (N.D. Okla. 2006) ............................... 14

*Connecticut v. Am. Elec. Power Co.,*
    582 F.3d 309 (2d Cir. 2009), *overruled in part on other grounds,*
    564 U.S. 410 (2011)............................................................. 9, 10

*Davis v. Four Seasons Hotel Ltd.,*
    228 P.3d 303 (Haw. 2010).................................................... 14

*Delaney v. Bank of Am. Corp.,*
    766 F.3d 163 (2d Cir. 2014) ................................................ 15

*Elias v. Hewlett-Packard Co.,*
    903 F. Supp. 2d 843 (N.D. Cal. 2012)................................... 25

*Epland v. Meade Ins. Agency Assocs., Inc.,*
    564 N.W.2d 203 (Minn. 1997) ............................................. 15

*Fido's Fences v. Canine Fence Co.,*
    672 F. Supp. 2d 303 (E.D.N.Y. 2009) ................................... 20

*First Med Representatives, LLC v. Futura Med. Corp.,*
    195 F. Supp. 2d 917 (E.D. Mich. 2002) ................................ 14

*Flood v. Kuhn,*
    407 U.S. 258 (1972)............................................................. 21, 31

*Formula One Licensing, B.V. v. Purple Interactive Ltd.,*
    No. C 00-2222 MMC, 2001 WL 34792530 (N.D. Cal. Feb. 6, 2001) ................. 23, 27

*Free v. Abbott Labs., Inc.,*
    176 F.3d 298 (5th Cir. 1999)................................................ 18

*FTC v. Mylan Labs., Inc.,*
    62 F. Supp. 2d 25 (D.D.C. 1999), *modified on other grounds,*
    99 F. Supp. 2d 1 (D.D.C. 1999)........................................... 7, 8

*FTC v. Mylan Labs., Inc.,*
    99 F. Supp. 2d 1 (D.D.C. 1999)........................................... 7, 32

## TABLE OF AUTHORITIES—Continued

Page(s)

*Gano v. Delmas*,
    105 So. 535 (Miss. 1925) ............................................................ 13

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*,
    711 F.3d 68 (2d Cir. 2013) ................................................... 11, 14

*Gelboim v. Bank of Am. Corp.*,
    823 F.3d 759 (2d Cir. 2016) ............................................................ 11

*Govereau v. Wellish*,
    No. 2:12-CV-00805-KJD-VCF, 2012 WL 5215098 (D. Nev. Oct. 19,
    2012) ............................................................................................ 25

*Haigh v. Matsushita Elec. Corp. of Am.*,
    676 F. Supp. 1332 (E.D. Va. 1987) ............................................... 14

*Ham v. JP Morgan Chase Bank N.A.*,
    No. 2:11-CV-01544-KJD-RJJ, 2012 WL 3883480 (D. Nev. Sept. 5,
    2012) ............................................................................................ 25

*Hawaii v. Standard Oil. Co. of Cal.*,
    405 U.S. 251 (1972) ............................................................. *passim*

*Haymond v. Bonneville Billing & Collections*,
    89 P.3d 171 (Utah 2004) ............................................................... 14

*Hicks v. PGA Tour, Inc.*,
    165 F. Supp. 3d 898 (N.D. Cal. 2016) ..................................... 23, 27

*HPC Biologicals, Inc. v. UnitedHealthcare of La., Inc.*,
    194 So. 3d 784 (La. Ct. App. 2016) ............................................... 14

*Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*,
    659 A.2d 904 (N.J. Super. Ct. App. Div. 1995) ............................. 13

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ............................................................. *passim*

*In re Aggrenox Antitrust Litig.*,
    94 F. Supp. 3d 224 (D. Conn. 2015) ........................................ 21, 22

*In re Aggrenox Antitrust Litig.*,
    No. 3:14-md-2516, slip op. (D. Conn. Aug. 9, 2016) ...................... 23

TABLE OF AUTHORITIES—Continued

Page(s)

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   697 F.3d 154 (2d Cir. 2012) ............................................................................ 6

*In re Aluminum Warehousing Antitrust Litig.*,
   833 F.3d 151 (2d Cir. 2016) .................................................................. 22, 23, 27

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
   No. 1:14-md-2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015)........... 20, 21, 30

*In re Cathode Ray Tube ("CRT") Antitrust Litig.*,
   No. C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016),
   *appeal filed sub nom. Indirect Purchaser Plaintiffs v. Toshiba
   Corp.*, No. 16-16427 (9th Cir. Aug. 12, 2016) ........................................... 7

*In re Chocolate Confectionary Antitrust Litig.*,
   602 F. Supp. 2d 538 (M.D. Pa. 2009) ................................................... 29

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015) ................... 14

*In re Dig. Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011) ......................................... 7, 19, 32

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M 02-1486 PJH, 2007 WL 2517851 (N.D. Cal. Aug. 31, 2007)................. 16, 20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   536 F. Supp. 2d 1129 (N.D. Cal. 2008).................................................. 14

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007).................................................. 29

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ................. 30, 31

*In re Microsoft Corp. Antitrust Litig.*,
   No. MDL 1332, 2003 WL 22070561 (D. Md. Aug. 22, 2003) ................... 20

*In re Multidistrict Vehicle Air Pollution*,
   538 F.2d 231 (9th Cir. 1976) ................................................................. 8

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   350 F. Supp. 2d 160 (D. Me. 2004)....................................... 7, 25, 26, 29

TABLE OF AUTHORITIES—Continued

Page(s)

*In re Opana ER Antitrust Litig.*,
    162 F. Supp. 3d 704 (N.D. Ill. 2016) ...................................................................... 22

*In re Packaged Seafood Prods. Antitrust Litig.*,
    No. 15-MD-2670 JLS (MDD), 2017 WL 1010329 (S.D. Cal. Mar. 14,
    2017)........................................................................................................................ 29

*In re Plavix Indirect Purchaser Antitrust Litig.*,
    No. 1:06-cv-226, 2011 WL 335034 (S.D. Ohio Jan. 31, 2011).......................... 23, 27

*In re Refrigerant Compressors Antitrust Litig.*,
    No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) .................. 30, 31

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
    No. 14-md-02503-DJC, 2015 WL 5458570 (D. Mass Sept. 16, 2015) ................... 31

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008)..................................................................... 25

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ..................................................................... 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009)................................................................... 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    787 F. Supp. 2d 1036 (N.D. Cal. 2011)................................................................... 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008)................................................................... 29

*Intervest Fin. Servs. v. S.G. Cowen Sec. Corp.*,
    206 F. Supp. 2d 702 (E.D. Pa. 2002), *aff'd sub nom. InterVest, Inc.*
    *v. Bloomberg, L.P.*, 340 F.3d 144 (3d Cir. 2003)................................................... 17

*Johnson v. Microsoft Corp.*,
    834 N.E.2d 791 (Ohio 2005) ....................................................................... 13, 18, 19

*Kanne v. Visa U.S.A. Inc.*,
    723 N.W.2d 293 (Neb. 2006)................................................................................... 14

*Kinetic Co. v. Medtronic, Inc.*,
    672 F. Supp. 2d 933 (D. Minn. 2009) ..................................................................... 25

<u>TABLE OF AUTHORITIES—Continued</u>

<u>Page(s)</u>

*Knowles v. Visa U.S.A., Inc.,*
    Civ. A. CV-03-707, 2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) .................. 14

*Koling v. Dow Jones & Co.,*
    187 Cal. Rptr. 797 (Ct. App. 1982) .......................................................... 14

*La. Power & Light Co. v. United Gas Pipe Line Co.,*
    493 So. 2d 1149 (La. 1986) ...................................................................... 13

*Lee v. United Church Homes, Inc.,*
    686 N.E.2d 288 (Ohio Ct. App. 1996) ....................................................... 14

*Lerma v. Univision Commc'ns, Inc.,*
    52 F. Supp. 2d 1011 (E.D. Wis. 1999) ...................................................... 14

*Lorix v. Crompton Corp.,*
    736 N.W.2d 619 (Minn. 2007) ........................................................... 13, 15

*Mack v. Bristol-Myers Squibb Co.,*
    673 So. 2d 100 (Fla. Dist. Ct. App. 1996) .............................................. 18

*Major v. Microsoft Corp.,*
    60 P.3d 511 (Okla. Civ. App. 2002) ........................................................ 19

*Marcus v. AT&T Corp.,*
    138 F.3d 46 (2d Cir. 1998) ..................................................................... 15

*Merck & Co. Inc. v. Lyon,*
    941 F. Supp. 1443 (M.D.N.C. 1996) ........................................................ 30

*Miller's Pond Co v. City of New London,*
    873 A.2d 965 (Conn. 2005) ..................................................................... 13

*Missouri ex rel. Koster v. Harris,*
    847 F.3d 646 (9th Cir. 2017), *cert. pet. filed sub nom. Missouri ex
    rel. Hawley v. Becerra,* No. 16-1015 (U.S. Feb. 21, 2017) .............. 10, 11

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) ................................................................................... 6

*Moran v. Prime Healthcare Mgmt., Inc.,*
    208 Cal. Rptr. 3d 303 (Ct. App. 2016) ..................................................... 27

TABLE OF AUTHORITIES—Continued

Page(s)

*Morrison v. Viacom, Inc.,*
   78 Cal. Rptr. 2d 133 (Ct. App. 1998)........................................................ 13

*Mr. Frank, Inc. v. Waste Mgmt., Inc.,*
   591 F. Supp. 859 (N.D. Ill. 1984) ........................................................... 20

*New York v. Cedar Park Concrete Corp.,*
   665 F. Supp. 238 (S.D.N.Y. 1987)........................................................... 19

*New York ex rel. Abrams v. Seneci,*
   817 F.2d 1015 (2d Cir. 1987) ................................................................ 17

*Nicosia v. Amazon.com, Inc.,*
   834 F.3d 220 (2d Cir. 2016) ............................................................... 5, 6

*Olstad v. Microsoft Corp.,*
   700 N.W.2d 139 (Wis. 2005) ................................................................ 21

*Onat v. Penobscot Bay Med. Ctr.,*
   574 A.2d 872 (Me. 1990)..................................................................... 13

*O'Regan v. Arbitration Forums, Inc.,*
   121 F.3d 1060 (7th Cir. 1997) ............................................................... 14

*Owens Corning v. R.J. Reynolds Tobacco Co.,*
   868 So. 2d 331 (Miss. 2004) ................................................................ 14

*Patton v. E. Idaho Reg'l Med. Ctr.,*
   19 F.3d 28 (9th Cir. 1994)................................................................... 14

*Perry v. Hartz Mountain Corp.,*
   537 F. Supp. 1387 (S.D. Ind. 1982) ......................................................... 14

*Pomerantz v. Microsoft Corp.,*
   50 P.3d 929 (Colo. App. 2002) .............................................................. 18

*Purdue Pharma L.P. v. Kentucky,*
   704 F.3d 208 (2d Cir. 2013) ................................................................ 10

*Riehle v. Bank of Am., N.A.,*
   No. CV-13-00251-PHX-NVW, 2013 WL 1694442 (D. Ariz. Apr. 18, 2013).......................................................................................... 25

