## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **THE STATE OF CONNECTICUT, et al.,**<br><br>       **Plaintiffs,**<br><br>  **v.**<br><br>**AUROBINDO PHARMA USA, INC., et al.,**<br><br>       **Defendants.** | **Civil Action No.**<br>**3:16-CV-002056 (VLB)**<br><br>**Hon. Vanessa L. Bryant**<br><br>**Public Version**<br><br>**May 1, 2017** |

## MEMORANDUM OF LAW IN SUPPORT OF AUROBINDO PHARMA USA, INC.'S INDIVIDUAL MOTION TO DISMISS THE STATE ATTORNEYS GENERAL PLAINTIFFS' AMENDED COMPLAINT

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT ............................................................................................................. 5

I.  **PLAINTIFFS DO NOT PLEAD FACTS PLAUSIBLY SUGGESTING A CONSPIRACY INVOLVING AUROBINDO AFFECTING GLYBURIDE** ............. 5

    A.  **Standard of Review** ................................................................................ 5

    B.  **Plaintiffs do not allege any direct evidence that Aurobindo entered into an agreement in violation of the antitrust laws.** ............. 7

    C.  **Plaintiffs fail to plead circumstantial facts supporting the inference that Aurobindo participated in a conspiracy.** ...................... 9

II. **PLAINTIFFS FAIL TO PLEAD ANTITRUST INJURY** ...................................... 15

CONCLUSION ........................................................................................................ 17

## TABLE OF AUTHORITIES

**Federal Cases**

*In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151 (2d Cir. 2016).................................................................................. 16

*Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162 (2d Cir. 2012)................................................................................... 6

*Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983)................................................................ 15

*Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990).................................. 15

*In re Baby Food Antitrust Litig.*, 166 F.3d 112 (3d Cir. 1999) ............................... 8, 10

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ....................................................... 5, 16

*Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258 (D. Conn. 2012).............................................................................. 1

*County of Tuolumne v. Sonora Community Hosp.*, 236 F.3d 1148 (9th Cir. 2001)................................................................................. 8

*Daimler AG v. Bauman*, 571 U.S. 20 (2014) ............................................................. 1

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141 (D. Conn. 2009)....................................................... 7, 13

*In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 74 F. Supp. 3d 581 (S.D.N.Y. 2015) .................................................... 8

*In re Fresh and Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141 (D. Idaho 2011) ........................................................ 7, 13

*Gatt Commcn's, Inc. v. PMC Assocs., LLC*, 711 F.3d 68 (2d Cir. 2013) ................. 15

*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007)................................................................... 14

*Hinds County, Miss. v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348 (S.D.N.Y. 2010)....................................................... 6-7, 11, 13

*Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310 (6th Cir. 2014)........................... 8

*Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210 (S.D.N.Y. 1998) ....... 6, 9, 11, 13

*LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136 (E.D.N.Y. 2010)........ 10-12, 14

*In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953 (N.D. Cal. 2007)...................................................................................... 10-11

*Latino Quimica-Amtex S.A. v. Akzo Nobel Chemicals B.V.*, No. 03-Civ-10312, 2005 WL 2207017 (S.D.N.Y. Sept. 8, 2005)........................................... 16-17

*Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD), 2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) ......................................................... 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................. 15

*Mayor and City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129 (2d Cir. 2013) .......................................................................... 5-7

*In re Parcel Tanker Shipping Services Antitrust Litig.*, 541 F. Supp. 2d 487 (D. Conn. 2008)..................................................................... 10, 11, 14

*Resco Prod., Inc. v. Bosai Minerals Grp. Co.*, 158 F. Supp. 3d 406 (W.D. Pa. 2016) ........................................................................... 10

*Robb v. Connecticut Board of Veterinary Medicine*, 157 F. Supp. 3d 130 (D. Conn. 2016)..................................................................... 6, 9

*RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218 (E.D.N.Y. 2009)........................................................................... 10

