UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: GENERIC PHARMACEUTICALS
PRICING ANTITRUST LITIGATION                                    MDL No. 2724


TRANSFER ORDER


**Before the Panel:**[*]  Plaintiffs in the action listed on Schedule A (the State Action) move under Panel Rule 7.1 to vacate our order that conditionally transferred the State Action to the Eastern District of Pennsylvania for inclusion in MDL No. 2724.  Plaintiffs are forty states that filed an antitrust enforcement action against six pharmaceutical manufacturers in the District of Connecticut relating to two pharmaceutical products:  doxycycline hyclate delayed release and glyburide.  Should the Panel transfer the State Action to MDL No. 2724, the States alternatively request that we reassign this MDL to the District of Connecticut.

Defendants Aurobindo Pharma USA, Inc.; Citron Pharma, LLC; Heritage Pharmaceuticals, Inc.; and Mylan Pharmaceuticals, Inc., oppose the motion in its entirety.[1]  Plaintiffs in the actions already pending in MDL No. 2724 also responded to this motion.  Although the MDL plaintiffs do not take a position on transfer of the State Action, they oppose the States' alternative request to reassign this MDL to the District of Connecticut.

The States argue that transfer is inappropriate because:  (a) the State Action does not fall within the scope of the MDL; (b) the State Action is a sovereign enforcement action that alleges different facts and seeks different remedies than the class actions in the MDL; and (c) the State Action is more procedurally advanced than the actions in the MDL.  None of these arguments is persuasive.

---

[*] Judges Marjorie O. Rendell and Ellen Segal Huvelle took no part in the decision of this matter.  Additionally, one or more Panel members who could be members of the putative classes in this litigation have renounced their participation in these classes and have participated in this decision.

[1] Defendants Mayne Pharma (USA), Inc., and Teva Pharmaceuticals USA, Inc., did not respond to the motion.  Pursuant to Panel Rule 6.1(c), we treat a party's failure to respond to a motion as that party's acquiescence to it.

-2-

In an order issued on April 6, 2017, we expanded the scope of MDL No. 2724 to encompass actions in which:

> (a) plaintiffs assert claims for price fixing of generic drugs in violation of the Sherman Act and/or state antitrust laws on behalf of overlapping putative nationwide classes of direct or indirect purchasers of generic pharmaceuticals; (b) the average market price of the subject generic pharmaceutical is alleged to have increased between 2012 and the present; (c) defendants are alleged to have effectuated the alleged conspiracy through direct company-to-company contacts and through joint activities undertaken through trade associations, in particular meetings of the Generic Pharmaceutical Association; and (d) the allegations stem from the same government investigation into anticompetitive conduct in the generic pharmaceuticals industry.

*In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1344 (J.P.M.L. 2017). The State Action substantially satisfies all of these criteria with one exception—the States do not assert class claims, but rather proceed individually or on a *parens patriae* basis. We do not find this distinction controlling here. There will be significant overlap in the factual and legal issues presented by the actions currently in the MDL and the State Action. As all arise from the same factual core, they will involve common discovery of defendants and third parties. *See In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*, 138 F. Supp. 3d 1379, 1380 (J.P.M.L. 2015) (holding that unique legal theories and factual allegations in a particular action are not significant where all the actions arise from a common factual core).

Given the complex nature of this litigation and the diversity of interests involved, we are not convinced that informal coordination and cooperation among the parties and courts will be sufficient to eliminate the potential for duplicative discovery, inconsistent pretrial rulings, and conflicting discovery obligations. In similar circumstances, the Panel has transferred state enforcement actions to MDLs involving cases brought by private litigants with some regularity. *See, e.g.*, Transfer Order at 1-2, *In re Auto Body Shop Antitrust Litig.*, MDL No. 2557 (J.P.M.L. Dec. 12, 2014), ECF No. 306 (transferring enforcement action brought by the State of Louisiana to MDL); *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 582 F. Supp. 2d 1373 (J.P.M.L. 2008) (centralizing claims brought by Illinois and California attorneys general with actions brought by private claimants).