TABLE OF AUTHORITIES—Continued

<u>Page(s)</u>

*Roncari Dev. Co. v. GMG Enters., Inc.*,
  718 A.2d 1025 (Conn. Super. Ct. 1997) .................................................. 14

*Rose v. Vulcan Materials Co.*,
  194 S.E.2d 521 (N.C. 1973) .................................................................... 13

*Schoenbaum v. E.I DuPont De Nemours & Co.*,
  517 F. Supp. 2d 1125 (E.D. Mo. 2007), *vacated in part on other
  grounds*, No. 4:05CV01108 ERW, 2007 WL 3331291 (E.D. Mo. Nov.
  6, 2007)................................................................................................... 18

*Seafarers Welfare Plan v. Philip Morris*,
  27 F. Supp. 2d 623 (D. Md. 1998)........................................................... 14

*Sell It Social, LLC v. Acumen Brands, Inc.*,
  No. 14 Civ. 3491(RMB), 2015 WL 1345927 (S.D.N.Y. Mar. 20, 2015) ................... 12

*Sheet Metal Workers Local 441 Health & Welfare Plan v.
  GlaxoSmithKline, PLC*,
  737 F. Supp. 2d 380 (E.D. Pa. 2010) ...................................................... 29

*Sickles v. Cabot Corp.*,
  877 A.2d 267 (N.J. Super Ct. App. Div. 2005) ........................................ 18

*Smith Wholesale Co v. R.J. Reynolds Tobacco Co.*,
  No. 03-cv-30, 2004 U.S. Dist. LEXIS 10455 (E.D. Tenn. Jan. 21,
  2004)........................................................................................................ 17

*Southard v. Visa U.S.A., Inc.*,
  734 N.W.2d 192 (Iowa 2007) .................................................................. 14

*State v. Waste Mgmt. of Wis., Inc.*,
  261 N.W.2d 147 (Wis. 1978) .................................................................. 14

*State ex rel. Leech v. Levi Strauss & Co.*,
  No. 79-722-III, 1980 WL 4696 (Tenn. Ch. Ct. 1980) .................................. 13, 15, 17

*State ex rel. Spaeth v. Eddy Furniture Co.*,
  386 N.W. 2d 901 (N.D. 1986) ................................................................. 25

*Suminski v. Me. Appliance Warehouse, Inc.*,
  602 A.2d 1173 (Me. 1992) ...................................................................... 28

x

TABLE OF AUTHORITIES—Continued

Page(s)

*Tull v. United States,*
    481 U.S. 412 (1987) ............................................................................. 8

*Tungate v. MacLean–Stevens Studios, Inc.,*
    714 A.2d 792 (Me. 1998) ................................................................... 28

*Ulbrich v. Groth,*
    78 A.3d 76 (Conn. 2013) .................................................................. 27

*United States v. Philip Morris USA, Inc.,*
    396 F.3d 1190 (D.C. Cir. 2005) ........................................................ 8

*Vacco v. Microsoft Corp.,*
    793 A.2d 1048 (Conn. 2002) ..................................................... 18, 32

*Van Natta Mech. Corp. v. DiStaulo,*
    649 A.2d 399 (N.J. Super. Ct. App. Div. 1994) ............................... 14

*Vitacost.com, Inc. v. Gaia Herbs, Inc.,*
    No. 06-81141-CIV, 2007 WL 951768 (S.D. Fla. 2007) ................... 14

*Watts v. Medicis Pharm. Corp.,*
    365 P.3d 944 (Ariz. 2016) ................................................................ 25

*Wilson v. Gen. Motors Corp.,*
    921 A.2d 414 (N.J. 2007) ................................................................. 32

*Winther v. DEC Int'l, Inc.,*
    625 F. Supp. 100 (D. Colo. 1985) .................................................... 14

CONSTITUTIONAL PROVISIONS:

U.S. Constitution Article III ............................................................ 9, 11

STATUTES:

15 U.S.C. § 15 .................................................................................... 6

15 U.S.C. § 15c ................................................................................... 6

15 U.S.C. § 26 ................................................................................. 5, 6

740 Ill. Comp. Stat. 10/11 ................................................................. 13

Clayton Act ................................................................................. 5, 7, 8

## TABLE OF AUTHORITIES—Continued

Page(s)

Arizona Consumer Fraud Act.................................................................................... 25

Ala. Code § 8-19-5(27) ............................................................................................ 26

Ariz. Rev. Stat. Ann. § 44-1407 .............................................................................. 16

Ariz. Rev. Stat. Ann. § 44-1408(A) ......................................................................... 16

Ariz. Rev. Stat. Ann. § 44-1408(B) ......................................................................... 16

Ariz. Rev. Stat. Ann. § 44-1412 ........................................................................ 13, 14

Cal. Bus. & Prof. Code § 17200 ............................................................................. 26

Cal. Bus. & Prof. Code § 17500 ............................................................................. 24

Colo. Rev. Stat. § 6-4-103(5) .................................................................................. 20

Colo. Rev. Stat. § 6-4-111(2) .................................................................................. 20

Colo. Rev. Stat. § 6-4-119....................................................................................... 13

Conn. Gen. Stat. § 42-110(b)................................................................................... 26

Del. Code Ann. tit. 6, § 2113 ........................................................................ 13, 14, 18

Florida Antitrust Act.................................................................................................. 18

Fla. Stat. § 501.204 .................................................................................................. 26

Haw. Rev. Stat. § 480-2 ........................................................................................... 26

Haw. Rev. Stat. § 480-3 ........................................................................................... 13

Haw. Rev. Stat. § 480-14 ......................................................................................... 20

Idaho Code § 48-102(3) ........................................................................................... 13

Indiana Deceptive Consumer Sales Act................................................................... 28

Ind. Code § 24-1-1-5.1 ............................................................................................. 18

Ind. Code § 24-1-1-5.2(a) ........................................................................................ 16

Ind. Code § 24-1-2-7(b)............................................................................................ 18

## TABLE OF AUTHORITIES—Continued

Page(s)

Ind. Code § 24-5-0.5-1 ................................................................................. 26

Ind. Code § 24-5-0.5-3 ............................................................................ 26, 28

Ind. Code § 24-5-0.5-4(c) ............................................................................ 16

Iowa Code § 553.2 ....................................................................................... 13

Iowa Code § 714.16 ...................................................................................... 26

Kentucky Consumer Protection Act .............................................................. 24

Ky. Rev. Stat. Ann. § 367.170 ...................................................................... 26

Ky. Rev. Stat. Ann. § 367.190 ...................................................................... 24

La. Rev. Stat. § 51:1405 ............................................................................... 26

Maine Unfair Trade Practices Act ........................................................... 28, 29

Me. Rev. Stat. tit. 5, § 207 ....................................................................... 26, 28

Me. Rev. Stat. tit. 5, § 209 ............................................................................ 16

Me. Rev. Stat. tit. 10, § 1104(2) ................................................................... 16

Md. Code Ann., Com. Law § 11-202(a)(2) .................................................... 13

Mass. Gen. Laws ch. 93A, § 2 ...................................................................... 26

Michigan Consumer Protection Act ............................................................... 29

Mich. Comp. Laws § 445.903(1) ................................................................... 29

Mich. Comp. Laws § 445.771(b) ................................................................... 20

Mich. Comp. Laws § 445.771(c) .................................................................... 20

Mich. Comp. Laws § 445.772 ....................................................................... 20

Mich. Comp. Laws § 445.784 ....................................................................... 13

Mich. Comp. Laws § 445.784(2) ................................................................... 19

Mich. Comp. § 445.903 ................................................................................ 26

## TABLE OF AUTHORITIES—Continued

Page(s)

Miss. Code Ann. § 75-24-5 ................................................................... 26

Mont. Code Ann. § 30-14-103 ............................................................... 26

Neb. Rev. Stat. § 59-829 ....................................................................... 13

Neb. Rev. Stat. § 59-1602 ..................................................................... 26

Nevada Deceptive Trade Practices Act ................................................. 25

Nev. Rev. Stat. § 598A.060 .............................................................. 13, 20

New Hampshire Consumer Protection Act ............................................ 31

N.H. Rev. Stat. Ann. § 356:14 ......................................................... 13, 14

N.H. Rev. Stat. Ann. § 358–A:2 ....................................................... 26, 30

New Jersey Consumer Fraud Act .......................................................... 32

N.J. Stat. Ann. § 56:8-2 ........................................................................ 26

N.J. Stat. Ann. § 56:9-12(b) .................................................................. 16

N.Y. Gen. Bus. Law § 340 ..................................................................... 21

N.Y. Gen. Bus. Law § 342 ..................................................................... 16

N.Y. Gen. Bus. Law § 342-a .................................................................. 16

N.Y. Gen. Bus. Law § 342-b ............................................................. 16, 20

North Carolina Unfair Trade Practices Act ....................................... 30, 31

N.C. Gen. Stat. § 75-1 .......................................................................... 21

N.C. Gen. Stat. § 75-1.1 ........................................................................ 26

N.C. Gen. Stat. § 75-15 ......................................................................... 16

N.D. Cent. Code § 51-08.1-08 ............................................................... 16

N.D. Cent. Code § 51-15-07 .................................................................. 16

Okla. Stat. tit. 79, § 212 ........................................................................ 13

## TABLE OF AUTHORITIES—Continued

Page(s)

Or. Rev. Stat. § 646.715(2) .................................................................. 13, 14, 21

S.C. Code Ann. § 39-5-20 ........................................................................ 26

S.C. Code Ann. § 39-5-50 ........................................................................ 24

Tenn. Code Ann. § 47-25-101 .................................................................. 21

Utah Code Ann. § 76-10-3118 ............................................................. 13, 14

Vt. Stat. Ann. tit. 9 § 2451a .................................................................... 31

Vt. Stat. Ann. tit. 9, § 2453 .................................................................... 26

Va. Code Ann. § 59.1-9.17 ...................................................................... 14

Wash. Rev. Code Ann. § 19.86.020 ........................................................ 26

Wis. Stat. § 133.18(1)(a) ......................................................................... 17

RULES:

Fed. R. Civ. P. 9 ...................................................................................... 25

Fed. R. Civ. P. 9(b) ..................................................................... 22, 25, 26

Fed. R. Civ. P. 8 ...................................................................................... 21

OTHER AUTHORITIES:

N.D Op. Att'y Gen. 81-35 (1981) ........................................................ 13, 14

P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust
    Principles and Their Application* ¶ 355 (3d ed. 2011) .......................... 19

## INTRODUCTION

Plaintiffs' First Amended Complaint should be dismissed for numerous reasons. As set forth in the individual memoranda filed in support of Defendants' motions to dismiss, Plaintiffs fail to allege antitrust violations with respect to several Defendants. This brief, filed on behalf of all Defendants, explains the multitude of legal flaws in Plaintiffs' federal and state-law claims, which seek improper relief and are based on unfounded allegations of antitrust violations.

Plaintiffs' federal claim for injunctive relief fails because the States assert no plausible allegations of ongoing or future injury, as they must to obtain a forward-looking remedy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983). The States allege that Defendants' conduct purportedly took place through December 2015, but offer no factual allegations supporting an inference that the alleged conduct continued since then or that it will take place at any time in the future.