*State of Connecticut, et al. v. Aurobindo Pharma USA, Inc., et al.*, No. 3:16-cv-02056 (D. Conn. Mar. 1, 2017), ECF Nos. 168, 170 .........................*Passim*

*In re Text Messaging Antitrust Litigation,* 630 F.3d 622 (7th Cir. 2010) .................. 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, C 09-5609 SI, 2010 WL 2629728 (N.D. Cal. June 29, 2010).......................................................... 7, 14

*In re Travel Agent Comm'n Antitrust Litig.*, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007)......................................................................... 11

*TruePosition, Inc. v. LM Ericsson Tel. Co.*, 844 F. Supp. 2d 571 (E.D. Pa. 2012) ............................................................................. 8

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ....................................................... 1

State Cases

*Yellow Page Sols., Inc. v. Betll Atl. Yellow Pages Co.*, 2001 WL 1468168 (S.D.N.Y. Nov. 19, 2001) .......................................................... 10

**Federal Statutes**

**15 U.S.C. § 1** .................................................................................*Passim*

**Rules**

**Fed. R. Civ. P. 12(b)(2)** ........................................................................ **1**

**Fed. R. Civ. P. 12(b)(6)** ................................................................ **14, 17**

Defendant Aurobindo Pharma USA, Inc. ("Aurobindo") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint.[1]

## INTRODUCTION

The Amended Complaint does not allege any facts that plausibly suggest Aurobindo actually participated in a conspiracy to manipulate the prices of Glyburide.  The Court should dismiss the Amended Complaint for the following three reasons.

*First*, the Amended Complaint does not set forth any allegations of direct evidence that Aurobindo entered into a horizontal agreement with its alleged co-conspirators to manipulate the prices of Glyburide in violation of the antitrust laws.  Direct evidence would unequivocally reflect the terms of the agreement

---

[1]     To the extent the Court finds that it lacks personal jurisdiction over Defendant Heritage under Fed. R. Civ. P. 12(b)(2) pursuant to the separate motion to dismiss filed today by Heritage, the Court should dismiss the Counts II and III against Aurobindo on the same grounds. Aurobindo is not subject to general personal jurisdiction in Connecticut because it is incorporated in Delaware with its principal place of business in New Jersey, and it is not "essentially at home" in this State.  *See Daimler AG v. Bauman*, 571 U.S. 20 (2014). Aurobindo is not subject to specific personal jurisdiction in Connecticut on Plaintiffs' claims because the Amended Complaint does not sufficiently allege "suit-related conduct" by Aurobindo that "create[s] a substantial connection with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014).

In addition, Aurobindo joins in the separate motion and memorandum of law filed today by Defendant Mayne to the extent it asks that the Court exercise its discretion and sever the Amended Complaint's Doxy DR claims from the Glyburide claims.  The respective claims do not arise out of the same transaction or occurrence, nor do they present common questions of fact that can be answered by the same witnesses or the same documentary proof. *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012). Severance of the claims would facilitate judicial economy and avoid prejudicing those defendants, such as Aurobindo, who are not alleged to have participated in both the Doxy DR and Glyburide markets.

that Aurobindo is alleged to have entered into without the need for any inferences.  There are no allegations of direct evidence with respect to Aurobindo in the Amended Complaint.

*Second*, Plaintiffs fail to identify any act of Aurobindo that would support the allegation that Aurobindo participated in the alleged conspiracy.  The Amended Complaint contains no allegations that Aurobindo implemented any price increases, modified its bidding habits, or engaged in any other conduct that could reasonably be construed as being consistent with the alleged conspiracy. There are simply no allegations of parallel conduct by Aurobindo, let alone concerted conduct.

Without factual allegations demonstrating conduct by Aurobindo that is consistent with the alleged conspiracy, allegations about the purported anticompetitive conduct of other Defendants, government investigations into the generic pharmaceutical industry overall, and increased pricing of generics other than Glyburide, *even if true*, do not form a sufficient basis of circumstantial facts on which the Court can infer that Aurobindo participated in the alleged conspiracy.  Much more is needed to support that inference.