We also are not persuaded that the procedural posture of the State Action militates against transfer. The States contend that they are further advanced with respect to discovery on account of a three-year investigation by the Attorney General of Connecticut that preceded the complaint. Even so, the schedule in place in the State Action envisions nearly two years of further discovery (which has not yet begun).[2] The States concede that they need to conduct fact depositions and expert discovery before they can proceed to trial. Given the significant discovery that remains, there is

---

[2] The pretrial schedule in the State Action likewise is inconsistent with the States' professed urgency in obtaining a remedy for defendants' alleged anticompetitive conduct.

-3-

ample scope to eliminate duplication and enhance the convenience of the parties, the witnesses, and the courts through coordinated proceedings in the MDL.  There also may be benefits to coordinating pretrial motions, as none of the actions has advanced beyond motions to dismiss.

To the extent the State Action presents unique factual and legal issues, the transferee judge has the discretion to address those issues through the use of appropriate pretrial devices, such as separate tracks for discovery and motion practice.[3]  The States' concerns regarding the obligations imposed by certain case management orders in the MDL (such as those establishing the authority of lead counsel to make decisions on behalf of all plaintiffs) similarly can be addressed by the transferee court.  And, should the transferee court determine that continued inclusion of the State Action in the MDL no longer is appropriate, the transferee court may recommend Section 1407 remand of the State Action in advance of other actions.  *See In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Practices Litig.*, 148 F. Supp. 3d 1364, 1366 (J.P.M.L. 2015).

After considering the argument of counsel, we find that the State Action involves common questions of fact with the actions transferred to MDL No. 2724, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.  Like the actions already pending in the MDL, the States: assert claims for price fixing of generic drugs (specifically, doxycycline hyclate delayed release and glyburide) in violation of the Sherman Act and state antitrust laws; allege that the average market price of these pharmaceutical products increased between 2012 and the present; and allege that defendants effectuated the alleged conspiracy through direct company-to-company contacts and through joint activities undertaken through trade associations.  The States' claims, like those of the private plaintiffs, stem from the same government investigation into anticompetitive conduct in the generic pharmaceuticals industry.  Inclusion of the State Action in MDL No. 2724 thus will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.

We reject the States' alternative request to reassign MDL No. 2724 to the District of Connecticut.  The Honorable Cynthia M. Rufe, to whom this MDL is assigned, has expended considerable time and effort to organize this litigation for efficient adjudication—effort that would be wasted were we to reassign this MDL at this stage.  Furthermore, as we previously recognized when we centralized this litigation in the Eastern District of Pennsylvania, that district is a convenient venue for the majority of the parties, as many of the pharmaceutical companies involved

---

[3] Indeed, the transferee court has organized the various actions and pharmaceutical products involved in this litigation in an innovative manner that allows for additional tracks to be added without significant difficulty.  *See* Pretrial Order No. 24 (First Electronic Case Management Protocol Order), *In re Generic Pharm. Pricing Antitrust Litig.*, C.A. No. 2:16-md-02724 (E.D. Pa. May 26, 2017), ECF No. 353 (creating a master MDL docket, lead cases for each pharmaceutical product, and "class cases" for direct purchaser plaintiffs, indirect purchaser plaintiffs, and indirect reseller plaintiffs).

-4-

in this litigation are located in the Philadelphia area, as is the federal grand jury investigation of the generic pharmaceutical market.

IT IS THEREFORE ORDERED that the action listed on Schedule A is transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Cynthia M. Rufe for coordinated or consolidated pretrial proceedings.


PANEL ON MULTIDISTRICT LITIGATION


_____
Sarah S. Vance
Chair


Charles R. Breyer                    Lewis A. Kaplan
R. David Proctor                     Catherine D. Perry

**IN RE: GENERIC PHARMACEUTICALS**
**PRICING ANTITRUST LITIGATION**                    MDL No. 2724

## SCHEDULE A

<u>District of Connecticut</u>

CONNECTICUT, ET AL. v. AUROBINDO PHARMA USA, INC., ET AL.,
    C.A. No. 3:16-02056