Plaintiffs' request for disgorgement under federal law fares no better. As apparent indirect purchasers, the States and the citizens they purport to represent in a *parens patriae* capacity have no standing to seek monetary recoveries under the federal antitrust laws. *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Likewise, the Supreme Court has made clear that the States cannot seek recoveries under the federal antitrust laws for supposed harms to their "general economies." *Hawaii v. Standard Oil. Co. of Cal.*, 405 U.S. 251 (1972). As the Court explained, "to hold that Congress authorized the State to recover

damages for injury to its general economy . . . would open the door to duplicative recoveries." *Id.* at 263–64. And yet, in this over-reaching Complaint, the States now seek just that. Indeed, Defendants face overlapping putative direct- and indirect-purchaser class actions related to the two drugs at issue here, which the Judicial Panel on Multidistrict Litigation has consolidated in the United States District Court for the Eastern District of Pennsylvania. Plaintiffs seek the same relief for the same alleged conduct under the guise of *parens patriae* claims, disgorgement claims, and unspecified assertions of harms to their "general economies." These labels cannot hide the irreconcilable differences between what Plaintiffs want and what Supreme Court precedent says they can get.

And Plaintiffs fail to allege facts sufficient to show that they have standing to sue on behalf of their citizens or that the States themselves, or anyone they purport to represent, has suffered antitrust injury, flaws that are fatal to both the federal and state antitrust claims.

Plaintiffs' individual state-law antitrust and consumer protection claims are also riddled with deficiencies.[1] In some instances, the state laws simply do not provide the States with a legal basis to seek damages; in other instances, the

---

[1] Fourteen States appear to bring their state claims under only their state *antitrust* statutes: Colorado, Delaware, Idaho, Illinois, Kansas, Maryland, New York, Ohio, Oklahoma, Oregon, Tennessee, Utah, Virginia, and Wisconsin. Seven States appear to bring claims under only their state *consumer-protection* statutes: Alabama, Kentucky, Massachusetts, Montana, South Carolina, Vermont, and Washington. Nineteen States appear to bring claims under *both* their state antitrust and consumer-protection statutes: Arizona, California, Connecticut, Florida, Hawaii, Indiana, Iowa, Louisiana, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Jersey, North Carolina, North Dakota, and Pennsylvania.

state laws address conduct different than antitrust price-fixing claims; and in other instances, the state laws require factual allegations that the States do not make in their Complaint (such as certain state laws that require in-state conduct that is not alleged here). These pleading failures are addressed in Sections III and IV, below, and are summarized in the charts attached as Appendix A.

Plaintiffs have no viable claims under federal or state law as a result of these pleading failures. Their First Amended Complaint should be dismissed.

## SUMMARY OF RELEVANT FACTUAL ALLEGATIONS

Plaintiffs allege that "[p]rices for dozens of generic drugs have uncharacteristically risen – some have skyrocketed –" over the last several years. Compl. ¶ 5. Plaintiffs contend that some of these price increases – though apparently not all of them – resulted from "collusion among generic drug competitors." Compl. ¶ 6.

In their Complaint, Plaintiffs assert claims based on two generic drug products: Doxycycline Hyclate Delayed Release ("Doxy DR") and Glyburide. Compl. ¶ 9. Plaintiffs allege that Defendants Mylan, Heritage, and Mayne conspired to elevate prices for generic Doxy DR, Compl. ¶¶ 69-102; and that Defendants Heritage, Teva, Citron, and Aurobindo conspired to elevate prices for generic Glyburide, Compl. ¶¶ 104-124.

Plaintiffs assert that each separate alleged conspiracy "continued until at least December, 2015." Compl. ¶¶ 100, 124. The Complaint, however, does not allege any purportedly unlawful conduct that took place after December 2015. Likewise, the Complaint does not identify any purportedly unlawful conduct that

is taking place today, nor does it allege facts supporting an inference that any purportedly unlawful conduct relating to these drug products will take place in the future.

Plaintiffs are 40 States that seek monetary and injunctive relief under one or more of three theories:  (1) claims for alleged overpayments on behalf of State governmental entities, (2) claims for alleged overpayments on behalf of "consumers in their states," and (3) claims for alleged damage to the "general economies" of the states. *See, e.g.*, Compl. ¶¶ 20, 138, Prayer for Relief.

Plaintiffs do not allege that the "States, governmental entities, and consumers" they claim to represent, Compl. ¶¶ 146, 153, directly purchased Doxy DR and Glyburide.  Instead, the Complaint allegations suggest that Plaintiffs are *indirect* purchasers who bought these drugs from entities downstream from the Defendants in the chain of distribution.  For example, the Complaint alleges that the Defendants sell pharmaceutical products to "wholesalers and distributors" who, in turn, sell the products "to a variety of customers, including pharmacies (retail and mail-order), hospitals, and long-term care and other medical facilities." *See* Compl. ¶¶ 44–47.  Plaintiffs are not direct-purchasing wholesalers and distributors, but rather indirect-purchasing customers further down this complex and varying distribution chain.

**ARGUMENT**

## I.   PLAINTIFFS' FEDERAL ANTITRUST CLAIMS FAIL AS A MATTER OF LAW.

Plaintiffs' federal antitrust claims fail for at least four reasons.  *First*, Plaintiffs seek injunctive relief, but they have not plausibly alleged a future or

4

ongoing harm.  *Second, Illinois Brick* and *Standard Oil* clearly preclude Plaintiffs' claims for monetary relief, including disgorgement.  *Third*, Plaintiffs fail to plead facts showing that they have standing to sue on behalf of their citizens.  And *fourth*, Plaintiffs have not alleged antitrust injury.

A.   <u>Plaintiffs Do Not Plausibly Allege an Ongoing or Threatened Injury, as Required to State a Claim for Injunctive Relief.</u>

Plaintiffs' federal claims purportedly arise under Section 16 of the Clayton Act, 15 U.S.C. § 26, which permits injunctive relief "against threatened loss or damage by a violation of the antitrust laws."  Plaintiffs offer no factual allegations plausibly showing a "threatened" future injury, however.  To the contrary, Plaintiffs allege that the challenged conduct perhaps continued through December 2015, but they offer no factual allegations relating to any allegedly unlawful conduct within the past sixteen months.

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).  Plaintiffs seeking this "extraordinary remedy" must allege a "real or immediate threat" of an ongoing injury.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983).  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  Plaintiffs here allege that the conspiracies already have ended: according to the Complaint, the Doxy DR and Glyburide conspiracies "continued until at least December, 2015," Compl. ¶¶ 100, 124, but Plaintiffs assert no facts showing that

5

the conspiracies continue to the present day or are likely to recur in the future. Absent plausible allegations of "future or continuing harm," Plaintiffs cannot pursue injunctive relief.  *See Nicosia*, 834 F.3d at 239.

B.      Plaintiffs Cannot Obtain Monetary Relief Under Federal Law.

Plaintiffs cannot obtain monetary relief under federal antitrust law, either through monetary damages or disgorgement.  Indeed, Plaintiffs acknowledge that they cannot seek monetary damages under federal antitrust law and only seek such relief under state antitrust law.[2]  *See* Compl. Prayer for Relief ¶¶ 3-5.  And with good reason – because Plaintiffs are not direct purchasers of Doxy DR or Glyburide, they cannot recover monetary damages under federal antitrust law. *See Illinois Brick*, 431 U.S. at 728–29; *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 697 F.3d 154, 157 (2d Cir. 2012) ("[I]ndirect purchasers are unable to obtain money damages under federal antitrust law.").

Yet in an apparent attempt to make an end-run around *Illinois Brick*'s bright-line rule, Plaintiffs claim to seek disgorgement under federal antitrust law, not damages.  *See* Compl. Prayer for Relief ¶ 4.  Any distinction between disgorgement and damages in this case, however, is without a difference.  Like damages, disgorgement creates a "serious risk of multiple liability for defendants" when indirect purchasers sue.  *Illinois Brick*, 431 U.S. at 730.  And like damages, disgorgement implicates "evidentiary complexities and

---

[2]      In addition, Plaintiffs assert that the Court has subject matter jurisdiction over this action under 15 U.S.C. § 26, which authorizes claims for injunctive relief. Plaintiffs do not assert 15 U.S.C. § 15 (private cause of action for damages) or 15 U.S.C. § 15c (private cause of action for damages as *parens patriae*) as alternative bases for jurisdiction.

uncertainties" when "a plaintiff several steps removed from the defendant in the chain of distribution" seeks to demonstrate the harm it allegedly suffered. *See id.* at 732.

Disgorgement is directly contrary to *Illinois Brick*'s prohibition on indirect-purchaser recovery of monetary relief for past harm from alleged overcharges. *See In re Cathode Ray Tube ("CRT") Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *13 (N.D. Cal. July 7, 2016), *appeal filed sub nom. Indirect Purchaser Plaintiffs v. Toshiba Corp.*, No. 16-16427 (9th Cir. Aug. 12, 2016) (indirect-purchaser disgorgement "would create an exception to *Illinois Brick* that would swallow the rule, allowing indirect purchasers to routinely recover damages in future antitrust cases"); *FTC v. Mylan Labs., Inc.,* 62 F. Supp. 2d 25, 41–42 (D.D.C.) (dismissing indirect-purchaser disgorgement claims based on *Illinois Brick*), *modified on other grounds*, 99 F. Supp. 2d 1 (D.D.C. 1999). Courts have also reached this same conclusion with respect to other forms of equitable monetary relief, for example, unjust enrichment and restitution.[3]

The upshot is that Plaintiffs should not be able to "circumvent" *Illinois Brick* by seeking monetary relief couched as "disgorgement," *see Mylan Labs.*, 62 F. Supp. 2d at 41, which "is a quintessentially backward-looking remedy focused

---

[3]    *See, e.g., In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d 390, 412 (S.D.N.Y. 2011) ("[I]t is beyond peradventure that indirect purchasers may not employ unjust enrichment to skirt the limitation on recovery imposed by *Illinois Brick.*" (citation omitted)); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 211 (D. Me. 2004) ("Certainly no restitutionary remedy can escape the limitations the United States Supreme Court imposed on federal antitrust recovery in *Illinois Brick* . . . ."); *In re Terazosin Hydrochloride Antitrust Litig.,* 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001) (indirect-purchaser unjust-enrichment claims "raise[] identical concerns" to those in *Illinois Brick*).

on remedying the effects of past conduct to restore the status quo," *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1198 (D.C. Cir. 2005) (citing *Tull v. United States*, 481 U.S. 412, 424 (1987)); *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir. 1976) ("Recovery for past losses is properly covered under [Section] 4 [of the Clayton Act]; it comes under the head of 'damages.' . . . [Section] 16 does not allow the claimed relief for past loss." (citation omitted)). As a result, Plaintiffs may proceed only to the extent they have plausibly alleged "direct purchases that state entities or state citizens may have made of" the generic medications at issue here.  *See Mylan Labs.*, 62 F. Supp. 2d at 42.  But these Plaintiffs have not alleged any such purchases.