*Third*, in light of the fact that the Amended Complaint does not allege that Aurobindo raised its prices for Glyburide for any customer or engaged in any conduct, anticompetitive or otherwise, Plaintiffs fail to plead antitrust injury and the requisite proximate causation.

Because Plaintiffs do not set forth any allegations of direct of evidence of an actual agreement entered into by Aurobindo and do not allege circumstantial

facts of parallel anticompetitive conduct taken by Aurobindo that would be consistent with the alleged conspiracy, the Amended Complaint fails to plausibly suggest a federal antitrust claim against Aurobindo or to establish that Plaintiffs suffered antitrust injury.

<u>**STATEMENT OF FACTS**</u>

The Plaintiffs are a group of forty states (collectively, "Plaintiffs" or the "Plaintiff States"), who allege, without differentiation or support, that "Defendants" entered "into contracts, combinations and conspiracies that had the effect of unreasonably restraining trade, artificially inflating and maintaining prices and reducing competition in the markets for Doxycycline Hyclate Delayed Release ("Doxy DR") and Glyburide in the United States." *State of Connecticut, et al. v. Aurobindo Pharma USA, Inc., et al.*, No. 3:16-cv-02056 (D. Conn. Mar. 1, 2017), ECF Nos. 168, 170 ("Am. Compl.") at ¶ 1.

Plaintiffs allege that "Heritage and other Defendants" reached agreements to allocate market share, maintain high prices and/or avoid price erosion for Doxy DR. *Id.* at ¶ 67. Aurobindo, however, is not alleged to have ever competed in, or engaged in anticompetitive conduct regarding, the Doxy DR market, and there are no claims asserted against Aurobindo with respect to Doxy DR. *Id.* at ¶¶ 69-103, 141-146.

Plaintiffs also allege that "Heritage and other Defendants" reached an agreement to fix and raise prices of Glyburide. *Id.* at ¶ 103. While there is one allegation that Heritage competed with Aurobindo "in the market for Glyburide," there are no allegations that plausibly suggest that Aurobindo ever engaged in any anticompetitive conduct to fix or raise Glyburide prices. *Id.* at ¶¶ 103-133.

The Amended Complaint instead references only communications and allegedly anticompetitive conduct between other Defendants.  *Id.* at ¶¶ 104-124.  Indeed, the Amended Complaint only mentions Aurobindo in relation to the alleged conspiracy three times, and none of those allegations involve any communications or conduct by Aurobindo.

First, Plaintiffs allege that "an executive from defendant Aurobindo" attended a dinner at a steakhouse with more than a dozen executives of "various generic drug manufacturers" in January 2014.  *Id.* at ¶ 55.  There are no allegations of any business-related discussions at this dinner, including the prices of any generic drugs, generally, or Glyburide, specifically.

Second, Plaintiffs allege that a ███████████ "was able to personally confirm an agreement with defendant Aurobindo to raise the price of Glyburide." *Id.*at ¶ 114.  The only factual support for this "agreement," however, is an ████ ████ email stating ████████████████████ ███████████████████████████████████████████████████████. *Id.*

Third, the Amended Complaint alleges that someone from Heritage exchanged text messages with someone from Citron about ███████████ ███████████████████████████████████ *Id.* at ¶ 117.  The person from Citron responded ███. *Id.*  The Amended Complaint is silent as to: (i) what Aurobindo "agreed" to; (ii) what price, if any, Aurobindo "agreed" to charge; (iii) which customer, if any, was overcharged; (iv) when Aurobindo "agreed"; (v)

how Aurobindo "agreed"; (vi) whom from Aurobindo "agreed;" and (vii) whether that individual even had pricing authority at Aurobindo.

Finally, there is not a single allegation that Aurobindo ever acted in furtherance of the alleged conspiracy.  There are no allegations that Aurobindo ever raised its prices, or refused to bid, for Glyburide from April 2014 to December 2015, the time of the alleged conspiracy.  *Id.* at ¶¶ 105-124.