Plaintiffs also are precluded from obtaining disgorgement for purported injuries to their "general economies."  Compl. ¶ 138.  In *Standard Oil*, the Supreme Court held that States cannot sue under the federal antitrust laws to recover "for the estimated damage to their respective economies."  405 U.S. at 262.  That is because, in passing the Clayton Act, Congress "could have . . . required violators to compensate federal, state, and local governments for the estimated damage to their respective economies caused by the violations.  But, this remedy was not selected."  *Id.*  Moreover, measuring injuries to a State's "general economy," whether for damages or disgorgement, is "a task extremely difficult[] in the real economic world rather than an economist's hypothetical model."  *Id.* at 262 n.14 (quotation marks omitted).  Finally, the *Standard Oil* court recognized that allowing disgorgement would raise the same concerns with ascertainability and double-recovery discussed above.  *See id.* at 264 ("Even the

8

most lengthy and expensive trial could not in the final analysis, cope with the problem of double recovery inherent in allowing damages for harm both to the economic interests of individuals and for the quasi-sovereign interests of the State.").

Plaintiffs' federal antitrust claims for monetary relief should be dismissed because, as indirect purchasers, they are barred from seeking monetary damages and because they cannot circumvent this bar by seeking disgorgement instead.

C.      Plaintiffs Lack *Parens Patriae* Standing to Sue on Behalf of Their Citizens.

Even aside from the absolute bar of *Illinois Brick*, Plaintiffs lack standing under Article III of the U.S. Constitution to assert these claims in a *parens patriae* capacity on behalf of their citizens.  "In order to ensure that a state suing on behalf of its injured citizens properly asserts a case or controversy sufficient for Article III standing purposes, . . . [a] state: (1) must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party; (2) must express a quasi-sovereign interest; and (3) must have alleged injury to a sufficiently substantial segment of its population."  *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 335-36 (2d Cir. 2009) (quotation marks omitted), *overruled in part on other grounds*, 564 U.S. 410 (2011).

*First*, Plaintiffs have not alleged an injury distinct from those suffered by individual consumers.  "In order to maintain [a *parens patriae*] action, the State must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982).  "When the state merely

9

asserts the personal claims of its citizens, it is not the real party in interest and cannot claim *parens patriae* standing." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 215 (2d Cir. 2013) (quotation marks and alterations omitted).  Apart from Plaintiffs' conclusory allegation that they seek to recover for harm to their "general economies," Compl. ¶ 138, there are no allegations about what those injuries entailed besides the overcharges that *consumers* allegedly paid.  This is precisely the type of injury for which a State cannot recover as *parens patriae* absent some plausible allegation tying the harm to a quasi-sovereign interest. *See Snapp*, 458 U.S. at 607.  Plaintiffs do not have standing to assert the private antitrust claims of Doxy DR or Glyburide consumers.  *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 652–53 (9th Cir. 2017), *cert. pet. filed sub nom. Missouri ex rel. Hawley v. Becerra*, No. 16-1015 (U.S. Feb. 21, 2017) (no *parens patriae* standing to sue when the only harm alleged was "harm to the egg farmers").

*Second*, Plaintiffs do not allege that a "sufficiently substantial segment" of their populations have suffered an injury.  Although there are no "definitive limits on the proportion of the population of the State that must be adversely affected," *Snapp*, 458 U.S. at 607, the Complaint fails to allege the number of individuals in each State who were affected or how they were affected in a way that allows Plaintiffs to sue on their behalf.  Plaintiffs lack *parens patriae* standing as a result.

*Third*, Second Circuit case law requires this Court to find that the "individuals upon whose behalf the state is suing could not obtain complete relief through a private suit." *Am. Elec. Power Co.*, 582 F.3d at 336 (quotation marks and brackets omitted); *see also Koster*, 847 F.3d at 652 (same requirement).  As

evidenced by the class-action claims pending in the MDL in the Eastern District of Pennsylvania, any purchasers with standing to assert damages claims against these Defendants for this alleged conduct are already seeking such relief. There is thus no basis to permit these States to seek duplicative recoveries on behalf of those same purchasers in this Court.

Because Plaintiffs lack Article III standing to sue on behalf of their citizens, their claims should be dismissed.

### D. Plaintiffs Fail to Allege that the States or Those They Purport to Represent Have Suffered Antitrust Injury.

Plaintiffs' federal antitrust claims also fail because they do not allege facts sufficient to show that they, or anyone they purport to represent, suffered antitrust injury, meaning injury "that flows from that which makes [or might make] defendants' acts unlawful." *See Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 76 (2d Cir. 2013) (quotation marks omitted). The law is clear that a plaintiff cannot recover "merely by showing injury causally linked to an illegal presence in the market." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (quotation marks omitted). Rather, "[a]n antitrust injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 772 (2d Cir. 2016) (quotation marks omitted).

Plaintiffs allege that consumers "nationwide" paid higher prices for the generic pharmaceuticals at issue. Compl. ¶ 14. But this bare allegation is not enough. Defendants' alleged conduct involves alleged refusals to bid on a small number of customers. Compl. ¶ 11. Plaintiffs offer no factual allegations

connecting these limited bidding allegations to "nationwide" price increases supposedly impacting consumers throughout all 40 States at issue in this lawsuit. *See, e.g.*, *Sell It Social, LLC v. Acumen Brands, Inc.*, No. 14 Civ. 3491(RMB), 2015 WL 1345927, at *4 (S.D.N.Y. Mar. 20, 2015) (no antitrust injury where plaintiff provided "no factual support . . . for th[e] speculative conclusion" that defendant's conduct caused increased prices); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 266 (S.D.N.Y. 2000) (no antitrust injury where plaintiff alleged a "reduction in output" that was "conclusory . . . with no support in the [c]omplaint").

As Plaintiffs themselves concede, the generic-pharmaceutical market encompasses "a multitude of entities that are involved at various stages of the distribution channels through which prescription drugs are delivered to patients." Compl. ¶ 37.  This includes manufacturers, *id.* ¶¶ 38–41; suppliers, *id.* ¶ 42; wholesalers, *id.* ¶ 44–45; distributors, *id.*; group-purchasing organizations, *id.* ¶ 46; and pharmacy and supermarket chains, *id.* ¶ 47.  Defendants "are the source of the prescription drugs in the pharmaceutical supply chain." *Id.* ¶ 38; *accord id.* ¶ 42.  To find that Defendants' alleged conspiracies caused an anticompetitive effect would require a showing that price increases were passed down uniformly through various entities along the supply chain to end consumers across 40 different States.  Plaintiffs' allegations provide no support for this speculative causal chain.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540–41 (1983) (no antitrust standing where "the chain of causation between the [plaintiff's] injury and the alleged restraint in the market

12

. . . contains several somewhat vaguely defined links" making it "obvious that any

. . . injuries were only an indirect result" of a defendant's conduct).

* * *

For all of the reasons set out above, Plaintiffs' federal antitrust claims fail

as a matter of law.

## II.    BECAUSE PLAINTIFFS' FEDERAL-LAW CLAIMS FAIL, THEIR STATE-LAW CLAIMS ALSO FAIL.

Once Plaintiffs' federal claims are dismissed for the reasons set forth

above, the Court also should dismiss Plaintiffs' state-law claims for two reasons.

*First*, with the exception of the *Illinois Brick* issue discussed above, *supra* Part I.B

(and addressed separately for each state below), state antitrust law generally

follows federal antitrust law.[4]  Thus, Plaintiffs' state antitrust law claims fail for

---

[4]    Every state antitrust law either follows federal law or uses it as a guide. *See* Ariz. Rev. Stat. Ann. § 44-1412; *Morrison v. Viacom, Inc.*, 78 Cal. Rptr. 2d 133, 137 n.2 (Ct. App. 1998); Colo. Rev. Stat. § 6-4-119; *Miller's Pond Co v. City of New London*, 873 A.2d 965 (Conn. 2005); Del. Code Ann. tit. 6, § 2113; *Mack v. Bristol-Myers Squibb*, 673 So. 2d 100, 104 (Fla. Dist. Ct. App. 1996); Haw. Rev. Stat. § 480-3; Idaho Code § 48-102(3); 740 Ill. Comp. Stat. 10/11; *Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 824 N.E.2d 336, 348 (Ind. 2005); Iowa Code § 553.2; *Bergstrom v. Noah*, 974 P.2d 520, 530–31 (Kan. 1999); *La. Power & Light Co. v. United Gas Pipe Line Co.*, 493 So. 2d 1149, 1158 (La. 1986); *Onat v. Penobscot Bay Med. Ctr.*, 574 A.2d 872, 875 (Me. 1990); Md. Code Ann., Com. Law § 11-202(a)(2); Mich. Comp. Laws § 445.784; *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 626 (Minn. 2007); *Gano v. Delmas*, 105 So. 535, 537 (Miss. 1925); Neb. Rev. Stat. § 59-829; Nev. Rev. Stat. § 598A.050; N.H. Rev. Stat. Ann. § 356:14; *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 920 (N.J. Super. Ct. App. Div. 1995); *Anheuser-Busch, Inc. v. Abrams*, 520 N.E.2d 535, 539 (N.Y. 1988); *Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 530 (N.C. 1973); N.D Op. Att'y Gen. 81-35 (1981); *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 795 (Ohio 2005); Okla. Stat. tit. 79, § 212; Or. Rev. Stat. § 646.715(2); *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1014 (3d Cir. 1994) (Pennsylvania law); *State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III, 1980 WL 4696, at *2 n.2 (Tenn. Ch. Ct. 1980); Utah

the same reasons as Plaintiffs' federal antitrust law claims.   For example,

Plaintiffs' state antitrust claims fail at the threshold because Plaintiffs have not

alleged facts sufficient to confer constitutional standing to sue as *parens patriae*,

*supra* Part I.C, or to allege antitrust injury, *supra* Part I.D.[5]

---

Code Ann. § 76-10-3118; Va. Code Ann. § 59.1-9.17; *State v. Waste Mgmt. of Wis., Inc.*, 261 N.W.2d 147, 153 n.12 (Wis. 1978).