## ARGUMENT

### I.    PLAINTIFFS DO NOT PLEAD FACTS PLAUSIBLY SUGGESTING A CONSPIRACY INVOLVING AUROBINDO AFFECTING GLYBURIDE

Plaintiffs fail to make any allegations of a plausible conspiracy to manipulate the price of Glyburide involving Aurobindo.  The Amended Complaint fails to sustain a Section 1 claim against Aurobindo because it lacks allegations of a coherent conspiracy that plausibly connects Aurobindo to any of its co-Defendants' alleged anticompetitive conduct through either (i) direct evidence of an agreement or (ii) through circumstantial evidence predicated on anticompetitive conduct committed by Aurobindo.

### A.    Standard of Review

To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  Conclusory allegations of participation in a conspiracy should be given no effect and have long been held insufficient to state a claim. *See, e.g.*, *Mayor and City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) ("We give no effect at all to legal conclusions couched as factual allegations.") (internal quotations omitted); *Anderson News, L.L.C. v.*

*American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (refusing to afford conclusory allegations the assumption of truth).  Accordingly, the conclusory allegations in the Amended Complaint that Aurobindo participated in a conspiracy affecting Glyburide are not entitled to the presumption of truth and those allegations are entitled to no weight in considering whether Plaintiffs have stated a viable claim against Aurobindo.

Allegations must also demonstrate more than a sheer possibility that a defendant violated Section 1 of the Sherman Act to survive a motion to dismiss. *See Robb v. Connecticut Board of Veterinary Medicine*, 157 F. Supp. 3d 130, 143 (D. Conn. 2016) (concluding that an antitrust plaintiff must do more than simply allege that "the parties agreed").  "A plaintiff's job at the pleading stage, in order to overcome a motion to dismiss, is to allege enough facts to support the inference that a conspiracy actually existed."  *Mayor and City of Baltimore*, 709 F.3d at 136.  To do so, Plaintiffs must allege "direct or circumstantial evidence that reasonably tends to prove that the defendant and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 220 (S.D.N.Y. 1998) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)).

While Plaintiffs need not plead an "overt act against each defendant," Plaintiffs first must plead that each Defendant engaged in concerted action.  *See Invamed,* 22 F. Supp. at 221 (quoting *State of N.Y. v. Cedar Park Concrete Corp.*, 665 F. Supp. 238, 246-47 (S.D.N.Y. 1987); *see also, e.g.*, *Hinds County, Miss. v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348, 358 (S.D.N.Y. 2010) (requiring that

plaintiffs allege that each defendant participated in or agreed to join the conspiracy).  When antitrust plaintiffs provide allegations that some, but not all, of the defendants participated in or agreed to join a conspiracy, courts routinely dismiss the claims as to those defendants for which there are insufficient allegations of their involvement.  *See, e.g.*, *Hinds*, 708 F. Supp. 2d at 358; *In re Fresh and Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1150 (D. Idaho 2011) (dismissing claims against certain defendants, explaining "for each individual defendant, plaintiffs must allege that *that* defendant had 'a conscious commitment to a common scheme designed to achieve an unlawful object.'") (emphasis in original); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, C 09-5609 SI, 2010 WL 2629728, at *7 (N.D. Cal. June 29, 2010) ("allegations and assertions about Royal Philips and LG Display are insufficient to state a claim against PENAC unless the complaint alleges a specific connection between PENAC and the alleged conspiracy").