[5]     Every state law under which Plaintiffs seek relief requires antitrust injury. *Koling v. Dow Jones & Co.*, 187 Cal. Rptr. 797, 807 (Ct. App. 1982); *Winther v. DEC Int'l, Inc.*, 625 F. Supp. 100, 102–04 (D. Colo. 1985) (Colorado law); *Roncari Dev. Co. v. GMG Enters., Inc.*, 718 A.2d 1025, 1032–34 (Conn. Super. Ct. 1997); *Vitacost.com, Inc. v. Gaia Herbs, Inc.*, No. 06-81141-CIV, 2007 WL 951768, at \*2 (S.D. Fla. 2007) (Florida law); *Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 324–25 (Haw. 2010); *Patton v. E. Idaho Reg'l Med. Ctr.*, 19 F.3d 28, at \*1 (9th Cir. 1994) (unpublished) (Idaho law); *O'Regan v. Arbitration Forums, Inc.*, 121 F.3d 1060, 1065 (7th Cir. 1997) (Illinois law); *Perry v. Hartz Mountain Corp.*, 537 F. Supp. 1387, 1390 (S.D. Ind. 1982) (Indiana law); *Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 198 (Iowa 2007); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at \*9, 15 (N.D. Ill. June 29, 2015) (Kansas and North Carolina law); *HPC Biologicals, Inc. v. UnitedHealthcare of La., Inc.*, 194 So. 3d 784, 797–98 (La. Ct. App. 2016); *Knowles v. Visa U.S.A., Inc.*, No. Civ. A. CV-03-707, 2004 WL 2475284, at \*5 (Me. Super. Ct. Oct. 20, 2004); *Seafarers Welfare Plan v. Philip Morris*, 27 F. Supp. 2d 623, 633-34 and n.24 (D. Md. 1998) (Maryland law); *First Med Representatives, LLC v. Futura Med. Corp.*, 195 F. Supp. 2d 917, 922 (E.D. Mich. 2002) (Michigan law); *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 344 (Miss. 2004); *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 299–300 (Neb. 2006); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1135-36 and n.2 (N.D. Cal. 2008) (Nevada law); *Van Natta Mech. Corp. v. DiStaulo*, 649 A.2d 399, 406–07 (N.J. Super. Ct. App. Div. 1994); *Gatt Commc'ns, Inc.*, 711 F.3d at 81 (New York law); *Lee v. United Church Homes, Inc.*, 686 N.E.2d 288, 291 (Ohio Ct. App. 1996); *Cohlmia v. Ardent Health Servs., LLC*, 448 F. Supp. 2d 1253, 1262–63 (N.D. Okla. 2006) (Oklahoma law); *Haymond v. Bonneville Billing & Collections*, 89 P.3d 171, 173–74 (Utah 2004); *Haigh v. Matsushita Elec. Corp. of Am.*, 676 F. Supp. 1332, 1344-45 (E.D. Va. 1987) (Virginia law); *Lerma v. Univision Commc'ns, Inc.*, 52 F. Supp. 2d 1011, 1016–18 (E.D. Wis. 1999) (Wisconsin law).   In those states that have not explicitly adopted this framework, the state antitrust laws generally reflect federal standards.   Ariz. Rev. Stat. § 44-1412; Del. Code Ann. tit. 6, § 2113; N.H. Rev. Stat. Ann. § 356:14; N.D. Op. Att'y Gen. 81-35 (1981) (relying on federal law); Or. Rev. Stat. § 646.715(2);

*Second*, because jurisdiction over the state-law antitrust and consumer protection claims is premised on supplemental jurisdiction, once the federal-law claims are dismissed, there is no basis for the Court to assert jurisdiction over the state-law claims. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (per curiam) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.") (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)).

As discussed below, Plaintiffs' state-law claims also fail on the merits for numerous independent reasons. To aid the Court, Defendants attach in Appendix A two charts showing the basis for dismissal of Plaintiffs' state-law claims.

## III.    PLAINTIFFS' STATE ANTITRUST CLAIMS FAIL.

### A.    Plaintiffs Lack Statutory Authority to Seek Damages on Behalf of Injured Citizens Under Various State Laws.

A number of States purport to seek damages on behalf of injured citizens, Compl. ¶¶ 163, 209, 227, 270, 274, 276, 279, 291, 301, 315. In addition to lacking constitutional standing to sue as *parens patriae*, *supra* Part I.C, none of the following States has the *statutory* right to seek damages as *parens patriae*:

---

*Alvord-Polk, Inc.*, 37 F.3d at 1014 (Pennsylvania law); *State ex rel. Leech*, 1980 WL 4696, at \*2 n.2. Although Minnesota courts do not apply some of the factors announced in *Associated General Contractors* in light of the State's *Illinois Brick* repealer statute, *see Lorix*, 736 N.W.2d at 627–29, and "[w]hile Minnesota's antitrust statute creates a broader grant of standing than the traditional common law rule, it still requires a person to have suffered *some* injury, either direct or indirect," *Epland v. Meade Ins. Agency Assocs., Inc.*, 564 N.W.2d 203, 209 (Minn. 1997).

Arizona,[6] Indiana,[7] Maine,[8] New Jersey,[9] New York,[10] North Carolina,[11] North Dakota,[12] Pennsylvania,[13] Tennessee,[14] and Wisconsin.[15]   Plaintiffs' damages

---

[6]     Ariz. Rev. Stat. Ann. § 44-1407 ("The attorney general . . . may bring an action for appropriate *injunctive or other equitable relief* . . . ." (emphasis added)); *compare id*. § 44-1408(A) (State may bring damages action for injury to its business or property), *with id.* § 44-1408(B) ("person" may bring damages action for injury to his business or property).

[7]      Ind. Code § 24-1-1-5.2(a) ("The attorney general may bring an action in a county *on behalf of the state or a political subdivision* . . . for injuries or damages sustained directly or indirectly as a result of a violation of this chapter." (emphasis added)); *id.* § 24-5-0.5-4(c) (Attorney General may "bring an action to *enjoin*" (emphasis added)).

[8]     Me. Rev. Stat. tit. 10, § 1104(2) (Attorney General may only "institute proceedings in equity"); *id.* tit. 5, § 209 (Attorney General has power to "bring an action in the name of the State . . . to restrain *by temporary or permanent injunction*" (emphasis added)).

[9]     N.J. Stat. Ann. § 56:9-12(b) ("The Attorney General, *on behalf of the State or any of its political subdivisions or public agencies*, . . . may institute an action to recover . . . damages . . . ." (emphasis added)).

[10]     N.Y. Gen. Bus. Law § 342 (permitting Attorney General to sue "[o]n behalf of the people of the state . . . *to restrain and prevent*" an antitrust violation and permitting court to award plaintiffs "an additional allowance" of no more than $20,000 (emphasis added)); *id.* § 342-a (permitting Attorney General to recover civil penalties); *id.* § 342-b (permitting Attorney General to sue for damages "on behalf of the state and public authorities" as well as "on behalf of any political subdivision or public authority of the state"); *accord In re Dynamic Random Access Memory (DRAM) Antitrust Litig*., No. M 02-1486 PJH, 2007 WL 2517851, at *8 (N.D. Cal. Aug. 31, 2007) ("Presumably, the legislature knew how to include language granting the Attorney General the right to sue 'in behalf of the people of the state' in the [Donnelly] Act's damages relief provision, as it did so with respect to the provisions allowing actions for injunctive relief and civil penalties. Accordingly, the court concludes that the legislature's failure to include similar language in the provision authorizing damages suits was deliberate.").

[11]     N.C. Gen. Stat. § 75-15 (permitting the Attorney General to sue only "in the name of the State, or any officer or department thereof").

[12]     N.D. Cent. Code § 51-08.1-08 (permitting action by "[t]he state, a political subdivision, or any public agency"); *id.* § 51-15-07 ("the Attorney General may seek and obtain in an action in a district court *an injunction*" (emphasis added)).

claims under the laws of those states should therefore be dismissed.

Although a State may seek "recovery for an injury to a quasi-sovereign interest of the state itself," *New York ex rel. Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987), it "cannot merely litigate as a volunteer the personal claims of its competent citizens," *id.*; *accord California v. Frito-Lay, Inc.*, 474 F.2d 774 (9th Cir. 1973). As a result, courts require statutory authorization before allowing a state to pursue damages claims on behalf of injured citizens. *See Frito-Lay*, 474 F.2d at 777. Without a "specific [state] legislative grant of *parens patriae* authority" to "bring *parens patriae* suits for monetary damages on behalf of [State] citizens," *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1164 (N.D. Cal. 2007), Plaintiffs' damages claims are beyond the scope of their common-law sovereign power, *Frito-Lay*, 474 F.2d at 777.

---

[13]   Pennsylvania does not have a general antitrust statute, *see Intervest Fin. Servs., Inc. v. S.G. Cowen Sec. Corp.*, 206 F. Supp. 2d 702, 711 n.13 (E.D. Pa. 2002), *aff'd sub nom. InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144 (3d Cir. 2003), so the relief it seeks should not include damages, which is beyond its common-law authority.

[14]   *State ex rel. Leech*, 1980 WL 4696, at *5 (authorizing *parens patriae* damages claim on behalf of individual citizens would be to endorse "a drastic departure from accepted practice" and must "result from acts of the Legislature where the underlying public policy issues can be resolved and where essential procedural safeguards can be established"). In prior litigation, the State has conceded that it does not have authority to seek such relief. *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, No. 2:03-CV-30, 2004 U.S. Dist. LEXIS 10455, at *8 (E.D. Tenn. Jan. 21, 2004).

[15]   Wis. Stat. § 133.18(1)(a) (only a "*person* injured" may sue (emphasis added)).

**B.**   **Plaintiffs' State Damages Claims on Behalf of Indirect Purchasers Are Barred Under Various State Laws.**

Plaintiffs do not allege that they themselves—or any of the government entities or citizens they claim to represent—directly bought Doxy DR or Glyburide from Defendants.  Because Plaintiffs only seek relief as indirect purchasers, their damages claims are therefore barred under the following state laws: Colorado,[16] Connecticut,[17] Delaware,[18] Florida,[19] Indiana,[20] Louisiana,[21] New Jersey,[22] Ohio,[23]

---

[16]   *Pomerantz v. Microsoft Corp.*, 50 P.3d 929, 933–34 (Colo. App. 2002).

[17]   *Vacco v. Microsoft Corp.*, 793 A.2d 1048 (Conn. 2002).

[18]   Delaware has not statutorily abrogated the *Illinois Brick* rule, and its antitrust laws are generally interpreted to follow federal law.  Del. Code Ann. tit. 6, § 2113.

[19]   *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 103 (Fla. Dist. Ct. App. 1996) (no indirect-purchaser standing under the Florida Antitrust Act).  Florida alleges that it "has an assignment from a vendor that purchased pharmaceuticals directly from Defendants" and that "[a]s a result of that assignment," it can assert direct-purchaser claims under federal and state law.  Compl. ¶ 181.  But Florida does not allege *who* the vendor is or *why* the vendor is entitled to relief.  To the extent the State's claim relies on the vendor-assignment allegation, it has not been adequately pleaded and should be dismissed.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1040–41 (N.D. Cal. 2011).  And without a plausible allegation that the vendor was a direct purchaser in Florida, the State also lacks standing to sue under state law.  *Id.* at 1041 n.3.

[20]   *Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 599 (Ind. Ct. App. 2002) (plaintiff "lacked standing to bring the antitrust claim against Microsoft because he was an indirect purchaser"); *see also Schoenbaum v. E.I DuPont De Nemours & Co.*, 517 F. Supp. 2d 1125, 1150 n.23 (E.D. Mo.), *vacated in part on other grounds*, No. 4:05CV01108 ERW, 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007).  The Attorney General may sue on behalf of indirect-purchaser government entities, however.  Ind. Code §§  24-1-1-5.1; 24-1-2-7(b).

[21]   *Free v. Abbott Labs., Inc.*, 176 F.3d 298, 301 (5th Cir. 1999) (interpreting Louisiana law).

[22]   *Sickles v. Cabot Corp.*, 877 A.2d 267, 275 (N.J. Super Ct. App. Div. 2005).

[23]   *Johnson*, 834 N.E.2d at 798.

Oklahoma,[24] and Virginia.[25]   The damages claims under these state laws should be dismissed.[26]   *See* P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 355 (3d ed. 2011) ("When residents purchasing at inflated prices from innocent dealers would be denied standing under the *Illinois Brick* indirect-purchaser rule to obtain damages from manufacturers, so also is the state denied standing to obtain damages in a *parens patriae* suit."); *accord Illinois Brick*, 431 U.S. at 733 n.14.