      **B.**    <ins>**Plaintiffs do not allege any direct evidence that Aurobindo entered into an agreement in violation of the antitrust laws.**</ins>

Direct evidence of an alleged anticompetitive agreement is the agreement itself.  *See Mayor and City of Baltimore*, 709 F.3d at 136 (direct evidence is explicit and requires no inferences to establish the existence of an anticompetitive agreement); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, 166 (D. Conn. 2009) (direct evidence is an admission by the defendants that they agreed to fix their prices).  "Such evidence would consist, for example, of a recorded phone call in which two competitors agreed to fix prices at a certain level."  *Mayor and City of Baltimore*, 709 F.3d at 136*; see also*

*In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 74 F. Supp. 3d 581, 591-92 (S.D.N.Y. 2015) (allegations that defendants used chat rooms and instant messaging platforms to set prices and to share customer information and net trading positions considered direct evidence).  "Courts refer to direct evidence of an agreement as the proverbial 'smoking gun.'"  *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 844 F. Supp. 2d 571, 593 (E.D. Pa. 2012) (citing examples of direct evidence).

The Amended Complaint does not refer to any direct evidence of an agreement that Aurobindo entered into.  There are no citations to any emails, correspondence, texts, phone calls, or statements made by any executive, officer, or employee of Aurobindo confirming the existence and terms of the alleged agreement.  Nothing in the Amended Complaint could arguably be considered allegations that would constitute direct evidence that Aurobindo participated in a conspiracy to raise the price of Glyburide.  Indeed, courts have considered factual allegations much more explicit than those in the Amended Complaint to be insufficient direct evidence of a conspiracy.  *See, e.g.*, *Hyland v. HomeServices of Am., Inc.,* 771 F.3d 310, 318 (6th Cir. 2014) (transcript of communications between co-defendants regarding competition on personal performance rather than brokerage fees insufficient to constitute direct evidence); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999) (memorandum regarding a "truce" with competition only showed an exchange of information among defendants, not direct evidence of a conspiracy); *County of Tuolumne v. Sonora Community Hosp.*, 236 F.3d 1148, 1155 (9th Cir. 2001) (letter

prepared by defendant read in presence of co-defendants did not constitute direct evidence).

The types of evidence involved in the foregoing cases are more explicit than the allegations in the Amended Complaint involving Aurobindo; however, none were considered direct evidence because each piece of evidence required inferences to be drawn in order to establish an unlawful agreement.  Here, the Amended Complaint also fails to identify a "smoking gun" evincing an agreement between Aurobindo and the other Defendants to raise the prices of Glyburide.

C.   **Plaintiffs fail to plead circumstantial facts supporting the inference that Aurobindo participated in a conspiracy.**

When there is no direct evidence, as is the case here, a complaint may survive dismissal "only if an actual agreement 'may be inferred on the basis of conscious parallelism, when such interdependent conduct is accompanied by circumstantial evidence and plus factors.'"  *Robb*, 157 F. Supp. 3d at 143 (quoting *Mayor and City Council of Baltimore*, 709 F3d at 136).  The fundamental allegation in any parallel conduct claim is that the defendants engaged in anticompetitive conduct consistent with the alleged conspiracy.  *See Invamed*, 22 F. Supp. 2d at 221 ("Invamed has not alleged that [defendant] the Affiliates 'acted' in any way, whether pursuant to a conspiracy or not.").  While "an overt act need not be pleaded against each defendant," Plaintiffs first must plead that Aurobindo "engaged in concerted action." *Id.* (quoting *Cedar Park Concrete Corp.*, 665 F. Supp. at 246-47 and citing *Monsanto*, 465 U.S. at 764).  The Amended Complaint cannot rely solely on allegations of general conspiratorial activity; it must reference specific actions by each particular Defendant at particular times.  *See In*

*re Parcel Tanker Shipping Services Antitrust Litig.*, 541 F. Supp. 2d 487, 491 (D. Conn. 2008).