C.   <u>Plaintiffs Lack Standing To Sue on Behalf of Governmental Entities Under Various State Laws.</u>

To the extent Plaintiffs seek relief on behalf of "governmental entities," *see* Compl. ¶ 137, they have standing to sue only to the extent state law permits it. *Alaska v. Chevron Chem. Co.*, 669 F.2d 1299, 1302 (9th Cir. 1982); *New York v. Cedar Park Concrete Corp.*, 665 F. Supp. 238, 241 (S.D.N.Y. 1987).   The antitrust

---

[24]   *Major v. Microsoft Corp.*, 60 P.3d 511, 513 (Okla. Civ. App. 2002).

[25]   *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1186 (N.D. Cal. 2009) (interpreting Virginia law).

[26]   Plaintiffs also seek disgorgement under various state laws.   Plaintiffs' disgorgement claims should be dismissed in at least those States that follow the *Illinois Brick* rule, for the same reasons set out in Part I.   *See, e.g., In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d at 413 (indirect purchasers "may not recover restitution in states that follow the rule of *Illinois Brick*").   Plaintiffs seek relief for economy-wide harms under the laws of Connecticut, Michigan, and Ohio.   To the extent they request disgorgement, their claims should be dismissed under the Michigan and Ohio antitrust statues, which follow federal law.   Mich. Comp. Laws § 445.784(2); *Johnson*, 834 N.E.2d at 795.   The claim under Connecticut law should be dismissed because Plaintiffs have not plausibly alleged that Defendants caused economy-wide harms.

laws of Colorado[27] and New York[28] do not authorize the State to sue on behalf of governmental entities.  These claims should be dismissed.

      D.      <u>Plaintiffs Fail To Plausibly Allege a Substantial Effect on Intrastate Commerce, as Required Under Various State Laws and the Dormant Commerce Clause.</u>

      Plaintiffs make the conclusory allegation that "Defendants' activities also had and continue to have a substantial effect upon the trade and commerce within each of the States."  Compl. ¶ 134.  Plaintiffs fail to allege any actual facts showing that Defendants' conduct substantially affected intrastate commerce in Colorado, Connecticut, Hawaii, Illinois, Michigan, Mississippi, Nevada, New Hampshire, New York, North Carolina, Oregon, Tennessee, and Wisconsin— states where the antitrust laws require such allegations.[29]  To the extent the

---

[27]      Under Colorado law, the Attorney General may sue on behalf of "any governmental or public entity" only "with the written consent of such entity."  Colo. Rev. Stat. § 6-4-111(2).  Plaintiffs do not allege that they obtained such consent.  Any Colorado claim on behalf of governmental entities should be dismissed as a result.  *See In re DRAM Antitrust Litig.*, 2007 WL 2517851, at *5 (dismissing antitrust claim on behalf of state governmental entities because "there is no allegation in the present complaint stating either that the government entities at issue have requested that the present action be instituted on their behalf, or that even identify the entities at issue").

[28]      Under New York law, the Attorney General "may also bring action on behalf of any political subdivision or public authority of the state *upon the request of* such political subdivision or public authority to recover damages."  N.Y. Gen. Bus. Law § 342-b (emphasis added).  Plaintiffs do not allege that they received such a request.  Any New York claim on behalf of governmental entities should be dismissed as a result.  *See In re DRAM Antitrust Litig.*, 2007 WL 2517851, at *5.

[29]      Colo. Rev. Stat. § 6-4-103(5); *Fido's Fences v. Canine Fence Co.*, 672 F. Supp. 2d 303, 313 (E.D.N.Y. 2009) (interpreting Connecticut law); Haw. Rev. Stat. § 480-14; *Mr. Frank, Inc. v. Waste Mgmt., Inc.*, 591 F. Supp. 859, 869 (N.D. Ill. 1984) (interpreting Illinois law); Mich. Comp. Laws §§ 445.771(b-c), 445.772; *In re Microsoft Corp. Antitrust Litig.*, No. MDL 1332, 2003 WL 22070561, at *1-2 (D. Md. Aug. 22, 2003) (interpreting Mississippi law); Nev. Rev. Stat. § 598A.060; *In re Cast*

remaining state-law claims do not require a connection to intrastate commerce, they are unconstitutional under the Dormant Commerce Clause. *See Flood v. Kuhn*, 407 U.S. 258, 284–85 (1972) (interstate transactions governed by federal, not state, antitrust law); *accord Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986) ("When a state statute *directly regulates* or discriminates against interstate commerce . . . we have generally struck down the statute without further inquiry." (emphasis added)).  Therefore, all of Plaintiffs' state-law antitrust claims should be dismissed.  *See generally Infineon Techs. AG*, 531 F. Supp. 2d at 1155–60 (dismissing certain state-law claims for insufficient connection to intrastate commerce).

## IV.    PLAINTIFFS' STATE CONSUMER PROTECTION CLAIMS FAIL.

While Plaintiffs assert consumer protection claims under various state laws, none of those claims survive because Plaintiffs "have not truly *pleaded* claims . . . sufficient to show their entitlement to recover under them, as required by Rule 8. . . .  Rather, they have pleaded federal antitrust claims . . . and they merely allege that those claims are also actionable under general consumer protection laws . . . ."  *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 255 (D. Conn. 2015) (citation omitted) (dismissing various state consumer protection claims).  Plaintiffs' own allegations make clear that their consumer protection claims are just repackaged antitrust claims.  *See, e.g.,* Compl. ¶ 8 (alleging

---

*Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-md-2508, 2015 WL 5166014, at *33 (E.D. Tenn. June 24, 2015) (interpreting New Hampshire law); N.Y. Gen. Bus. Law § 340; N.C. Gen. Stat. § 75-1; Or. Rev. Stat. § 646.715(2); Tenn. Code Ann. § 47-25-101; *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005).

"schemes to fix and maintain prices, allocate markets and otherwise thwart competition"). Plaintiffs fail to set forth the required elements of their consumer protection claims or plead facts sufficient to establish that those elements have been met, much less with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure, which imposes a heightened pleading burden for claims of deception.

Plaintiffs cannot properly plead state consumer protection claims by simply claiming that their allegations of anticompetitive conduct are actionable under state consumer protection laws. *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 163 (2d Cir. 2016) (affirming dismissal of consumer protection claims where "[t]he complaint does little more than list a couple dozen state statutes in alphabetical order by state" and "fails to explain adequately how the defendants' conduct violated any of the state consumer protection and unfair trade statutes in the conclusory list"); *In re Aggrenox*, 94 F. Supp. 3d at 254-55 (dismissing consumer protection claims where plaintiffs "*listed* claims under very many state laws, but . . . have not truly *pleaded* claims under those laws sufficient to show their entitlement to recovery under them"); *see also In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 725–26 (N.D. Ill. 2016) (dismissing consumer protection claims where pleadings consisted of "[t]he bald assertion that the alleged antitrust conduct violates dozens of non-antitrust laws," and "fail[ed] to account for any consequential differences that may exist among the undifferentiated state-law claims"). If such allegations were sufficient to state a consumer protection law claim, there would be no need for separate antitrust

laws.  *In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516, slip op. at 15-18 (D. Conn. Aug. 9, 2016).

This Court should dismiss Plaintiffs' consumer protection claims on this basis alone.  However, even if Plaintiffs could bootstrap their antitrust claims with consumer protection claims—and they cannot—this Court should dismiss Plaintiffs' consumer protection claims because the underlying antitrust claims on which they are based fail for the reasons set forth above and in Defendants' individual motions to dismiss.  *See e.g., In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 163 (affirming dismissal of consumer protection claims where plaintiffs "fail to demonstrate why any of these claims should survive if the antitrust claims are dismissed"); *Formula One Licensing, B.V. v. Purple Interactive Ltd.*, No. C 00-2222 MMC, 2001 WL 34792530, at *4 (N.D. Cal. Feb. 6, 2001) ("Where a plaintiff fails to state an antitrust claim, and where an unfair competition claim is based upon the same allegations, such state claims are properly dismissed."); *Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 911 (N.D. Cal. 2016) (holding that when a consumer protection claim is based on conduct that "overlaps completely" with allegations deemed insufficient to violate antitrust law, the consumer protection claim also fails as a matter of law); *In re Plavix Indirect Purchaser Antitrust Litig.*, No. 1:06-cv-226, 2011 WL 335034, at *5 (S.D. Ohio Jan. 31, 2011) (dismissing state and federal antitrust claims along with consumer protection claims "premised wholly on the same underlying alleged anticompetitive behavior and antitrust injury").

Plaintiffs' state consumer protection claims also fail for several additional independent reasons discussed below (which are summarized in the charts attached as Appendix A).

## A.      Plaintiffs Are Not Entitled to Damages.

Plaintiffs are limited to the remedy of injunctive relief under at least two consumer protection statutes:  Kentucky and South Carolina.  Ky. Rev. Stat. Ann. § 367.190 (The Attorney General may seek "a restraining order or temporary or permanent injunction," which "shall be granted whenever it reasonably appears that any person will suffer immediate harm, loss or injury from a method, act or practice prohibited by [the Kentucky Consumer Protection Act]"); S.C. Code Ann. § 39-5-50 (The Attorney General "may bring an action in the name of the State against such person to restrain by temporary restraining order, temporary injunction or permanent injunction the use of such method, act or practice").  Plaintiffs fail to state a claim under these statutes.

Relatedly, to the extent Plaintiffs seek injunctive relief under any consumer protection statutes, those claims fail because they have not demonstrated any threat of future injury.  *See supra* Part I.A.

## B.      Plaintiffs Fail To Plausibly Allege Deceptive Conduct as Required Under Various State Laws.

Plaintiffs' consumer protection claims under the laws of Arizona, California, Minnesota, Nevada, North Dakota, and Pennsylvania require allegations of deceptive or misleading conduct directed at consumers, which

Plaintiffs have not pled.[30]  Furthermore, claims under most of these statutes must be pled with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure.[31]  Courts routinely dismiss consumer protection claims that require a pleading of deceptive conduct when a plaintiff merely attempts to allege anticompetitive conduct.  *See, e.g., In re SRAM Antitrust Litig.*, 580 F. Supp. 2d at 908-09 (dismissing Pennsylvania Unfair Trade Practices and Consumer Protection Law claim based on price fixing in absence of allegations that

---

[30]     *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016) (requiring a plaintiff alleging an Arizona Consumer Fraud Act claim to plead "(1) a false promise or misrepresentation made in connection with the sale or advertisement of 'merchandise,' and (2) consequent and proximate injury resulting from the misrepresentation."); Cal. Bus. & Prof. Code § 17500 (prohibiting dissemination of any "untrue or misleading" statement "which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading"); *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 474 (Minn. Ct. App. 1999) ("To sustain a claim for consumer fraud, a plaintiff must demonstrate that the defendant made a false promise or misrepresentation with the intent that others rely thereon."); *Govereau v. Wellish*, No. 2:12-CV-00805-KJD-VCF, 2012 WL 5215098, at *2 (D. Nev. Oct. 19, 2012) (holding that a deceptive act is a required element of a Nevada Deceptive Trade Practices Act claim); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d at 198 (concluding that "a plaintiff must allege fraudulent or deceptive conduct to maintain a North Dakota consumer protection claim" (citing *State ex rel. Spaeth v. Eddy Furniture Co.*, 386 N.W. 2d 901, 905 (N.D. 1986))); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 908 (N.D. Cal. 2008) (dismissing UTPCPL claim based on price fixing in absence of allegations that defendants engaged in deceptive conduct).