Plaintiffs fail to allege <u>any</u> conduct by Aurobindo, *e.g.*, that Aurobindo actually raised Glyburide prices or otherwise engaged in "anomalous behavior," either unilaterally or in parallel, with its co-Defendants.  This alone warrants dismissal of the Amended Complaint.  *See, e.g., LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136, 151-52 (E.D.N.Y. 2010) (dismissing complaint for failing to allege "anomalous behavior" such as "brazen parallel pricing, price floors, lockstep price increases, and use of joint ventures linking each defendants' financial interest to all others as indicia allowing an inference of conspiracy"); *RxUSA Wholesale, Inc. v. Alcon Labs., Inc.,* 661 F. Supp. 2d 218, 233 (E.D.N.Y. 2009) (dismissing Sherman Act § 1 claim for failure to allege parallel conduct); *Yellow Page Sols., Inc. v. Betll Atl. Yellow Pages Co.*, 2001 WL 1468168, at *14 (S.D.N.Y. Nov. 19, 2001) (granting motion to dismiss price-fixing claim because plaintiffs failed to allege that defendants "charge[d] the same rates for advertising or even that they have adopted the same discount commission structure"); *In re Baby Food Antitrust Litig.,* 166 F.3d at 128 (affirming district court's conclusion that plaintiffs were "unable to show that defendants' prices moved in a parallel fashion . . . [o]n this basis alone, plaintiffs' case fails"); *Resco Prod., Inc. v. Bosai Minerals Grp. Co.*, 158 F. Supp. 3d 406, 424 (W.D. Pa. 2016) (assertions of general price movements could not demonstrate parallel increases absent evidence "of the amount or timing of any of the pricing increases it claim[ed] were the product of collusion"); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962-65

(N.D. Cal. 2007) (dismissing complaint in part because it alleged only partly parallel conduct and showed that several defendants had "different . . . price levels" and had followed "different pricing paths at different times"); *In re Travel Agent Comm'n Antitrust Litig.*, 2007 WL 3171675, at *4 (N.D. Ohio Oct. 29, 2007) (dismissing claims because plaintiffs did not "put forth any 'factual matter' suggesting [four defendants] engaged in parallel conduct" (quoting *Twombly*, 550 U.S. at 556)), *aff'd*, 583 F.3d 896 (6th Cir. 2009).

Here, Aurobindo is not alleged to have engaged in <u>any</u> conduct—anticompetitive, parallel, or otherwise—consistent with the alleged conspiracy. The only non-conclusory allegations about purported anticompetitive conduct at all involve other Defendants, not Aurobindo. *See* Am. Compl. at ¶¶ 120-122. There are no allegations that Aurobindo raised its prices, refused to bid, or otherwise engaged in anomalous behavior regarding Glyburide in any way. Plaintiffs' failure to allege that Aurobindo "acted" in any way consistent with the alleged conspiracy destroys Plaintiffs' Section 1 claim. *See LaFlamme*, 702 F. Supp. 2d at 151 ("it is dubious at the outset as to whether the conduct alleged in the Complaint can accurately be characterized as 'parallel'" because plaintiffs plead "action by only some defendants and no action by other defendants, or action by a solitary defendant"); *Hinds*, 708 F. Supp. 2d at 358 (failure to allege sufficient facts connecting a defendant to the purported conspiracy required dismissal of claim against that defendant); *Invamed*, 22 F. Supp. 2d at 221. (same); *In re Parcel*, 541 F. Supp. 2d at 492 (same).

Aurobindo's participation in the alleged conspiracy cannot be inferred from an Aurobindo executive's attendance at a dinner with more than a dozen executives of "various generic drug manufacturers" in January 2014, Am. Compl. at ¶ 55, where there are no allegations of any business-related discussions at this dinner, including the prices of any generic drugs, generally, or Glyburide, specifically.  *See, e.g.*, *LaFlamme*, 702 F. Supp. 3d at 142 (requiring that plaintiffs make specific allegations about which defendants or which other parties made decisions at meetings or when, where, how, or whether such decisions were collectively agreed to).