[31]     *Riehle v. Bank of Am., N.A.*, No. CV-13-00251-PHX-NVW, 2013 WL 1694442, at *3 (D. Ariz. Apr. 18, 2013) ("Because a claim brought under the Consumer Fraud Act is a fraud claim for the purposes of Rule 9, . . . such a claim must state with particularity the circumstances constituting fraud or mistake."); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 848-49 (N.D. Cal. 2012) (False Advertising Law claims subject to the Rule 9(b) heightened pleading requirement); *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 944 (D. Minn. 2009) (Minnesota consumer protection claim must be pleaded with particularity); *Ham v. JP Morgan Chase Bank N.A.*, No. 2:11-CV-01544-KJD-RJJ, 2012 WL 3883480, at *2 (D. Nev. Sept. 5, 2012) (Rule 9(b) applies to Deceptive Trade Practices claims).

defendants engaged in deceptive conduct); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d at 178, 190, 198, 200-01 (dismissing Arizona, Minnesota, North Dakota, and Pennsylvania consumer protection claims where plaintiffs sought to allege anticompetitive conduct but "failed to allege fraud or deception"). Here, Plaintiffs have not alleged that Defendants made any misrepresentations, much less with particularity as required by Rule 9(b). Therefore, Plaintiffs' claims under the consumer protection statutes of Arizona, California, Minnesota, Nevada, North Dakota, and Pennsylvania should be dismissed.

C.     Plaintiffs Fail To Plausibly Allege Unfair or Unconscionable Conduct as Required Under Various State Laws.

The consumer protection laws of Alabama, California, Connecticut, Florida, Hawaii, Indiana, Iowa, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Montana, Nebraska, New Hampshire, New Jersey, North Carolina, South Carolina, Vermont, and Washington each prohibit "unfair" or "unconscionable" conduct, in addition to deceptive conduct.[32] Plaintiffs fail to allege deceptive conduct, *see supra* Part IV.B, and also fail to plead any facts showing that Defendants engaged in any conduct that would constitute unfair or unconscionable conduct. Courts have developed various tests to define unfair

---

[32]     Ala. Code § 8-19-5(27); Cal. Bus. & Prof. Code § 17200; Conn. Gen. Stat. § 42-110(b); Fla. Stat. § 501.204; Haw. Rev. Stat. § 480-2; Ind. Code §§ 24-5-0.5-1, 24-5-0.5-3; Iowa Code § 714.16, Ky. Rev. Stat. Ann. § 367.170; La. Rev. Stat. § 51:1405; Me. Rev. Stat. tit. 5, § 207; Mass. Gen. Laws ch. 93A, § 2; Mich. Comp. Laws § 445.903; Miss. Code Ann. § 75-24-5; Mont. Code Ann. § 30-14-103; Neb. Rev. Stat. § 59-1602; N.H. Rev. Stat. Ann. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.C. Gen. Stat. § 75-1.1; S.C. Code Ann. § 39-5-20; Vt. Stat. Ann. tit. 9, § 2453; Wash. Rev. Code § 19.86.020.

and unconscionable conduct,[33] but Plaintiffs fail to allege any facts showing that Defendants' alleged conduct was unfair or unconscionable, other than Defendants' alleged antitrust violations.

Moreover, because Plaintiffs' alleged antitrust claims fail for the reasons set forth above, Plaintiffs cannot rely on those antitrust claims to support allegations that Defendants' conduct was unfair or unconscionable. Allegations that are insufficient to form the basis of a valid antitrust claim are also insufficient to constitute a violation of consumer protection law. *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 163; *Formula One Licensing, B.V.*, 2001 WL 34792530, at *4; *Hicks*, 165 F. Supp. 3d at 911; *In re Plavix Indirect Purchaser Antitrust Litig.*, 2011 WL 335034, at *5. Accordingly, since Plaintiffs do not plead any additional allegations specific to their consumer protection claims, Plaintiffs fail to plead that Defendants have engaged in any conduct that is unfair or unconscionable as those terms are defined by state law. Therefore any claim based on unfair or unconscionable conduct should be dismissed.[34]

---

[33]     For example, in determining whether conduct qualifies as unfair, states typically consider "(1) [w]hether the practice . . . offends public policy; . . . (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers. *Ulbrich v. Groth*, 78 A.3d 76, 100 (Conn. 2013) (quotation marks omitted) (applying test to Connecticut Unfair Trade Practices Act).

[34]     Plaintiffs also fail to plead that Defendants engaged in unlawful conduct in violation of California's Unfair Competition Law. The "unlawful" prong of the statute requires a demonstration that some other law has been violated, which Plaintiffs do not allege. *See Moran v. Prime Healthcare Mgmt., Inc.*, 208 Cal. Rptr. 3d 303, 311 (Ct. App. 2016) ("[V]iolation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.") (quotation marks omitted). Accordingly, Plaintiffs' Unfair Competition Law "unlawful" claim must be dismissed.

### D. Plaintiffs Lack Statutory Authority to Challenge Antitrust Conduct Under Various State Consumer Protection Laws.

Plaintiffs' claims under the consumer protection statutes of Indiana, Maine, and Michigan should be dismissed because those state statutes do not prohibit the antitrust conduct Plaintiffs allege. Plaintiffs' consumer protection claims are premised on allegations of price fixing and market allocation. Such allegations, without more, are insufficient to sustain a claim under each of these states' consumer protection statutes.

The Indiana Deceptive Consumer Sales Act ("IDCSA") prohibits "unfair, abusive, or deceptive" acts, omissions, or practices. Ind. Code § 24-5-0.5-3. Plaintiffs' allegations do not match any of the prohibited practices discussed in the statute, *see id.* § 24-5-0.5-3, and Indiana courts have rejected IDCSA claims based on allegations similar to those in the Complaint. *See Berghausen*, 765 N.E.2d at 598 (affirming dismissal of IDCSA claim based on allegation of monopolistic pricing).

The Maine Unfair Trade Practices Act ("MUTPA") also does not encompass the anticompetitive conduct alleged by Plaintiffs. The MUTPA forbids "[u]nfair methods of competition" and "unfair or deceptive . . . conduct of any trade." Me. Rev. Stat. tit. 5, § 207. A business practice is considered "unfair" if the injury it produces is (1) "substantial," (2) not "outweighed by any countervailing benefits to consumers or competition that the practice produces," and (3) not reasonably avoidable by consumers. *Tungate v. MacLean–Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998) (quoting *Suminski v. Me. Appliance Warehouse, Inc.*, 602 A.2d 1173, 1174 n. 1 (Me. 1992)). In pricing cases, the allegedly unfair practice must

also induce the consumer to acquire something that he or she would not otherwise have purchased. *Id.* The MUTPA does not apply to allegations of price fixing because higher prices cannot induce individuals to purchase something they would not otherwise have purchased. *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584–85 (M.D. Pa. 2009) (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1126 (N.D. Cal. 2008); *accord In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1031 (N.D. Cal. 2007)); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2017 WL 1010329, at \*19 (S.D. Cal. Mar. 14, 2017) (noting that "the vast majority of our sister courts" have held that "a change in consumer conduct forms the marrow of a MUTPA violation") (quoting *Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 585 n.59).

The Michigan Consumer Protection Act ("MCPA") forbids "[u]nfair, unconscionable, or deceptive methods, acts or practices" that are specifically itemized under the statute. Mich. Comp. Laws § 445.903(1). Plaintiffs' antitrust allegations do not fit any of the practices proscribed by the MCPA, which warrants dismissal. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d at 189 (dismissing MCPA claims, noting that unfair practices under the statute are specifically itemized and do not encompass price-fixing claims); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 413 (E.D. Pa. 2010) (dismissing MCPA claims based on allegations of anticompetitive conduct).

Accordingly, the Court should dismiss Plaintiffs' consumer protection claims in Indiana, Maine, and Michigan.

E.   <u>Plaintiffs Fail To Plausibly Allege In-State Injury as Required Under Various State Laws.</u>

New Hampshire and North Carolina's consumer protection statutes prohibit conduct that occurs *within* their respective states.[35]   To plead intrastate conduct, it is not sufficient for a plaintiff to plead that the defendant sold a good within a state if the proscribed conduct occurred elsewhere.   *See In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 1431756, at *18-19 (E.D. Mich. Apr. 9, 2013) (dismissing New Hampshire and North Carolina consumer protection claims for lack of intrastate injury where plaintiffs merely alleged that a named plaintiff purchased products at inflated prices in those states); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *22 (N.D. Cal. Oct. 2, 2014) ("merely selling a good in New Hampshire is not enough when the proscribed conduct occurs elsewhere").   A plaintiff's failure to plead allegations of intrastate conduct is grounds for dismissal.   *See In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, 2015 WL 5166014, at *33 (dismissing plaintiffs' claims under the New Hampshire Consumer Protection Act and North Carolina Unfair Trade Practices Act based on price fixing and monopolization allegations where plaintiffs "failed to meaningfully address intrastate commerce

---

[35]   New Hampshire's consumer protection laws make it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat. Ann. § 358–A:2.  A claim under the North Carolina Unfair Trade Practices Act must include an allegation of a *substantial* in-state effect.  *Merck & Co. Inc. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996).

with respect to these claims"); *see also In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *18-19; *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *22.

Plaintiffs do not plead intrastate conduct specific to New Hampshire or North Carolina.  They simply make the conclusory allegation that Defendants' "violations artificially inflated prices of generic drugs, substantially affecting the people of New Hampshire and having various impacts within the Plaintiff State," and do not even include an equivalent statement with respect to North Carolina. *See* Compl. ¶ 266.  Plaintiffs' New Hampshire and North Carolina consumer protection claims should therefore be dismissed.[36]

### F.   Plaintiffs Lack Statutory Authority Under Vermont Law Because Defendants Do Not Sell Directly to Consumers.

Vermont's consumer protection law defines a seller as "a person regularly and principally engaged in a business of selling goods or services to consumers." VT Stat. Ann. tit. 9 § 2451a(c).  This Court should dismiss Plaintiffs' Vermont claim because Plaintiffs fail to plausibly allege that Defendants sell directly to consumers.  *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503-DJC, 2015 WL 5458570, at *18 (D. Mass Sept. 16, 2015) (dismissing Vermont claims where plaintiffs failed to plausibly allege that defendant pharmaceutical manufacturers sell directly to consumers "as required to fit Vermont's statutory definition of a seller").

---

[36]    To the extent the remaining state-law claims do not require a connection to intrastate commerce, they are unconstitutional under the Dormant Commerce Clause. *Flood*, 407 U.S. at 284–85 (1972) (interstate transactions governed by federal law, not state law).