Nor can Aurobindo's involvement in the alleged conspiracy be inferred from an ███████████ email stating that ████████████████████ ████████████████████████████████████████████████ ████████.  *Id.* at ¶ 114.  Likewise, a text message from a Heritage employee to a Citron employee about ████████████████████████████ ████████████████████████ *id.* at ¶ 117, does not support an inference that Aurbindo joined the alleged conspiracy where the text message does not provide any information as to: (i) what Aurobindo "agreed" to; (ii) what price, if any, Aurobindo "agreed" to charge; (iii) which customer, if any, was overcharged; (iv) when Aurobindo "agreed"; (v) how Aurobindo "agreed"; (vi) whom from Aurobindo "agreed;" and (vii) whether that individual even had the authority to agree on behalf of Aurbindo.  Indeed, it is clear from the text message conversation itself that Citron did not even understand what ████████████ ████ meant.  *Id.*



To be sure, Plaintiffs cannot escape their burden of alleging that Aurobindo participated in or agreed to join the conspiracy simply by listing Aurobindo as a co-conspirator without any specific allegations as to how Aurobindo joined and acted in furtherance of the alleged conspiracy.  *See, e.g.*, *Invamed,* 22 F. Supp. 2d at 221 (requiring that plaintiffs plead that each defendant engaged in concerted action); *compare* pricing allegations in Paragraph 121 of Amended Complaint *with* parallel pricing allegations in *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, 169 (D. Conn. 2009) ("there were six lockstep price increases during the class period") and *In re Text Messaging Antitrust Litigation,* 630 F.3d 622, 628-29 (7th Cir. 2010) (alleging that defendants "agreed to uniformly charge an unprecedented common per-unit price of ten cents for text messaging services" and that "all at once the defendants changed their pricing structures, which were heterogeneous and complex, to a uniform pricing structure, and then simultaneously jacked up their prices by a third").

In addition, Plaintiffs' allegations regarding conduct and communications between other Defendants are insufficient to nudge the claim against Aurobindo across the line from conceivable to plausible.  *See, e.g.*, *Hinds* 708 F. Supp. 2d at 358 ("while Plaintiffs' allegations plausibly suggest that Citibank, UBS, and Piper Jaffray colluded to manipulate the pricing of the 2003 San Mateo Swap, Plaintiffs have not alleged sufficient facts connecting AIG Financial to the allegedly collusive conduct"); *In re Fresh and Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d at 1150 (dismissing claims against certain defendants, explaining "for each individual defendant, plaintiffs must allege that *that* defendant had 'a

conscious commitment to a common scheme designed to achieve an unlawful object.'") (emphasis in original); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2629728, at *7 (unreported) ("allegations and assertions about Royal Philips and LG Display are insufficient to state a claim against PENAC unless the complaint alleges a specific connection between PENAC and the alleged conspiracy").

Moreover, allegations that the Plaintiff States, the U.S. Congress, and the United States Department of Justice have been investigating and/or inquiring into price increases of generic drugs do not make the claims against Aurobindo here plausible.  Am. Compl. ¶¶ 5-6.  Those investigations and inquiries, which are not alleged with any specificity as to Glyburide or Aurobindo, do not tend to establish a conspiracy to raise Glyburide prices. *See LaFlamme*, 702 F. Supp. 2d at 154 ("vague allegations regarding pending investigations … are not probative of the Sherman Act Section 1 …."); *In re Parcel Tanker*, 541 F. Supp. 2d at 492 (guilty pleas involving unrelated anticompetitive conduct does not tend to show a conspiracy); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (an investigation alone "carries no weight in pleading an antitrust conspiracy claim").  Moreover, no allegations are made that the investigations or inquiries have advanced to the point of charging any generic manufacturer, let alone Aurobindo, with colluding to manipulate the price of Glyburide.  The Court cannot draw an inference of a Glyburide conspiracy based on Plaintiffs' allegations of a government investigation.  *See id.*

In sum, the Amended Complaint's allegations with respect to Aurobindo are vague, conclusory and simply insufficient to meet Plaintiffs' burden under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.   PLAINTIFFS FAIL TO PLEAD ANTITRUST INJURY

The Amended Complaint also lacks allegations of any facts indicating that any conduct by Aurobindo caused harm to any individual State, the general economies of any State, or the citizens of any State.   For this reason, Plaintiffs' claims against Aurobindo should be dismissed.[2]  *See* Am. Comp. ¶¶ 135-138.