G. **Plaintiffs' Claims on Behalf of Indirect Purchasers Fail Under the Laws of Several States.**

As discussed *supra* Part III.B, indirect purchasers may not recover damages under the laws of Connecticut, Florida, Indiana, Louisiana, Montana, and New Jersey. To the extent that Plaintiffs seek to recover damages on behalf of indirect purchasers, those claims are barred under the laws of these states. *See Vacco*, 793 A.2d at 1065 (striking indirect purchaser claims under the CUTPA and "appl[ying] traditional common-law principles of remoteness and proximate causation to determine whether a party has standing to bring an action under CUTPA."); *Berghausen*, 765 N.E. 2d at 598-99 (indirect purchaser did not state a claim under Indiana Deceptive Consumer Sales Act because he could not allege that he was a victim of a solicitation by the defendant to enter into a contract or agreement, which the statute "explicitly requires"); *Mylan Labs., Inc.*, 99 F. Supp. 2d at 7 (refusing to reinstate Louisiana consumer protection claim for damages on behalf of indirect purchasers); *In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d at 413 (dismissing indirect purchaser claims under Florida and Montana law); *Wilson v. Gen. Motors Corp.*, 921 A.2d 414, 417 (N.J. 2007) (per curiam) (holding that antitrust claims cast in terms of the New Jersey Consumer Fraud Act, "without any allegation of a direct or indirect statement or communication with any plaintiff, are precluded under *Illinois Brick*"). Therefore, Plaintiffs' claims for damages on behalf of indirect purchasers under the consumer protection laws of Connecticut, Florida, Indiana, Louisiana, Montana, and New Jersey should be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' individual motions to dismiss, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint. And because further amendment would be futile, the claims should be dismissed on the merits with prejudice.

DATED:  May 1, 2017

DEFENDANT
MYLAN PHARMACEUTICALS INC.

BY:  /s/ Kim E. Rinehart
    Kim E. Rinehart (ct24427)
    Wiggin and Dana LLP
    One Century Tower
    265 Church Street
    P.O. Box 1832
    New Haven, CT 06508-1832
    Tel:  (203) 498-4400
    Fax:  (203) 782-2889
    krinehart@wiggin.com

    Robert M. Langer (ct06305)
    Wiggin and Dana LLP
    20 Church Street
    Hartford, CT 06103
    Tel:  (860) 297-3700
    Fax:  (860) 525-9380
    rlanger@wiggin.com

    Mitchell Zamoff (*pro hac vice*)
    Adam Levin (*pro hac vice*)
    Benjamin Holt (*pro hac vice*)
    Justin Bernick (*pro hac vice*)
    Hogan Lovells US LLP
    555 13th Street, NW
    Washington, DC 20004
    Tel:  (202) 637-5600
    Fax:  (202) 637-5910
    mitch.zamoff@hoganlovells.com
    adam.levin@hoganlovells.com
    benjamin.holt@hoganlovells.com
    justin.bernick@hoganlovells.com

DEFENDANT
AUROBINDO PHARMA USA, INC.

BY:   /s/ Elizabeth M. Lacombe
    Elizabeth M. Lacombe
    Duane Morris LLP
    100 Pearl Street, Suite 1415
    Hartford, CT 06103
    Tel: (215) 979-1577
    Fax: (207) 470-1099
    emlacombe@duanemorris.com

    Wayne A. Mack (*pro hac vice*)
    Seth A. Goldberg (*pro hac vice*)
    Duane Morris, LLP
    30 South 17th Street
    Philadelphia, PA 19103-4196
    Tel:  (215) 979-1000
    Fax:  (215) 979-1020
    wamack@duanemorris.com
    sagoldberg@duanemorris.com

DEFENDANT
CITRON PHARMA, LLC

BY:   /s/ Christine C. Levin
    Christine C. Levin (*pro hac vice*)
    Steven E. Bizar (*pro hac vice*)
    Dechert LLP
    Cira Centre
    2929 Arch St.
    Philadelphia, PA 19104-2808
    Tel:  (215) 994-2421
    Fax:  (215) 655-2421
    clevin@dechert.com
    steven.bizar@dechert.com

DEFENDANT
HERITAGE PHARMACEUTICALS
INC.

BY:  /s/ James T. Shearin
    James T. (Tim) Shearin (ct01326)
    Nathaniel J. Gentile (ct28860)
    Pullman & Comley, LLC
    850 Main Street, P.O. Box 7006
    Bridgeport, CT 06601-7006
    Tel: (203) 330 2000
    Fax: (203) 576 8888
    jtshearin@pullcom.com
    ngentile@pullcom.com

    D. Jarrett Arp (*pro hac vice*)
    Melanie L. Katsur (*pro hac vice*)
    Christopher B. Leach (*pro hac vice*)
    Gibson, Dunn & Crutcher LLP
    1050 Connecticut Ave., NW
    Washington, DC 20036-5306
    Tel: (202) 955-8678
    Fax:  (202) 530-9527
    jarp@gibsondunn.com
    mkatsur@gibsondunn.com
    cleach@gibsondunn.com

DEFENDANT
MAYNE PHARMA, INC

BY:   /s/ Michael Martinez

   **Michael Martinez (*pro hac vice*)**
   **Steven Kowal (*pro hac vice*)**
   **Lauren Norris Donahue (*pro hac vice*)**
   **Brian J. Smith (*pro hac vice*)**
   **K&L Gates LLP**
   **70 W. Madison St., Suite 3100**
   **Chicago, IL 60602**
   **Tel: (312) 372-1121**
   **Fax: (312) 827-8000**
   michael.martinez@klgates.com
   steven.kowal@klgates.com
   lauren.donahue@klgates.com
   brian.j.smith@klgates.com

   **Sean R. Higgins (ct28279)**
   **K&L Gates, LLP**
   **State Street Financial Center**
   **One Lincoln Street**
   **Boston, MA 02111-2950**
   **Tel: (617) 261-3100**
   **Fax: (617) 261-3175**
   sean.higgins@klgates.com

DEFENDANT
TEVA PHARMACEUTICALS USA, INC.

BY:  /s/ Jill M. O'Toole

   **Jill M. O'Toole (ct27116)**
   **James Bergenn (ct00006)**
   **Shipman & Goodwin LLP**
   **One Constitution Plaza**
   **Hartford, Connecticut 06103-1919**
   **Tel.: (860) 251-5000**
   **Fax: (860) 251-5218**
   jotoole@goodwin.com
   jbergenn@goodwin.com

   **Marc E. Kasowitz (*pro hac vice*)**
   **Hector Torres (*pro hac vice*)**
   **David E. Ross (ct12779)**
   **Seth Davis (*pro hac vice*)**
   **Thomas J. Amburgy (*pro hac vice*)**
   **Kasowitz Benson Torres LLP**
   **1633 Broadway**
   **New York, New York 10019**
   **Tel.:  (212) 506-1700**
   **Fax:  (212) 506-1800**
   mkasowitz@kasowitz.com
   htorres@kasowitz.com
   dross@kasowitz.com
   sdavis@kasowitz.com
   tamburgy@kasowitz.com

*Attorneys for Defendants*

35

## APPENDIX A: GROUNDS FOR DISMISSAL OF STATE-LAW CLAIMS

| VIOLATION OF STATE ANTITRUST STATUTES | | | | | | | |
|---|---|---|---|---|---|---|---|
| All State Antitrust Claims | No Facts Alleged Showing Entitlement to Injunctive Relief | No Facts Alleged Showing Constitutional Standing to Sue as Parens Patriae | No Antitrust Injury | No State-Law Authority to Sue for Damages as Parens Patriae | Claims for Monetary Relief Barred Under *Illinois Brick* | No Standing to Sue on Behalf of Governmental Entities | Failure to Plead Substantial Effect on Intrastate Commerce |
| Arizona | X | X | X | X | | | X |
| California | X | X | X | | | | X |
| Colorado | X | X | X | | X | X | X |
| Connecticut | X | X | X | | X | | X |
| Delaware | X | X | X | | X | | X |
| Florida | X | X | X | | X | | X |
| Hawaii | X | X | X | | | | X |
| Idaho | X | X | X | | | | X |
| Illinois | X | X | X | | | | X |
| Indiana | X | X | X | X | X | | X |
| Iowa | X | X | X | | | | X |
| Kansas | X | X | X | | | | X |
| Louisiana | X | X | X | | X | | X |
| Maine | X | X | X | X | | | X |
| Maryland | X | X | X | | | | X |
| Michigan | X | X | X | | | | X |
| Minnesota | X | X | X | | | | X |
| Mississippi | X | X | X | | | | X |
| Nebraska | X | X | X | | | | X |
| Nevada | X | X | X | | | | X |
| New Hampshire | X | X | X | | | | X |
| New Jersey | X | X | X | X | X | | X |
| New York | X | X | X | X | | X | X |
| North Carolina | X | X | X | X | | | X |
| North Dakota | X | X | X | X | | | X |
| Ohio | X | X | X | | X | | X |

| VIOLATION OF STATE ANTITRUST STATUTES | | | | | | | |
|---|---|---|---|---|---|---|---|
| All State Antitrust Claims | No Facts Alleged Showing Entitlement to Injunctive Relief | No Facts Alleged Showing Constitutional Standing to Sue as Parens Patriae | No Antitrust Injury | No State-Law Authority to Sue for Damages as Parens Patriae | Claims for Monetary Relief Barred Under *Illinois Brick* | No Standing to Sue on Behalf of Governmental Entities | Failure to Plead Substantial Effect on Intrastate Commerce |
| Oklahoma | X | X | X | | X | | X |
| Oregon | X | X | X | | | | X |
| Pennsylvania | X | X | X | X | | | X |
| Tennessee | X | X | X | X | | | X |
| Utah | X | X | X | | | | X |
| Virginia | X | X | X | | X | | X |
| Wisconsin | X | X | X | X | | | X |

| | VIOLATION OF STATE CONSUMER PROTECTION STATUTES | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| All State Consumer Protection Claims | Failure to Plead Consumer Protection Claim | No Statutory Authority to Seek Damages | Failure to Plead Deceptive Conduct | Failure to Plead Unfair or Unconscionable Conduct | No Statutory Authority to Challenge Antitrust Claims | Failure to Plead Intrastate Injury | No Statutory Authority Because Defendants Do Not Sell to Consumers | No Authority to Recover on Behalf of Indirect Purchasers |
| Alabama | X | | | X | | X | | |
| Arizona | X | | X | | | X | | |
| California (UCL) | X | | | X | | X | | |
| California (FAL) | X | | X | | | X | | |
| Connecticut | X | | | X | | X | | X |
| Florida | X | | | X | | X | | X |
| Hawaii | X | | | X | | X | | |
| Indiana | X | | | X | X | X | | X |
| Iowa | X | | | X | | X | | |
| Kentucky | X | X | | X | | X | | |
| Louisiana | X | | | X | | X | | X |
| Maine | X | | | X | X | X | | |
| Massachusetts | X | | | X | | X | | |
| Michigan | X | | | X | X | X | | |
| Minnesota | X | | X | | | X | | |
| Mississippi | X | | | X | | X | | |
| Montana | X | | | X | | X | | X |
| Nebraska | X | | | X | | X | | |
| Nevada | X | | X | | | X | | |
| New Hampshire | X | | | X | | X | | |
| New Jersey | X | | | X | | X | | X |
| North Carolina | X | | | X | | X | | |
| North Dakota | X | | X | | | X | | |
| Pennsylvania | X | | X | | | X | | |
| South Carolina | X | X | | X | | X | | |
| Vermont | X | | | X | | X | X | |
| Washington | X | | | X | | X | | |