It is well-established that an antitrust plaintiff cannot recover "merely by showing injury causally linked to an illegal presence in the market."  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (quotation marks omitted). Instead, Plaintiffs must allege injury that "flows from that which makes defendants' acts unlawful."  *See Gatt Commcn's, Inc. v. PMC Assocs., LLC*, 711 F.3d 68, 76 (2d Cir. 2013) (quotation marks omitted) *see also Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983) (plaintiff must show "chain of causation between [plaintiff's] injury and the alleged restraint in the market").[3]

---

[2]     Dismissal of Plaintiffs' antitrust claims for lack of antitrust standing also disposes of Plaintiffs' consumer protection claims.  *See* Defs.' Joint Br. at 13-15.   Moreover, for the reasons stated herein, Plaintiffs' allegations are also insufficient to satisfy Article III standing, which requires Plaintiffs to show that their alleged injury is "fairly traceable" to Aurobindo's conduct.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[3]     Every state antitrust law under which Plaintiffs bring suit also requires a showing of antitrust injury or proximate causation.  *See* Defs.' Joint Br. at 14 n. 5.

While Plaintiffs claim they made "reimbursements for purchases" of generic pharmaceuticals generally, Am. Compl. ¶ 137, they do not allege that they, or anyone they purport to represent, purchased Glyburide directly or indirectly from Aurobindo.  Nor do Plaintiffs allege any facts regarding how they purportedly suffered harm as a result of paying reimbursements for Glyburide sold by Aurobindo or how Aurobindo allegedly caused that harm. *Twombly*, 550 U.S. at 555 (2007) ("The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (alterations and quotation marks omitted).

Moreover, in light of the fact that Aurobindo is not alleged to have raised its prices for Glyburide for any customer or engaged in any conduct, anticompetitive or otherwise, the Amended Complaint fails to show how Aurobindo could have caused the alleged harm.  *See Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD), 2014 WL 1280464, *8 (S.D.N.Y. Mar. 28, 2014) (no antitrust injury alleged where plaintiffs' factual allegations were insufficient "to demonstrate an adequate connection between the alleged misconduct and the effect") (internal quotations omitted).   Without such allegations, Plaintiffs have not pled the requisite proximate causation.  *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 162 (2d Cir. 2016) (affirming dismissal of complaint and explaining that antitrust injury "requires that the anticompetitive conduct proximately cause antitrust injury") (citing *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 477-78 (1982)); *see also Latino Quimica-Amtex S.A. v. Akzo Nobel Chemicals B.V.*, No.

03-Civ-10312 (HBDF), 2005 WL 2207017, at *9 (S.D.N.Y. Sept. 8, 2005) (dismissing complaint where plaintiff alleged "causal relationship" in only "general terms").

Without any allegations of any conduct by Aurobindo, Plaintiffs cannot demonstrate that their vague, overly broad claims of injury as a result of "generic pharmaceutical" price increases were proximately caused by Aurobindo. Accordingly, Plaintiffs have failed to allege sufficient facts to show that Plaintiffs suffered antitrust injury as a result of the alleged conspiracy and their antitrust claims should be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, Aurobindo respectfully requests the Court grant its Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

<u>/s/ Elizabeth M. Lacombe</u>
Elizabeth M. Lacombe (ct 28352)
DUANE MORRIS LLP
100 Pearl Street, Suite 1415
Hartford, CT 06103
Tel:  (215) 979-1577
Fax:  (207) 470-1099
emlacombe@duanemorris.com

Wayne A. Mack, *pro hac vice*
Seth A. Goldberg, *pro hac vice*
Sean P. McConnell, *pro hac vice forthcoming*
DUANE MORRIS LLP
30 South 17th St.
Philadelphia, PA 19103
Tel: (215) 979-1000
Fax: (210) 979-1020
wamack@duanemorris.com
sagoldberg@duanemorris.com
spmcconnell@duanemorris.com