**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| IN RE:  GENERIC PHARMACEUTICALS | : | MDL NO. 2724 |
| PRICING ANTITRUST LITIGATION | : | 16-MD-2724 |
| | : | |
| _____ | : | HON. CYNTHIA M. RUFE |
| | : | |
| THIS DOCUMENT RELATES TO | : | Civil Action No. |
| | : | |
| *STATE AG ACTIONS* | : | 17-3768 |
| _____ | : | |

**<u>States' Memorandum of Law in Opposition to
Defendants' Joint Motion to Dismiss
States' State-Law Claims</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

1.  Preliminary Statement .............................................................................................. 1

2.  Any State Seeking to Sue on Behalf of Governmental Entities Is Authorized to Do So ........ 1

3.  Any State Seeking Damages on Behalf of Its Citizens Is Authorized to Do So .................... 5

4.  Any State that Brings a State Law Claim on Behalf of Indirect-Purchasers Is Authorized to Do So. .................................................................................................... 19

    a.  The States May Bring Indirect-Purchaser Claims Under State Law. .............................. 19

    b.  The States May Bring State Law Disgorgement Claims .................................................. 27

5.  States Have Sufficiently Pled Their Consumer Protection Claims Consistent with the Requirements of Each State ........................................................................ 28

    a.  Kentucky and South Carolina Are Entitled to Monetary Relief .................................... 28

    b.  Indiana, Maine, Michigan, and Wyoming Possess Statutory Authority to Challenge the Conduct Alleged in the Amended Complaint Under Their State Consumer Protection Laws. .................................................................................................... 29

6.  Conclusion ............................................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*Abex Corp. v. Maryland Casualty Co.*, 790 F.2d 119 (D.C. Cir. 1986) ...................................... 18

*Alexander v. New Jersey Power & Light Co.*, 122 A.2d 339 (N.J. 1956) ................................... 11

*Anadarko Petroleum Corp. v. Commonwealth*, 206 A.3d 51 (Pa. Commw. Ct. 2019)............... 16

*Bd. of Comm'rs of Howard City v. Kokomo City Plan Comm'n*, 263 Ind. 282 (1975) ................. 9

*Bd. of Comm'rs of Union City. v. McGuinness*, 80 N.E.3d 164 (Ind. 2017) ............................... 9

*Berghausen v. Microsoft*, 765 N.E.2d 592 (Ind. Ct. App. 2002) ................................................ 29

*Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99 (Ariz. 2003)................................................ 20

*California v. ARC America Corp.*, 490 U.S. 93 (1989) ........................................................ passim

*California v. Frito Lay*, 474 F.2d 774 (9th Cir. 1973)................................................................... 6

*California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124 (N.D. Cal. 2007)................. 6, 12, 17, 18

*Commonwealth v. ABAC Pest Control, Inc.*, 621 S.W.2d 705 (Ky. App. Ct. 1981) ................... 28

*D.R. Ward Const. Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485 (E.D. Pa. 2006)................... 4

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) ................................................................. 6, 20, 28

*F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) ........................................... 32

*F. Ray Moore Oil Co. v. State*, 341 S.E.2d 371 (N.C. App. 1986).............................................. 15

*Free v. Abbott Labs. Inc.*, 176 F.3d 298 (5th Cir. 1990).............................................................. 24

*FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192 (10th Cir. 2005).............................................. 32

*FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447 (1986)............................................................... 30, 32

*FTC v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1 (D.D.C. 1999)......................................................... 10

*G.G. & Supp. Corp. v. S. & F. Systs., Inc.*, 153 D.P.R. 861 (2001)............................................ 26

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425 (3d Cir. 1993)......... 23

*Harris v. Dow Chemical Co*., 586 Fed. Appx. 843 (3d Cir. 2014) ................................................... 2

*Harvey v. Blockbuster*, 384 F. Supp. 2d 749 (D.N.J. 2005) ......................................................... 11

*Heath v. Cornelius*, 511 S.W.2d 683 (Tenn. 1974) ...................................................................... 18

*Herrig v. Herrig*, 844 P.2d 487 (Wyo. 1992) .............................................................................. 31

*Illinois Brick v. Illinois*, 431 U.S. 720 (1977).............................................................................. 19

*In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004) ............................................... 17

*In re D.C.*, 679 A.2d 634 (N.J. 1995) ......................................................................................... 11

*In re DRAM Antitrust Litig*., 2007 WL 251851 (N.D. Calif. Aug. 31, 2007).............................. 14

*In re EpiPen Marketing, Sales Practices, and Antitrust Litig.*, 336 F. Supp. 1256 (D. Kan. 2018)
.................................................................................................................................................. 21

*In re Flonase Antitrust Litig.,* 284 F.R.D. 207 (E.D. Pa. 2012)................................................... 22

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*,
     368 F. Supp. 3d 814 (E.D. Pa. 2019) ................................................................... 25, 33

*In re K-Dur Antitrust Litig.*, 338 F.Supp. 2d 517 (D.N.J. 2004) .................................................. 23

*In re Lithium Ion Batteries Antitrust Litig*., 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal.
     Oct. 2, 2014) ....................................................................................................................... 24

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002)................ passim

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160 (D. Me. 2004)
.................................................................................................................................................. 30

*In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704 (N.D. Ill. 2016) ....................................... 25

*In re Packaged Seafood Products Antitrust Litig.*, 242 F. Supp. 3d 1033 (S.D. Cal. 2017) .. 21, 25

*In re Pool Products Distribution Mkt. Antitrust Litig*., 946 F. Supp. 2d 554 (E.D. La. 2013)..... 24

iii

*In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867 (E.D. Pa. 2012) .................... 32

*In re Suboxone Antitrust Litig.,* 64 F. Supp. 3d 665 (E.D. Pa. 2014) ........................................... 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036 (N.D. Cal. 2011). .......... 2, 22

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009)......................................... 22

*In re Zetia (Ezetimibe) Antitrust Litig.*, CV 2:18-MD-2836, 2019 WL 1397228 (E.D. Va. Feb. 6,
      2019) .................................................................................................................................... 25

*Jones Truck Lines v. Transport Ins. Co.*, Civ. A. No. 88-5723, 1989 WL 49517 (E.D. Pa. May
      10, 1989) .............................................................................................................................. 18

*Kanter v. Barella*, 489 F.3d 170 (3d Cir. 2007)............................................................................. 3

*Keating v. Philip Morris, Inc.*, 417 N.W.2d 132 (Minn. Ct. App. 1987) .................................... 20

*Lund ex rel. Wilbur v. Pratt,* 308 A.2d 554 (Me. 1973) ............................................................... 10

*Mack v. Bristol-Myers Squibb Co.*, 673 So.2d 100 (Fla. Dist. Ct. App. 1996)............................ 22

*Major v. Microsoft Corp.*, 60 P.3d 511 (Okla. Civ. App. 2002).................................................. 21

*Neese v. State,* 218 P.3d 983 (Alaska 2009) .................................................................................. 7

*New Mexico v. Scott & Fetzer Co.*, No. 81-cv-054, 1981 WL 2167 (D.N.M. Dec. 22, 1981)..... 12

*New York v. Cedar Park Concrete Corp.*, 665 F. Supp. 238 (S.D.N.Y. 1987) ............................. 2

*New York v. Feldman*, 210 F. Supp. 2d 294 (S.D.N.Y. 2002)................................................. 5, 13

*P.R. Fuels, Inc. v. Empire Gas Co.*, 149 D.P.R. 691 (1999)........................................................ 26

*People v. Grasso*, 836 N.Y.S.2d 40 (1ˢᵗ Dep't 2007), *aff'd*, 893 N.E.2d 105 (2008) ................. 13

*People v. Liberty Mutual Ins. Co.*, 861 N.Y.S.2d 294 (1ˢᵗ Dep't 2008) ....................................... 14

*Picone v. Shire PLC*, 16-CV-12396-ADB, 2017 WL 4873506 (D. Mass. Oct. 20, 2017).......... 25

*Pool v. State*, 2001 WY 8, ¶ 12, 17 P.3d 1285 (Wyo. 2001) ....................................................... 32

*Pressure Vessels R v. Empire Gas PR*, 137 D.P.R. 497 (1994).................................................. 26

*Rivera-Muniz v. Horizon Lines, Inc.*, 737 F. Supp. 2d 57 (D.P.R. 2010) ..................................... 25

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380 (E.D. Pa. 2010) .................................................................................................. 25

*Siena v. Microsoft Corp.*, 796 A.2d 461 (R.I. 2002) ..................................................................... 27

*State ex rel. Inman v. Brock*, 622 S.W.2d 36 (Tenn. 1981) ................................................... 17, 18

*State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III, 1980 WL 4696 (Tenn. Ch. Sept. 25, 1980) .......................................................................................................................... 17

*State ex rel. Nixon v. Am. Tobacco Co., Inc.*, 34 S.W.3d 122 (Mo. 2000) (*en banc*) ................... 10

*State ex rel. Nixon v. Consumer Auto. Res., Inc.*, 882 S.W.2d 717 (Mo. Ct. App. 1994) ........... 11

*State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633 (Mo. Ct. App. 1988) ........................ 11

*State v Heath*, 806 S.W.2d 535 (Tenn. Ct. App. 1990) ................................................................ 17

*State v. First Nat. Bank of Anchorage*, 660 P.2d 406 (Alaska 1982) ............................................ 7

*State v. Liberty Mutual Holding Co.*, No. X09CV064023087, 2009 WL 943094 (Conn. Super. Ct. Mar. 20, 2009) ........................................................................................... 8, 9, 21

*State v. Marsh & McLennan Cos., Inc.*, 944 A.2d 315 (Conn. 2008) ............................................. 8

*State v. Polley*, 2 S.W.3d 887 (Mo. Ct. App. 1999) ..................................................................... 11

*Sublette City Rural Health Care Dist v. Miley*, 942 P.2d 1101 (Wyo. 1997) ............................... 32

*T.A. v. City. of Delaware*, No. 18-cv-2141, 2019 WL 1228253 (E.D. Pa. Mar. 14, 2019) ........... 3

*Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792 (Me. 1998) ........................................ 30

*United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991) .................................................................. 2

*United States v. St. Regis Paper Co.*, 285 F.2d 607 (2d Cir. 1960) ............................................ 31

*West v. American Tel. & Tel. Co.*, 311 U.S. 223 (1940) ......................................................... 14, 20

## Statutes

15 U.S.C. § 15 ........................................................................................................... 19

15 U.S.C. § 15c .......................................................................................................... 12

15 U.S.C. § 15c(a)(1) ................................................................................................. 12

15 U.S.C. § 45(a)(1) ................................................................................................... 32

71 P.S. § 732-204 (c) ................................................................................................. 16

73 P.S. § 201-4.1 ....................................................................................................... 16

Ark. Code Ann. § 4-75-212(b) .................................................................................. 21

AS 45.50.501(b) ........................................................................................................... 7

AS 45.50.577(b) ........................................................................................................... 7

Colo. Rev. Stat. § 6-4-111(1) ...................................................................................... 4

Colo. Rev. Stat. § 6-4-111(2) ...................................................................................... 4

Colo. Rev. Stat. § 6-4-112(1) ...................................................................................... 4

Conn. Gen. Stat. § 35-32(c) ........................................................................................ 9

Conn. Gen. Stat. § 35-32(c)(2) ............................................................................. 8, 21

Fla. Stat. § 501.201 ................................................................................................... 22

Ind. Code § 24-1-1-2 ................................................................................................. 10

Ind. Code § 24-1-1-5.1 .............................................................................................. 23

Ind. Code § 24-1-2-5 ................................................................................................. 10

Ind. Code § 24-1-2-5.1 .............................................................................................. 23

Ind. Code § 24-1-2-7 ................................................................................................. 23

Ind. Code § 24-5-0.5- 3 ............................................................................................. 29

Ind. Code § 24-5-0.5-3(a) ................................................................................................... 29

Ind. Code § 24-5-0.5-3(a) (2013) ........................................................................................ 29

Ind. Code § 24-5-0.5-3(b) ................................................................................................... 29

Ind. Code. § 24-5-0.5-3(a) (2014) ....................................................................................... 30

Ky. Rev. Stat. Ann. § 367.200 ............................................................................................. 28

Ky. Rev. Stat. Ann. § 367.990 ............................................................................................. 28

La. C.C. art. 9 ...................................................................................................................... 23

La. R.S. 51:137 .................................................................................................................... 23

Mich. Comp. Laws § 445.910(1)(c) ..................................................................................... 31

Mo. Rev. Stat. § 407.100.4 ........................................................................................... 10, 24

Mo. Rev. Stat. § 416.011 ..................................................................................................... 24

N.C.G.S. § 114-2(8)(a) ......................................................................................................... 15

N.C.G.S. § 75-15 ................................................................................................................. 15

N.C.G.S. § 75-16 ................................................................................................................. 15

N.J. Stat. Ann. 52:17A-4(h) ................................................................................................ 11

N.J. Stat. Ann. 56:9-1 ......................................................................................................... 11

N.J. Stat. Ann. 56:9-18 ....................................................................................................... 11

N.J. Stat. Ann. 56:9-6 ......................................................................................................... 11

N.M. Stat. Ann. § 57-1-14 ................................................................................................... 12

N.M. Stat. Ann. § 57-1-15 ................................................................................................... 12

N.M. Stat. Ann. § 57-12-8(B) .............................................................................................. 13

N.M. Stat. Ann. § 57-1-3(B) ................................................................................................ 12

N.M. Stat. Ann. § 8-5-2(J) ................................................................... 12

N.Y. Exec. Law § 63(1) ........................................................................ 4

N.Y. Exec. Law § 63(12) ................................................................... 4, 13

N.Y. Gen. Bus. Law § 342-b ................................................................. 4

Okla. Stat. tit. 79, § 205 ...................................................................... 21

Okla. Stat. tit. 79, § 205(A)(1) ........................................................... 21

Or. Rev. Stat. § 646.760 ........................................................................ 2

Or. Rev. Stat. § 646.780 ........................................................................ 2

P.R. Laws Ann. tit. 10, § 268(a) ......................................................... 25

R.I.G.L. § 6-13.1-2 ............................................................................... 16

R.I.G.L. § 6-13.1-5 ............................................................................... 16

R.I.G.L. § 6-13.1-5(a) .......................................................................... 16

R.I.G.L. § 6-13.1-5(c) .......................................................................... 17

R.I.G.L. § 6-13.1-8 ............................................................................... 16

R.I.G.L. § 6-36-1 .................................................................................. 26

S.C. Code Ann. § 39-5-110 .................................................................. 29

S.C. Code Ann. § 39-5-50 .................................................................... 28

Tenn. Code Ann. § 47-25-101 ............................................................. 17

Tenn. Code Ann. § 8-6-109 ............................................................ 17, 18

Wis. Stat. § 133.03 ............................................................................... 19

Wis. Stat. § 133.14 ............................................................................... 19

Wis. Stat. § 133.16 ................................................................................................................ 19

Wis. Stat. § 133.17 ................................................................................................................ 18

Wis. Stat. § 165.08 ................................................................................................................ 19

Wyo. Stat. §§ 40-12-102(a)(vii), 40-12-106 ....................................................................... 31

Wyo. Stat. Ann. § 26-1-101 .................................................................................................. 31

Wyo. Stat. Ann. § 40-12-105(a)(xv) ..................................................................................... 32

Wyo. Stat. Ann. § 40-12-108(a) ............................................................................................ 32

Wyo. Stat. Ann. § 40-12-113(c) ............................................................................................ 32

Wyo. Stat. Ann. § 40-4-105 .................................................................................................. 31

Wyo. Stat. Ann. §§ 40-12-106 .............................................................................................. 32

**Rules**

Fed. R. Civ. P. 8(a)(1) ............................................................................................................. 2

Fed. R. Civ. P. 9(a)(1)(B) ....................................................................................................... 3

**Treatises**

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1292 (4th ed. 2019) ..................................................................................................................................... 3

**Other Authorities**

*People v. Liberty Mutual Insurance*, 2008 WL 5934817 (1st Dep't Apr. 2, 2008) ...................... 14

Transcript of Oral Argument at 15, 17, 23, *Apple, Inc. v. Pepper*, 138 S. Ct. 2647 (2018) (No. 17-204) ......................................................................................................................................... 20

### 1. Preliminary Statement

This memorandum responds to Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss Plaintiffs' State-Law Claims, 17-cv-3768, Dkt. 157-1, May 31, 2019 ("Def. Joint Mem."). Def. Joint Mem. is in large part a verbatim repetition of the state law arguments from a memorandum the Defendants filed in the District of Connecticut in 2017, when forty states were focused on two drugs. Defendants' Memorandum in Support of Joint Motion to Dismiss Plaintiffs' First Amended Complaint, *Connecticut v. Aurobindo Pharma USA, Inc.*, 16-cv-2056, Dkt. 282-1 at 15-32 (May 1, 2017). Def. Joint Mem. does not even appear to consider the opposition to those arguments that the States filed in 2017. Plaintiff States' Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss Plaintiffs' First Amended Complaint, 16-cv-2056, Dkt. 313 at 25-95. Many of the arguments the States made in Connecticut are repeated here.

Defendants' arguments fail. Defendants either mischaracterize the state law claims that the States are asserting or misstate (or ignore) the state law on which those claims are based. Many times, Defendants do both. Despite Defendants' assertions, the States have properly pled when necessary claims for public entities, the States can represent consumers under state law (whether based on statutes, cases, or other authority), and state law allows for "indirect" purchaser recovery. The claims in Def. Joint Mem. are groundless and should be denied.

### 2. Any State Seeking to Sue on Behalf of Governmental Entities Is Authorized to Do So

Defendants assert that claims for damages for governmental entities should be dismissed because the District of Columbia, Florida, Illinois, Indiana, Kansas, Maine, Massachusetts,

Minnesota, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon,[1] Puerto Rico, Tennessee, and West Virginia have failed to identify in the complaint the governmental entities on whose behalf the claims are brought.[2]  Def. Joint Mem. at 3, 7-8. Defendants' argument is unburdened by legal authority or citations, and the States are unaware of any basis for arguing that an Attorney General pursuing damages for state entities must identify, at the pleading stage, the state agencies that have suffered harm.[3]  *See Harris v. Dow Chemical Co*., 586 Fed. Appx. 843 (3d Cir. 2014) (party waived argument that was "wholly conclusory and unsupported by citation to fact, law, or logic"); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."  A "skeletal argument" does not preserve a claim.).

The States are addressing this issue in discovery, which is where the issue belongs.[4] Rules 8 and 9 of the Federal Rules of Civil Procedure make clear that a complaint need not identify state entities.  The States' complaint meets the requirements of Rule 8 by including the "short and plain statement[s]" on jurisdiction and the claims.  Fed. R. Civ. P. 8(a)(1). The Third

---

[1] Oregon has the additional argument that in Consolidated Amended Complaint ("CAC") ¶ 794 Oregon seeks relief under the Oregon Antitrust Act, including Or. Rev. Stat. § 646.760 and Or. Rev. Stat. § 646.780.  Those sections expressly provide the Attorney General authority to seek relief and penalties in the name of the State without qualification or condition.  The Attorney General represents the State of Oregon in all matters; defendants have sufficient information to respond to the complaint.

[2] Defendants also argue that "antitrust laws of Colorado and New York do not authorize the State's Attorney General to sue on behalf of governmental entities."  Def. Joint Mem. at 3.

[3] In *New York v. Cedar Park Concrete Corp*., 665 F. Supp. 238, 241 (S.D.N.Y. 1987), New York did not argue and the court did not address what effect Rule 9 of the Federal Rules of Civil Procedure had on whether New York had to allege in the complaint specific state entities on whose behalf the attorney general sought damages.  That litigation involved large concrete construction projects and involved very few state purchasers.

[4] *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1039 (N.D. Cal. 2011) ("The complaint is sufficient as a pleading matter and the information that defendants seek regarding the specific nature of the purchasing agreements or the scope of the claims can be sought in discovery.").

Circuit has described Rule 8's purpose as "provid[ing] the opponent with a fair notice of a claim and the grounds on which that claim is based." *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007). Rule 9 expressly provides that "'[e]xcept when required to show that the court has jurisdiction,' a complaint need not allege the plaintiff's authority to sue in a representative capacity." *T.A. v. City of Delaware*, No. 18-cv-2141, 2019 WL 1228253, at *3 (E.D. Pa. Mar. 14, 2019) (citing Fed. R. Civ. P. 9(a)(1)(B)); *see* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1292 (4th ed. 2019) ("[P]laintiffs are under no obligation to plead capacity in the complaint.").

Despite the States' detailed and comprehensive Consolidated Amended Complaint ("CAC"), Defendants argue that the CAC "does not contain one single allegation that any governmental entity was harmed by Defendants' alleged misconduct." Def. Joint Mem. at 8. This assertion flatly ignores the allegations in the States' actual complaint. The CAC specifically alleges that "[a]s a direct and proximate result of these conspiracies, Plaintiff States, governmental entities and/or consumers have been injured in their business or property because they have had to purchase or reimburse" each generic drug at issue "at supra-competitive prices." (CAC ¶¶ 475, 482, 489, 496, 503, 511, 517, 524, 532, 540, 548, 556, 564, 572, 580, 588, 596, 604).[5] The CAC identifies state laws that Defendants have violated, the persons or types of entities on whose behalf each State is bringing suit, and the various forms of relief that each State

---

[5] In addition to all States incorporating these allegations by reference into their supplemental claims, Florida, Illinois, Indiana, Minnesota, Nebraska, New York, and Tennessee have similar allegations expressly in their supplemental claims.

seeks. The States provide more than enough information to present a "short and plain statement" of the claims.[6]

In addition, Defendants broadly assert that "Certain States" may only seek relief on behalf of governmental entities when they are authorized to do so, but only identify Colorado and New York as States to which the argument applies. Def. Joint Mem. at 3. Colorado seeks relief under Colo. Rev. Stat. §§ 6-4-111(1) and 112(1) and is not asserting claims on behalf of any governmental entity under Colo. Rev. Stat. § 6-4-111(2).

As to New York, Defendants argue that claims for damages on behalf of the New York governmental entities can only be asserted at the request of the New York public entity, citing N.Y. Gen. Bus. Law § 342-b. Def. Joint Mem. at 3, n.3. That argument is wrong for four different reasons. First, for the reasons specified in the second and third paragraphs of this section, that type of information need not be included in the complaint under Rules 8 and 9 of the Federal Rules of Civil Procedure. Second, the request requirement in section 342-b applies only to non-state public entities, not the state itself. The Attorney General's authority to represent the state is broad and does not require a request. N.Y. Exec. Law § 63(1).

Third, section 342-b is not the exclusive source of authority for the Attorney General, as is made clear in the introductory language of the section: "In addition to existing statutory authority to bring such actions on behalf of the state and public authorities." N.Y. Gen. Bus. Law § 342-b. In the complaint, New York cites N.Y. Exec. Law § 63(12), which allows the Attorney General to recover "restitution and damages" from those who engage in "repeated fraudulent or

---

[6] *See D.R. Ward Const. Co. v. Rohm and Haas Co*., 470 F. Supp. 2d 485, 502 (E.D. Pa. 2006) ("Plaintiffs allege that they purchased and paid significantly more for products containing plastic additives as a result of defendants' price-fixing conspiracy. . . . Accordingly, the Court finds at this [motion to dismiss] juncture that a sufficient causal nexus exists between the injury and defendants' alleged anti-competitive behavior.").

illegal acts." CAC ¶ 770. Antitrust violations are "illegal" and those for whom the Attorney General can seek "restitution and damages" are unlimited. *See generally New York v. Feldman*, 210 F. Supp. 2d 294, 299-300, 302-03 (S.D.N.Y. 2002).

Fourth and finally, as to non-state public entities for which the Attorney General seeks to provide remedies under the Donnelly Act, including treble damages, the Attorney General does so by request. This issue should be, has been, and will continue to be addressed in discovery.

### 3. Any State Seeking Damages on Behalf of Its Citizens Is Authorized to Do So

The States that seek damages on behalf of their citizens, whether called *parens patriae* or otherwise, have authority to do so through both statute and common law.

Defendants incorrectly argue that fifteen States do not have the authority to seek damages on behalf of citizens. Def. Joint Mem. at 4-7. Defendants mischaracterize the claims of three of these States[7] and, for those remaining,[8] ignore both statutory and case law providing that each of these States does have authority to bring such claims.

Defendants inappropriately discuss federal law to set the context of this argument. The States have already addressed Defendants' mischaracterizations of federal law in State Opposition to Defendants' Joint Motion to Dismiss the State's Federal Law Claims for Lack of Standing, 17-cv-3768, Dkt. 121, May 2, 2019. The point in this state law brief is that state law controls. As phrased by a unanimous Supreme Court:

> Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies. . . . And on several prior occasions, the Court has recognized that the federal antitrust laws do not pre-empt state law.

---

[7] Defendants incorrectly assert that North Dakota, Wisconsin, and Wyoming seek damages on behalf of their citizens as *parens patriae*. They do not. As such, the states deny the Defendants' analysis of their respective laws as inapposite.

[8] Defendants identify Alaska, Connecticut, Indiana, Maine, Missouri, New Jersey, New Mexico, New York, North Carolina, Pennsylvania, Rhode Island, and Tennessee. Def. Joint Mem. at 5-7.

*California v. ARC America Corp*., 490 U.S. 93, 101-02 (1989).  When evaluating claims under state law, a federal court follows the statutes and common law decisions of the respective states. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("The law to be applied in any case is the law of the state.").  To argue otherwise, Defendants rely on *California v. Frito Lay*, 474 F.2d 774, 774-77 (9th Cir. 1973), which is outdated and irrelevant.  Def. Joint Mem. at 4-5.  That court considered *parens* authority under federal antitrust law not *state* antitrust law, *Frito Lay*, 474 F.2d at 775, and thus the decision has no relevance here.  In addition to rejecting the preemption argument, the *ARC America* Court also unanimously rejected arguments that federal antitrust policies limit state law.  490 U.S. at 102-06.

Defendants also miscite *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1164-65 (N.D. Cal. 2007) to argue that *parens patriae* authority can only be granted by specific statutory authority.  Def. Joint Mem. at 5.  When quoted in full, that court correctly held that *parens* authority is acknowledged "regardless whether such authority is indicated by common law, statutory law, or otherwise." *Infineon Techs. AG*, 531 F. Supp. at 1164-5.[9]  *See, e.g.*, *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 386-87 (D.D.C. 2002) (explaining that in some instances states have express statutory authority while other states "have had state

---

[9] Defendants claim that "courts require explicit statutory authorization before allowing a State to pursue damages claims on behalf of injured citizens." Def. Joint Mem. at 4.  That's not true, as a complete quotation illustrates:

> **"Rather, the court employs the following principle**: where there exists controlling legal authority specifically indicating that monetary damages—as opposed to other types of relief—may be sought through a parens patriae claim, **the court will presume such authority to be present, regardless whether such authority is indicated by common law, statutory law, or otherwise."** *Infineon Techs. AG*, 531 F. Supp. at 1164-65 (emphasis added to illustrate what Def. Joint Mem. deletes).

6

and/or federal courts interpret statutory provisions to effectively grant *parens patriae* authority or have determined that their attorney general has such authority under state common law").

*Alaska*: In a footnote, Defendants cite an irrelevant statute with no explanation, implying that because the Attorney General may seek injunctive relief, it somehow cannot seek monetary relief. Def. Joint Mem. at 5, n.4. Contrary to Defendants' assertion, the Alaska Legislature has explicitly conferred that statutory authorization under the Alaska Restraint of Trade Act ("ARTA") *and* the Alaska Unfair Trade Practices and Consumer Protection Act ("AUTPA"). *See* AS 45.50.577(b); AS 45.50.501(b).

ARTA permits the Attorney General to seek monetary relief on behalf of injured Alaskans. Alaska specifically pled AS 45.50.577(b) in CAC ¶ 614. That statute provides:

> The attorney general may bring a civil action in superior court in the name of the state, *as* parens patriae *on behalf of* governmental entities or *persons doing business or residing in this state, to secure monetary relief* as provided in this section for injuries directly or indirectly sustained by persons by reason of any violation of AS 45.50.562—45.50.570.
> AS 45.50.577(b) (emphasis added).

Moreover, AUTPA expressly empowers the court to grant relief "necessary to restore to any person in interest any money … which may have been acquired by means of [unfair trade practices]." 45.50.501(b).

Lastly, the Alaska Supreme Court affirms that the State may restrain unfair trade practices by seeking monetary restitution on behalf of individuals. *See Neese v. State,* 218 P.3d 983, 986, 988-89 (Alaska 2009) (holding that consumers' interests were satisfied by the Attorney General's suit for injunctive relief and the court's power to order monetary relief, including restitution, to harmed individuals); *State v. First Nat. Bank of Anchorage*, 660 P.2d 406, 412 (Alaska 1982) (noting that AS 45.50.501 "specifically authorizes the Attorney General to bring

suit to enjoin violations of the [AUTPA], and expressly empowers the court in such cases to award restitutory relief").

Alaska's statutes clearly permit the Attorney General to act as *parens patriae* in seeking monetary relief on behalf of its citizens, and they separately authorize the Attorney General to seek restitution and other forms of monetary relief on behalf of individuals who have been harmed by an unfair or deceptive trade or business practice.

**Connecticut:** Defendants argue that Connecticut does not have the right to seek damages as *parens patriae,* claiming, in summary, that Connecticut has not adequately distinguished the injuries to its general economy from those to its citizens, and that in consequence all *parens patriae* damages should be dismissed. *See* Def. Joint Mem. at 5, n.5. This is incorrect. Connecticut has authority to pursue a *parens patriae* claim for damages to its general economy under Conn. Gen. Stat. § 35-32(c)(2). *State v. Marsh & McLennan Cos., Inc.*, 944 A.2d 315, 317 (Conn. 2008). The language of § 35-32(c) is clear: "The Attorney General may… bring an action in the name of the state as (1) parens patriae for persons residing in the state with respect to damages sustained by such persons… or (2) parens patriae with respect to damages to the general economy of the state or any political subdivision thereof."

Defendants erroneously cite *Marsh & McLennan* to argue that Connecticut must differentiate which allegations support general economy injuries and which allegations support injuries to persons. There is no such requirement in the statute, nor did the court in *Marsh & McLennan* define such a requirement for all *parens patriae* claims. *See also State v. Liberty Mutual Holding Co.*, No. X09CV064023087, 2009 WL 943094, at *3 (Conn. Super. Ct. Mar. 20, 2009) (denying motion to strike general economy claim where state "alleged damage to the state's general economy and harm to the Connecticut citizenry from the alleged conspiracy.")

Insofar as *Marsh & McLennan* differentiates between injuries to the general economy and injuries to persons, the court was clear that such differentiation was not an issue at the pleading stage, but only potentially implicated for damages. *Marsh & McLennan*, 944 A.2d 315 at 329 ("In our view, the defendants' arguments with respect to the potentially duplicative nature of the damages and injuries pleaded in the state's complaint implicate potential problems of proof rather than pleading… it…would be premature for us to make that determination on the pleadings alone before any discovery has been conducted.").

Connecticut has adequately alleged harm to the State's *parens patriae* interests as required by Conn. Gen. Stat. § 35-32(c).  See, *inter alia*, allegations in CAC ¶¶ 464-67 (harm to competition; artificially high prices; harm to the general economy) and ¶¶ 475, 489, 496, 503, 511, 517, 524, 532, 540, 548, 556, 572, 580, 588, 596, and 604 (injury to governmental entities and/or consumers).  This is the classic model of a *parens patriae* complaint, in that it seeks to remedy injury to the general populace of Connecticut from the allegedly anticompetitive conduct of the Defendants.  *Liberty Mutual Holding* at *3 n.13 ("[T]he very model of a *parens patriae* complaint…seeks to remedy injury to the general populace of Connecticut from the allegedly anticompetitive conduct of [Defendant].").

**Indiana**: The Attorney General of Indiana has authority to pursue damage claims on behalf of Indiana citizens. Defendants provide an unexplained footnote citing a statute that itself expressly authorizes Attorney General actions "for injuries or damages sustained directly or indirectly as a result of a violation of this chapter."  Def. Joint. Mem. at 5, n.6. Moreover, it is settled that under Indiana law, "a state may act as *parens patriae* on behalf of its citizens." *Bd. of Comm'rs of Howard City v. Kokomo City Plan Comm'n*, 263 Ind. 282, 295 (1975); *see also Bd. of Comm'rs of Union City. v. McGuinness*, 80 N.E.3d 164, 170 (Ind. 2017) ("[I]t has long been

settled that a state may act as *parens patriae* on behalf of its citizens.") (emphasis omitted)

(internal citations omitted). Indiana antitrust law expressly contemplates such Attorney General

actions. On combinations restraining trade, Ind. Code § 24-1-2-5 states that "[i]t shall be the duty

of the attorney general . . . to institute appropriate proceedings to prevent and restrain violations

of the provisions of this chapter or any other statute or the common law relating to the subject

matter of this chapter and to prosecute any person or persons guilty of having violated any of the

penal provisions thereof." *See also* Ind. Code § 24-1-1-2 ("It is hereby made the duty of the

attorney general of the state to enforce this section by due process of law.").

  **Maine**: Under Maine's antitrust law, "the powers of the Maine Attorney General are

sufficiently broad to encompass a *parens patriae* action on behalf of indirect purchasers" for

damages. *FTC v. Mylan Labs., Inc.,* 99 F. Supp. 2d 1, 7 (D.D.C. 1999) (citing *Lund ex rel.

Wilbur v. Pratt,* 308 A.2d 554, 558 (Me. 1973)).

  **Missouri**: In a footnote, Defendants contend that the Missouri Attorney General does not

have authority under the Missouri Merchandising Practices Act ("MMPA") to seek relief on

behalf of its injured citizens. Def. Joint Mem. 5-6, n.8. Defendants' contention has no merit and

is contradicted by the clear terms of the very statutory section they cite.  The fourth subsection of

that same statute expressly provides that the Attorney General can obtain "an order of restitution,

payable to the state . . . to restore . . . any person who has suffered any ascertainable loss" as a

result of any violation of the MMPA. Mo. Rev. Stat. § 407.100.4.

  The Attorney General's authority to pursue monetary claims on behalf of citizens is

likewise supported by a mountain of case law. *See, e.g*, *State ex rel. Nixon v. Am. Tobacco Co.,

Inc.*, 34 S.W.3d 122, 130 (Mo. 2000) (*en banc*) ("By the terms of the statute, it is entirely within

the discretion of the attorney general whether to seek injunctive relief or restitution on behalf of

the citizens of Missouri."); *State ex rel. Nixon v. Consumer Auto. Res., Inc.*, 882 S.W.2d 717,

721 (Mo. Ct. App. 1994) ("[MMPA] Section 407.100 sets forth several remedies available to the

attorney general. Among the remedies authorized is restitution."); *State v. Polley*, 2 S.W.3d 887,

891–92 (Mo. Ct. App. 1999); *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 637

(Mo. Ct. App. 1988). The Attorney General of Missouri clearly has the authority to pursue

damage claims on behalf of citizens.

   ***New Jersey***: The Attorney General "has long been vested with the responsibility of

protecting the public interest and enforcing public duties by instituting appropriate civil actions

in court." *In re D.C.*, 679 A.2d 634, 644 (N.J. 1995). Accordingly, the right to seek damages on

behalf of individuals, as *parens patriae*, is well established in New Jersey case law. *See*

*generally In re D.C.*, 679 A.2d 634; *Alexander v. New Jersey Power & Light Co.*, 122 A.2d 339,

343 (N.J. 1956). The Attorney General of New Jersey, acting under the State's *parens patriae*

authority, may represent New Jersey consumers as a whole. *Harvey v. Blockbuster*, 384 F. Supp.

2d 749, 753-54 (D.N.J. 2005). The Attorney General's *parens* authority includes the power to

"[e]nforce the provisions of the Constitution and *all other laws of the State* [of New Jersey],"

N.J. Stat. Ann. 52:17A-4(h) (emphasis added), including the New Jersey Antitrust Act, N.J. Stat.

Ann. 56:9-1 *et seq.* ("NJATA"). *See also* N.J. Stat. Ann. 56:9-6 ("The Attorney General shall

investigate suspected violations of, and institute such proceedings as are hereinafter provided for

violation of the provisions of [the NJATA]").

   Additionally, under N.J. Stat. Ann. 56:9-18, the NJATA must "be construed in harmony

with ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate,

insofar as practicable, uniformity in the laws of those states which enact it." The Sherman Act

specifically provides that "[a]ny attorney general of a State may bring a civil action in the name

of such State, as parens patriae on behalf of natural persons residing in such State." 15 U.S.C. §

15c(a)(1). To achieve harmony between the Sherman Act and the NJATA, the Attorney General

must have similar capacity and be permitted to proceed "as *parens patriae* on behalf of natural

persons residing" in New Jersey. *Id*.

      **New Mexico**: The New Mexico Attorney General has broad authority "to represent and to

be heard on behalf of the state when, in his judgment, the public interest of the state requires

such action." N.M. Stat. Ann. § 8-5-2(J). This statutory authority has been interpreted to allow

the Attorney General to bring *parens patriae* actions to enforce antitrust laws on behalf of the

State's citizens. *New Mexico v. Scott & Fetzer Co.*, No. 81-cv-054, 1981 WL 2167, at *1–2

(D.N.M. Dec. 22, 1981); *see also In re Lorazepam*, 205 F.R.D. at 386 (citing *Scott & Fetzer* to

recognize Attorney General's authority to bring *parens* claim on behalf of consumers).

      Defendants rely upon *Infineon Techs.*, which overlooks the suite of statutory provisions

that give the New Mexico Attorney General the power to seek damages on behalf of the State's

residents. 531 F. Supp. 2d at 1168. In addition to the broad authority allowing *parens* actions

conferred by § 8-5-2, both New Mexico's Antitrust Act and Unfair Practices Act grant specific

powers to the Attorney General to seek damages for violations of the statutes. The Antitrust Act

specifies that the Attorney General may use his authority to bring actions on behalf of the State

to seek damages for violations of the Antitrust Act, N.M. Stat. Ann. § 57-1-3(B), which are

cumulative with other remedies available to the State. N.M. Stat. Ann. § 57-1-14. This ability to

seek damages for consumers under the Antitrust Act is confirmed by N.M. Stat. Ann. § 57-1-15,

which provides that unless otherwise noted, the New Mexico Antitrust Act "shall be construed in

harmony" with federal antitrust laws "to achieve uniform application." Because New Mexico has

authority to seek damages on behalf of State residents under federal law, 15 U.S.C. § 15c, state

law would be interpreted to extend the same capacity under state law. Similarly, New Mexico's Unfair Practices Act also allows the Attorney General to obtain restitution on behalf of consumers, in addition to the injunctive relief Defendants identify. N.M. Stat. Ann. § 57-12-8(B).

*New York*:  Contrary to Defendants' threadbare citation, Def. Joint Mem. at 6, n.11, the New York Attorney General can and does seek damages for injured New Yorkers both under a statute that Defendants fail to address and in a *parens patriae* capacity under New York's antitrust law, the Donnelly Act.

Despite being expressly cited in New York's supplemental state law claim, CAC ¶ 770, Defendants do not cite or discuss N.Y. Exec. Law § 63(12). That subsection is part of the Executive Law specification of the "general duties" of the Attorney General. Subsection 12 allows the Attorney General to recover "restitution and damages" from those who engage in "repeated fraudulent or illegal acts." *Id.* Antitrust violations are "illegal" and individual New Yorkers are among those harmed by "illegal" acts for whom the Attorney General can seek "restitution and damages." *In re Lorazepam*, 205 F.R.D. at 386 (section 63(12) provides the Attorney General "the functional equivalent of *parens patriae*" authority); s*ee generally New York v. Feldman*, 210 F. Supp. 2d at 299-300, 302-03. Defendants do not cite and New York is not aware of any authority supporting a contrary argument.

The Attorney General also can and does seek treble damages for New York consumers victimized by the antitrust violations alleged in this action. The Attorney General asserts that claim in a *parens patriae* capacity. If the New York Attorney General establishes a quasi-sovereign interest, the Attorney General can act in a *parens patriae* capacity and pursue remedies that otherwise could only be pursued by private parties. *People v. Grasso*, 836 N.Y.S.2d 40 (1st Dep't 2007), *aff'd*, 893 N.E.2d 105 (2008). A quasi-sovereign interest recognized under New

York law is among the interests pursued by New York here: securing an honest market place for consumers. *People v. Liberty Mutual. Ins. Co*., 861 N.Y.S.2d 294, 296 (1st Dep't 2008) ("injury to [New York's] quasi-sovereign interest in securing an honest marketplace for all consumers" authorizes Attorney General to pursue damage claims in a *parens patriae* capacity). That quasi-sovereign interest for all states, including New York, is explained in detail in State Opposition to Defendants' Joint Motion to Dismiss the States' Federal Law Claims for Lack of Standing, 17-cv-3768, Dkt. 121, May 2, 2019 at 8-11.

The *parens patriae* claim in *Liberty Mutual* was for treble damages. As specified in New York's brief in the Appellate Division, the Attorney General used *parens patriae* authority to assert claims under New York's antitrust law, which provides for treble damages. *People v. Liberty Mutual Insurance*, 2008 WL 5934817 (1st Dep't Apr. 2, 2008). The Attorney General argued that *parens patriae* authority did not need to be express in any statute and was appropriately asserted unless in conflict with the statutory scheme at issue. *Id.* at *14-16. The Attorney General argued that "the Attorney General's express and unique enforcement role under the Donnelly Act only strengthens the case for recognizing his customary *parens patriae* authority." *Id*. at *17. The New York appellate court agreed, holding that the "State has inherent authority to act in a *parens patriae* capacity," and sustained the Donnelly Act claim asserted in that capacity. *People v. Liberty Mutual Ins. Co*., 861 N.Y.S.2d at 296. Def. Joint Mem. at 6, n.11 relies on a federal case that, unlike *Liberty Mutual*, required express statutory authority to confer authority on the Attorney General to recover treble damages for consumers.[10] But *Liberty Mutual* is both more recent and controlling, as a New York court interpreting New York law. *See West v. American Tel. & Tel. Co.,* 311 U.S. 223, 236-38 (1940) (holding that a

---

[10] *In re DRAM Antitrust Litig*., 2007 WL 251851 (N.D. Calif. Aug. 31, 2007).

ruling by an intermediate appellate state court controls in federal court unless there is "persuasive data that the highest court of the state would decide otherwise.").

*North Carolina*: The North Carolina Attorney General has statutory authority to bring actions "in the name of the State on relation of the Attorney General." N.C.G.S. § 75-15; *see also* N.C.G.S. § 114-2(8)(a) (authorizing the Attorney General to bring actions "for and on behalf of the using and consuming public of this State"). In a footnote Defendants claim—without support—that the language of § 75-15 constricts the Attorney General's authority to only bring actions in the name of the State. *See* Def. Joint Mem. at 6, n.12. In actuality, that statute constitutes "express statutory authority" for the Attorney General to represent consumers in a *parens patriae* fashion. *See In re Lorazepam*, 205 F.R.D. at 386. Here, the North Carolina Attorney General seeks damages on behalf of the agencies injured by Defendants' anticompetitive behavior under N.C.G.S. § 75-16. "There is no reason why the State as a consumer cannot take advantage of G.S. 75-16 if it is the victim of an unfair or deceptive trade practice." *F. Ray Moore Oil Co. v. State*, 341 S.E.2d 371, 374 (N.C. App. 1986).

*Pennsylvania*: The Defendants fail to recognize that the Commonwealth of Pennsylvania withdrew its claims for damages under Pennsylvania antitrust common law in the CAC. Consequently, the Defendants' challenge to the Attorney General's *parens patriae* authority is moot.  Although the Commonwealth of Pennsylvania is also authorized to proceed as *parens patriae* by statute for antitrust claims, *see In re Lorazepam*, 205 F.R.D. at 407, the Defendants needlessly and erroneously cite an irrelevant opinion that treats antitrust *parens* authority under federal law, not state law as is at issue here. Def. Joint Mem. at 6, n.14. Under Pennsylvania law, it is clear that "[t]he Attorney General shall represent the Commonwealth *and its citizens* in any action brought for violation of the antitrust laws of the United States and the Commonwealth."

71 P.S. § 732-204 (c) (emphasis added). Instead, the Commonwealth of Pennsylvania continues to pursue monetary equitable relief under both the Pennsylvania antitrust common law and the Pennsylvania Unfair Trade Practices and Consumer Protection Law.[11] The Attorney General is clearly authorized to pursue disgorgement and/or restitution claims on behalf of citizens. *See also* 73 P.S. § 201-4.1.

*Rhode Island*: Defendants reliance on R.I.G.L. § 6-13.1-8 is misplaced because it cites to a section of the Deceptive Trade Practices Act ("DTPA") that relates solely to cases in which an injunction has already been issued. Def. Joint Mem. at 7, n.15. Rhode Island has capacity through the *parens patriae* authority embedded in its DTPA statute. R.I.G.L. § 6-13.1-5 provides that:

> (a) Whenever the *attorney general* has reason to believe that any person is using, has used, or is about to use any method act or practice declared to be unlawful by § 6-13.1-2,[[12]] and that proceedings would be *in the public interest*, the attorney general may bring an action *in the name of the state* against the person to restrain by temporary or permanent injunction, the act, or practice...."

R.I.G.L. § 6-13.1-5(a) (emphasis added). A plain reading of the above section of the DTPA shows that Rhode Island's Attorney General has authority to protect "the public interest" in the form of seeking an injunction. Ancillary to the injunction is the authority to make damage claims:

> (c) The court may make any additional orders or judgements that may be necessary to restore to any person in interest, any moneys ...acquired by means of any practice in this chapter declared to be unlawful...

---

[11] Pennsylvania courts recognize a cause of action for antitrust conduct under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. *Anadarko Petroleum Corp. v. Commonwealth*, 206 A.3d 51, 61 (Pa. Commw. Ct. 2019).

[12] Unlawful acts under R.I.G.L. § 6-13.1-2 include: "engaging in any act or practice that is unfair or deceptive to the consumer" and using "any methods, acts, or practices that deceive members of the public in materials respects." (xiv).

R.I.G.L. § 6-13.1-5(c). For the above reasons, Rhode Island has authority to sustain its claims under the Rhode Island DTPA.

**Tennessee**: Defendants mischaracterize Tennessee law to assert that the Tennessee Attorney General lacks *parens patriae* authority to enforce the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, *et seq*. Defendants rely on two decisions that are not binding on this court: an unpublished trial court decision from 1980 (which has not been followed by any appellate court), *State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III, 1980 WL 4696 (Tenn. Ch. Sept. 25, 1980), and a U.S. District Court case from outside Tennessee's local circuit. *Infineon Techs.*, 531 F. Supp. 2d at 1164-65.

Defendants ignore that other courts, including the Sixth Circuit Court of Appeals, have held that the Tennessee Attorney General has *parens patriae* authority as to its citizens' antitrust claims for damages as part of his broad general powers to litigate on the public's behalf, which originated under common law and are codified at Tenn. Code Ann. § 8-6-109 (describing duties of Attorney General, declaring authority "to utilize and refer to the common law in cases in which the state is a party"). The Sixth Circuit Court of Appeals agreed that objections to the Attorney General's *parens patriae* authority lacked merit. *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004); *see also In re Lorazepam*, 205 F.R.D. at 386 (state of Tennessee had *parens patriae* authority to litigate and settle antitrust claims on behalf of consumers) (citing Tenn. Code Ann. § 8-6-109, *State ex rel. Inman v. Brock*, 622 S.W.2d 36, 42 (Tenn. 1981), and *State v Heath*, 806 S.W.2d 535, 537 (Tenn. Ct. App. 1990)).

Because *Cardizem* was issued from the federal court of appeals most familiar with Tennessee law, its conclusion that Tennessee's Attorney General is authorized to bring and settle

*parens* claims is instructive.[13] Accordingly, *Cardizem* certainly carries more weight than *Infineon Techs.*, a district court decision from outside the Sixth Circuit. *Jones Truck Lines v. Transport Ins. Co.*, Civ. A. No. 88-5723, 1989 WL 49517 (E.D. Pa. May 10, 1989) (holding that federal court should defer to local circuit's interpretation of state law, unless the circuit "'ignored clear signals emanating from the state courts' or 'clearly misread state law'") (quoting *Abex Corp. v. Maryland Casualty Co.*, 790 F.2d 119 (D.C. Cir. 1986)).

      **Wisconsin**: Wisconsin is not suing as *parens patriae* on behalf of individual consumers, and thus Defendants' challenge to the Attorney General's *parens patriae* authority is moot.

      Even so, the Attorney General retains the authority to pursue such damage claims on behalf of consumers in future cases. As with other states, Defendants misconstrue Wisconsin law which grants the Attorney General broad authority to initiate actions for "all" violations of the Wisconsin antitrust statutes.  Wis. Stat. § 133.17. "Wisconsin . . . ha[s] express statutory authority to represent consumers in a capacity which is the functional equivalent of *parens patriae*." *In re Lorazepam*, 205 F.R.D. at 386; *see* § 133.17 (granting the Department of Justice

---

[13] In *Infineon Techs.*, the Northern District of California rejected Tennessee's *parens patriae* claims in error. 531 F. Supp. 2d at 1170-71. That court's holding contravenes the clear intent of the Tennessee Supreme Court. Tennessee's Supreme Court and state appellate courts have consistently taken an expansive view of the Attorney General's duty and authority to litigate, even where that authority is not explicitly enumerated by statute. The Tennessee Attorney General "has all common law powers of office, except insofar as they are restricted by statute, and the attorney general's duties are so numerous that the legislature does not attempt to identify each by statute." *State v. Heath*, 806 S.W.2d at 537. "As the chief law enforcement officer of the state, the attorney general may exercise such authority as the public interest may require and may file suits necessary for the enforcement of state laws and public protection." *Id.*; *see also Brock*, 622 S.W.2d at 42 (rejecting challenge to Attorney General's authority to represent defendants *in quo warranto* action, holding that Tenn. Code Ann. § 8-6-109, "which describes the attorney general's duty to try cases…" is "very broad in both its specific language and intent"), citing with approval *Heath v. Cornelius*, 511 S.W.2d 683 (Tenn. 1974) ("A broad discretion is vested in this officer in determining what matters may, or may not, be of interest to the people generally. We must recognize the fact that the office of Attorney General is ancient in its origin in history, and it is generally held by the states of the Union that the Attorney General has a wide range of powers at common law. These are in addition to his statutory powers.").

the authority to "institute, manage, control and direct . . . all prosecutions for violations of [the Wisconsin antitrust statute]");[14] *see also, e.g*., § 133.03 (criminal and civil enforcement authority); § 133.14 (disgorgement); § 133.16 (equitable remedies). These provisions authorize the Attorney General to seek redress for consumers harmed by violations of the Wisconsin antitrust statute.

*Wyoming*: Wyoming need not address Defendants' argument that it lacks the authority to seek damages on behalf of injured citizens because Wyoming seeks no such damages in this action. However, below, Wyoming addresses Defendants' argument that its Wyoming Consumer Protection Act claim fails altogether.

*Conclusion*: Thus, any State that has alleged a claim on behalf of its citizens is authorized to do so, and Defendants' motion to dismiss on this basis should be denied.

### 4.  Any State that Brings a State Law Claim on Behalf of Indirect-Purchasers Is Authorized to Do So.

#### a.  The States May Bring Indirect-Purchaser Claims Under State Law.

Although section 4 of the Clayton Act, 15 U.S.C. § 15, does not permit damage claims by "indirect" purchasers, *Illinois Brick v. Illinois*, 431 U.S. 720 (1977), state antitrust statutes are not preempted and often deviate from this federal construction.  *ARC America*, 490 U.S. at 101-02 ("Appellees concede that Congress has not pre-empted the field of antitrust law. . . . Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies.").  The wide variability of paths around *Illinois Brick* is illustrated in *ARC America* itself, in which a unanimous Court examined four different state antitrust statutes and determined that none of

---

[14] Although the antitrust statutes do not directly define "prosecutions," the term "prosecute" is used to describe civil as well as criminal actions initiated by the Attorney General. *See* Wis. Stat. § 165.08 (defining the powers of the Wisconsin Department of Justice and describing settlement authority for "[a]ny civil action *prosecuted* by the department" (emphasis added)).

them were preempted by *Illinois Brick* or limited by the federal policy underlying *Illinois Brick*. *Id*. at 105-06. Alabama's statute had long allowed damages suffered "indirect[ly]" to be recovered. California's statute expressly affirmed "indirect" purchaser standing and applied that rule retroactively. Minnesota's legislation also rejected *Illinois Brick*, but applied the rule only prospectively. *Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 136 (Minn. Ct. App. 1987). Arizona's statute was modeled after the language used in section 4, and the Court still held that the statute must be interpreted independently. *ARC America*, 490 U.S. at 98 n.3. Fourteen years later, Arizona's Supreme Court construed the statute at issue in *ARC America* to permit recovery by "indirect" purchasers.[15] *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99 (Ariz. 2003). As the unanimous Court in *ARC America* made clear, *Illinois Brick* is neither binding nor persuasive when examining state antitrust statutes. *ARC America*, 490 U.S. at 105-06 ("The Congressional purposes on which *Illinois Brick* was based provide no support for finding that state indirect purchaser statutes are preempted by federal laws.").

Federal courts are required to adhere to the controlling authority of state courts on questions of state law. *Erie*, 304 U.S. 64, 78 (1938) ("The law to be applied in any case is the law of the state."). Therefore, when interpreting state law, a federal court must rely upon the common law precedent of the state's appellate courts. *West v. American Tel. & Tel. Co.*, 311 U.S. at 237 (1940).

---

[15] Various Justices on today's Court appear to agree that Arizona's reading is correct. Transcript of Oral Argument at 15, 17, 23, *Apple, Inc. v. Pepper*, 138 S. Ct. 2647 (2018) (No. 17-204) ( "I really wonder whether, in light of what has happened since then, the Court's evaluation [in *Illinois Brick*] stands up.") (Alito, J.), ("But why should we build on *Illinois Brick*? Shouldn't we question *Illinois Brick*, perhaps, given the fact that so many states have done so?") (Gorsuch, J.), ("Shouldn't that ambiguity, if there is such ambiguity, be resolved by looking at the text of the statute? 'Any person injured.' That's broad.") (Kavanaugh, J.).

Contrary to Defendants' claims, California, Connecticut,[16] Delaware, New Jersey, Ohio, Oklahoma,[17] and Virginia are not asserting claims for damages on behalf of "indirect" purchasers. Any argument regarding those state laws is not at issue.

As for the other States identified by Defendants, their state antitrust claims are properly pled:

*Arkansas*: Defendants argue that Arkansas does not have standing to bring "indirect" purchaser claims. Def. Joint Mem. at 8, n.19. Defendants either mischaracterize or misunderstand the difference between a private cause of action and the Attorney General acting in her official capacity with the various powers and responsibilities that come with the position, including the ability to bring antitrust suits on behalf of "indirect" purchasers. *See, e.g.*, Ark. Code Ann. § 4-75-212(b) ("The Attorney General may also bring a civil action in the name of the state, as parens patriae on behalf of natural persons residing in the state, to secure monetary relief as provided under this section for injury, directly or indirectly sustained . . . ."). In fact, in the exact cases Defendants cite, the courts note that the Arkansas Attorney General, "in her official discretion . . . may seek relief for harms indirect purchasers have suffered." *In re Packaged Seafood Products Antitrust Litig.*, 242 F. Supp. 3d 1033, 1069 (S.D. Cal. 2017); *accord In re EpiPen Marketing, Sales Practices, and Antitrust Litig.*, 336 F. Supp. 1256, 1312

---

[16] Connecticut is seeking general economy damages under Conn. Gen. Stat. § 35-32(c)(2). *Illinois Brick* does not apply to such claims. *See State v. Liberty Mutual Holding Co.*, No. X90CV064023087, 2009 WL 943094, at *10-11 (Conn. Super. Ct. 2009) (holding that *Illinois Brick* does not apply to the State when it is bringing a sovereign enforcement action or a general economy *parens patriae* claim because the State is not acting as a purchaser – direct or indirect.).

[17] Oklahoma does not specifically assert a claim for damages for indirect purchasers. Rather, Oklahoma only states it is entitled to relief under the Oklahoma Antitrust Reform Act, Okla. Stat. tit. 79, § 205 ("OARA"). While Defendants are correct in their assertion that a claim for damages for indirect purchasers is barred in Oklahoma pursuant to *Major v. Microsoft Corp.*, 60 P.3d 511, 513 (Okla. Civ. App. 2002), Oklahoma is entitled to other relief under the OARA, including "injunctive or other equitable relief." Okla. Stat. tit. 79, § 205(A)(1). The Oklahoma Attorney General interprets "other equitable relief" to include disgorgement.

n.19 (D. Kan. 2018) (noting that the Arkansas "statute authorizes the Attorney General to sue on behalf of persons injured 'directly or indirectly.'").  It is undeniable that the Arkansas Attorney General can bring a suit on behalf of "indirect" purchasers.

*Florida*: Plaintiff State of Florida has standing to sue Defendants based on its Minnesota Multistate Contracting Alliance for Pharmacy ("MMCAP") purchases as a direct purchaser pursuant to federal antitrust law, and in any event, as an indirect purchaser under the Florida Unfair and Deceptive Trade Practices Act (FDUTPA).[18]

Florida has pled detailed facts that it holds an express assignment of antitrust claims from MMCAP, which itself has been assigned antitrust claims from Cardinal Health.  *See* CAC ¶ 641. Defendants' own cited authority merely holds that "it is appropriate to require [plaintiffs] to identify the assignors" from which plaintiffs have acquired direct-purchaser antitrust claims.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1041 (N.D. Cal. 2011). Plaintiffs have met this burden by identifying its assignor as MMCAP.  Indeed, the court in *TFT-LCD* concluded that "the balance of the information sought by defendants, such as information about the contracts, is not required as a pleading matter and can be explored in discovery."  *Id.* Furthermore, the Third Circuit has held that courts will not dismiss a complaint when "the pleadings do not on their face show defective assignments" and that "details supporting the validity of assignments can be left for later factual determination." *In re K-Dur Antitrust Litig.*,

---

[18] Fla. Stat. § 501.201, et seq.; *Mack v. Bristol-Myers Squibb Co.*, 673 So.3d 100, 108 (Fla. Dist. Ct. App. 1996) ("we read subsections 501.202(2), 501.211(2) and 501.204(1) of the [FDUTPA] as a clear statement of legislative policy to protect consumers through the authorization of such indirect purchaser actions.").  This Court has regularly cited *Mack* for the proposition that a plaintiff may bring indirect purchaser claims under FDUTPA.  *See In re Suboxone Antitrust Litig.,* 64 F. Supp. 3d 665, 699 (E.D. Pa. 2014); *In re Flonase Antitrust Litig.,* 284 F.R.D. 207, 235 (E.D. Pa. 2012); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 160–61 (E.D. Pa. 2009).

338 F.Supp. 2d 517, 540 (D.N.J. 2004).  Here, Florida's allegations "suffice to give Defendants fair notice of the nature of their claims."  *Id.* at 541.[19]

**Indiana**: As Defendants acknowledge in their brief, Def. Joint Mem. at 8-9, n.24, the Indiana Antitrust Act explicitly provides for "indirect" damages on behalf of the State and its political subdivisions. Ind. Code §§ 24-1-1-5.1, 24-1-2-5.1, 24-1-2-7.  Indiana seeks exactly these damages for these entities.  Indiana does not, as Defendants suggest, seek "indirect" purchaser damages for individuals.

**Louisiana**: No Louisiana appellate court has directly addressed the standing of "indirect" purchasers under the Louisiana Monopolies Act.  The state's antitrust laws, which date back to the 19th century, historically provide broad standing to all injured purchasers.  Indeed, the Monopolies Act plainly states that "[any] person who is injured . . . may sue in any court of competent jurisdiction and shall recover threefold damages sustained by him . . . ."  La. R.S. 51:137.  Louisiana law further requires that, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.  La. C.C. art. 9.  The Monopolies Act clearly allows "[any] person who is injured" to sue, not just direct purchasers, and Defendants cannot assert that allowing indirect purchasers to bring suit under state antitrust laws – a practice that has occurred in many other states for decades – would suddenly lead to absurd consequences.

---

[19] Defendants also cite to *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 440 (3d Cir. 1993) seemingly to note that assignments of antitrust claims must be written with express language; however, *Gulfstream* does not address pleading standards related to antitrust assignments.  Regardless, even if Florida was required to plead the express language from its agreement with MMCAP (and it is not), Florida's agreement with MMCAP expressly stipulates the assignment of MMCAP's antitrust claims to Florida.

To support their contention, Defendants cite a single decision that determined Louisiana would likely not allow indirect purchaser actions for damages. *Free v. Abbott Labs. Inc.*, 176 F.3d 298, 299 (5th Cir. 1990). However, this decision is neither binding on this Court nor did it properly evaluate Louisiana's antitrust laws using Louisiana's own rules of statutory interpretation. Instead, it assumed Louisiana would follow federal law and apply *Illinois Brick*, ignoring the Supreme Court's holding in *ARC America* that the antitrust laws of any one state must be independently interpreted using each state's own method of statutory interpretation. *ARC America*, 490 U.S. at 105. This court should not further entrench such an improper decision.

**Missouri**: Defendants fundamentally misunderstand Missouri's claims when they contend that Missouri is precluded from seeking monetary relief for indirect purchasers because "Missouri's antitrust laws follow *Illinois Brick*." Def. Joint Mem. at 8-9, n.26. The Missouri Attorney General is seeking restitution for Missourians as allowed under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.100.4, not under the Missouri Antitrust Law, Mo. Rev. Stat. § 416.011 *et seq.* As explained in the cases Defendants cited,[20] by

---

[20] *In re Pool Products Distribution Mkt. Antitrust Litig.*, 946 F. Supp. 2d 554, 571 (E.D. La. 2013) ("Because the Missouri legislature has expressed no intent to incorporate federal antitrust standing limits into the MMPA and the Missouri Supreme Court has expressly allowed suit by indirect purchasers under the MMPA, the Court finds that [Plaintiffs'] MMPA suit is not barred under *Illinois Brick*."); *In re Lithium Ion Batteries Antitrust Litig.*, 13-MD-2420 YGR, 2014 WL 4955377, at *19 (N.D. Cal. Oct. 2, 2014) ("The Court concludes that the [Plaintiffs'] indirect-purchaser status alone presents no bar to their bringing a claim under the MMPA").

this Court's prior Order in this MDL,[21] and by numerous other courts,[22] *Illinois Brick* has no application to claims under the MMPA.

    ***Puerto Rico***: Puerto Rico can sue on behalf of "indirect" purchasers.  The Puerto Rico Antitrust Act ("PRAA") provides that "*any person* who shall be injured in his business or property by any other person, by reason of acts or intended acts, forbidden or declared to be unlawful by the provisions of this chapter . . . may sue therefore."  P.R. Laws Ann. tit. 10, § 268(a) (emphasis added).  The statute does not limit standing to those who were "directly" impacted by the illegal activity.

    To argue otherwise, Defendants cite an out-of-district case that misconstrues federal precedent on "indirect" purchasers by holding, "*Illinois Brick* applies and bars indirect-purchaser actions in Puerto Rico."  *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016).  *Illinois Brick* emphatically does *not* control the construction of Puerto Rican law. The Supreme Court made abundantly clear in *ARC America* that "the congressional purposes on which *Illinois Brick* was based provide no support for finding that state indirect purchaser statutes are preempted by federal law."  *ARC America*, 490 U.S. at 105-06.  *Illinois Brick*'s holding is neither binding nor persuasive when interpreting Puerto Rico's antitrust statute.

    The federal district court in Puerto Rico has held that "indirect" purchasers are not precluded from recovering.  *Rivera-Muniz v. Horizon Lines, Inc.*, 737 F. Supp. 2d 57, 61 (D.P.R. 2010) ("It is immaterial whether Plaintiffs are direct or indirect purchasers.").  The federal court

---

[21] *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 841 n.117 (E.D. Pa. 2019).

[22] *In re Packaged Seafood Products Antitrust Litig.*, 242 F. Supp. 3d 1033, 1079 (S.D. Cal. 2017); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 414–16 (E.D. Pa. 2010); *Picone v. Shire PLC*, 16-CV-12396-ADB, 2017 WL 4873506, at *17 (D. Mass. Oct. 20, 2017); *In re Zetia (Ezetimibe) Antitrust Litig.*, CV 2:18-MD-2836, 2019 WL 1397228, at *28 (E.D. Va. Feb. 6, 2019).

noted that although not expressly addressing whether "indirect" purchasers can recover, the Puerto Rico Supreme Court has held that Puerto Rico liberally construes its standing requirements in antitrust cases and that a plaintiff need only provide a causal connection between the violation of the law and the damage suffered, citing *Pressure Vessels R v. Empire Gas PR*, 137 D.P.R. 497, 519-20 (1994).

Moreover, the Puerto Rico Supreme Court has stressed that local antitrust law should be interpreted in a way that accounts for local economic conditions and realities. *G.G. & Supp. Corp. v. S. & F. Systs., Inc.*, 153 D.P.R. 861, 874 (2001) ("It must be borne in mind that the application of these federal statutes does not constitute an occupied field. When what is being applied is local law, the courts of Puerto Rico can interpret it in a different way that effectively addresses our reality and economic particularity."). Indeed, in *P.R. Fuels, Inc. v. Empire Gas Co.*, 149 D.P.R. 691 (1999), the Puerto Rico Supreme Court rejected federal antitrust jurisprudence on the right of action for contribution by interpreting the local law differently.

The precedent from the Supreme Court of Puerto Rico is controlling and the Puerto Rico federal district court's ruling is persuasive. Puerto Rico's antitrust laws do not require plaintiffs to be direct purchasers to have a damage claim.

***Rhode Island***: Defendants claim Rhode Island lacks standing insofar as it seeks to recover damages on behalf of indirect purchasers for monetary "overcharges" taking place prior to July 15, 2013. Def. Joint Mem. at 8-9, n.31. While Defendants correctly note that Rhode Island's antitrust statute was amended on July 15, 2013, they incorrectly imply that "indirect" purchasers were without legal recourse under the Rhode Island Antitrust Law. R.I.G.L. § 6-36-1, *et seq.*

In fact, the Rhode Island Antitrust Law, passed in 1979, provided an avenue for the recovery of "indirect" purchaser claims more than 30 years before the 2013 amendment.  Since enactment, the statute has allowed the Rhode Island Attorney General to bring *parens patriae* suits on behalf of harmed persons irrespective of whether the purchasers were direct or indirect. *Siena v. Microsoft Corp.*, 796 A.2d 461, 464–65 (R.I. 2002) ("Indirect purchasers are not, however, left defenseless under Rhode Island's statutory scheme. Indeed, § 6–36–12 reserves to the Attorney General as *parens patriae*, the right to sue on behalf of indirect purchasers for monetary damages resulting from a violation of the Antitrust Act. Thus, we are satisfied that by enacting § 6–36–12 the Legislature appropriately addressed any injustice that might arise as a result of the rule enunciated in Illinois Brick Co.").  Rhode Island's standing to bring its indirect purchasers claims cannot be disputed.

### b.   The States May Bring State Law Disgorgement Claims

In a footnote, Defendants make the blanket statement, without citation, that the States cannot seek disgorgement under state law. Def. Joint Mem. at 8-9, n.33.  Defendants then further claim, again without citation, that states that do not allow "indirect" purchasers to recover damages cannot seek certain equitable remedies, including disgorgement.

In support of their assertion, Defendants only refer the court to their motion to dismiss the federal claims.  Defendants' Memorandum of Law in Support of their Joint Motion to Dismiss Plaintiffs' Federal Law Claims for Lack of Standing, 17-cv-3768, Dkt. 74-1, Feb. 21, 2019.  Plaintiffs' memorandum in response to the motion to dismiss the federal claims comprehensively addresses each of Defendants' misleading arguments.  State Opposition to Defendants' Joint Motion to Dismiss the State's Federal Law Claims for Lack of Standing, 17-cv-3768, Dkt. 121, May 2, 2019.

Further, and as is consistent with much of the rest of their motion, Defendants overlook the Supreme Court's holding in *ARC America*. Assuming, *arguendo*, that *Illinois Brick* prevents the States from seeking disgorgement under the federal antitrust laws, *ARC America* directly addresses the issue: "There is no claim that the federal antitrust laws expressly pre-empt state laws permitting indirect purchaser recovery." *ARC America*, 490 U.S. at 101. In such an instance, a court should then follow the statutes and common law decisions of the respective states. *Erie*, 304 U.S. at 78 ("The law to be applied in any case is the law of the state."). Defendants have made no state law-specific arguments, so their sweeping claim regarding disgorgement should be rejected

### 5. States Have Sufficiently Pled Their Consumer Protection Claims Consistent with the Requirements of Each State

#### a. Kentucky and South Carolina Are Entitled to Monetary Relief

Defendants argue that Kentucky and South Carolina are limited to injunctive relief. Def. Joint Mem. at 9-10. However, the law in each state clearly establishes that the Attorney General may seek monetary relief for violations of each State's consumer protection law. The Kentucky Attorney General is entitled to seek civil penalties for the Commonwealth, Ky. Rev. Stat. Ann. § 367.990, and restitution on behalf of harmed consumers. Ky. Rev. Stat. Ann. § 367.200 (Attorney General may seek "orders or judgments . . . to restore to any person in interest any moneys . . . which may have been paid out as a result of any practice declared unlawful by KRS 367.130 to 367.300."); *see also Commonwealth v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 706 (Ky. App. Ct. 1981) ("The legislature, in enacting KRS 367.200, intended to vest the Attorney General with the authority to seek restitution on behalf of defrauded consumers . . . ."). Similarly, under South Carolina law, the Attorney General is empowered to seek restitution and civil penalties. *See, e.g.*, S.C. Code Ann. § 39-5-50 (Attorney General may seek "additional

orders or judgments as may be necessary to restore to any person who has suffered any

ascertainable loss . . ., any moneys or property, real or personal, which may have been acquired

by means of any practice declared to be unlawful in this article . . ."); S.C. Code Ann. § 39-5-110

(Attorney General may seek a civil penalty not to exceed $5,000 for each willful violation).

> **b. Indiana, Maine, Michigan, and Wyoming Possess Statutory Authority to Challenge the Conduct Alleged in the Amended Complaint Under Their State Consumer Protection Laws.**

Defendants contend that the Consumer Protection Claims of Indiana, Maine, Michigan,

and Wyoming should be dismissed because those state statutes "do not prohibit the antitrust

conduct Plaintiffs allege." Def. Joint Mem. at 10-12. This argument mischaracterizes the

conduct that is covered by each of the state consumer protection statutes. The following state law

claims are properly pled:

*Indiana*: The Indiana Deceptive Consumer Sales Act ("IDCSA") broadly prohibits a

supplier from committing any "unfair, abusive, or deceptive acts, omissions, or practices in

connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a). This prohibition includes

both implicit and explicit misrepresentations. Ind. Code § 24-5-0.5-3(a). Although Ind. Code §

24-5-0.5- 3 details certain prohibited practices by a supplier, this list is not an exhaustive

recitation of all potentially unlawful acts under the statute. Ind. Code § 24-5-0.5-3(b) ("Without

limiting the scope of subsection (a), the following acts . . . are deceptive acts"). Further,

Defendants' reliance on *Berghausen v. Microsoft*, 765 N.E.2d 592 (Ind. Ct. App. 2002), is

misplaced. In *Berghausen,* the court rejected Plaintiff's "implicit representations" argument

because prior interpretations of the IDCSA required an express misrepresentation to violate the

statute. Ind. Code § 24-5-0.5-3(a) (2013). However, the Indiana legislature expanded the law in

2014 to include implicit misrepresentations and omissions. *See* Ind. Code. § 24-5-0.5-3(a) (2014).

*Maine*: The proposition upon which Defendants rely and the supporting case law Defendants cite have been explicitly rejected by the federal district court in the District of Maine. *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 187 n.40 (D. Me. 2004) ("The relevant provision in this case is not the prohibition on 'unfair or deceptive acts,' but rather the ban on 'unfair methods of competition,' which was not implicated in *Tungate*. *Tungate*'s standards for establishing deception are therefore not pertinent.")(citing *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792 (Me. 1998)). Defendants' reliance on federal district court cases outside both this circuit and Maine's First Circuit for the proposition that Maine's UTPA does not apply to price-fixing allegations is inapposite. Def. Joint Mem. at 10-11. The cases are not binding on this court and consist of an overbroad application of a state court holding in *Tungate*.

Further, the prohibitions of the FTCA encompass and include those set forth in Section 1 of the Sherman Act, such as price-fixing. *See* FTC *v. Ind. Fed'n of Dentists*, 476 U.S. 447, 454 (1986). Since Maine's UTPA is interpreted as consistent with the FTCA, such a violation of the FTCA may also constitute a violation under Maine's UTPA. *See, e.g.*, *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d at 186-187 ("Allegations of a conspiracy to keep Canadian vehicles out of the United States, if true, could constitute a violation of Maine's Unfair Trade Practices Act").

*Michigan*: In support of their claim that their actions do not fall within the Michigan Consumer Protection Act ("MICPA"), Defendants once again cite the wrong section of the statute and rely upon case law that treats the wrong section of the statute. MICPA grants the

Attorney General the ability to bring suit for damages caused by "a method, act, or practice in trade or commerce" that has been deemed unfair or deceptive within the meaning of Section 5(a)(1) of the FTC Act by either a circuit court of appeals or the Supreme Court more than 30 days before the alleged unlawful conduct occurs. Mich. Comp. Laws § 445.910(1)(c). Both of these conditions have certainly been met. *See, e.g.*, *United States v. St. Regis Paper Co.*, 285 F.2d 607 (2d Cir. 1960) ("[A]ny violation of the Sherman and Clayton Acts [is] also a violation of § 5 of the Federal Trade Commission Act."). Therefore, Defendants' argument, premised on the notion that their alleged conduct does not fall within MICPA, is incorrect.

*Wyoming*: Defendants claim that, because Wyoming has a separate antitrust statute, the claims under the Wyoming Consumer Protection Act ("WCPA") should be rejected for it fundamentally misrepresents the state statutes and case law. In support of their claim, Defendants rely on *Herrig*, which is easily distinguishable. To start, in that case, the court determined that Wyoming Insurance Code covered the conduct at issue, so the consumer protection claim could be dismissed. *Herrig v. Herrig*, 844 P.2d 487, 495 (Wyo. 1992). In unmistakable language, Wyoming's antitrust statute states that it does not provide the exclusive mechanism for remedying antitrust conduct. Wyo. Stat. Ann. § 40-4-105 ("Nothing in this act . . . shall be construed as repealing any other act or part of an act."). Unlike Wyoming's antitrust statute, the Insurance Code did not contain a provision noting that the statute was not the exclusive mechanism for remedying the conduct. *See* Wyo. Stat. Ann. § 26-1-101 *et seq*.

Further, *Herrig* dealt with a private plaintiff seeking individualized relief. By contrast, the Attorney General of Wyoming brings this case in the "public interest" as the "enforcing authority" of the Wyoming Consumer Protection Act. *See* Wyo. Stat. §§ 40-12-102(a)(vii), 40-12-106. In this statutorily designated capacity, the Wyoming Attorney General's role is to

enforce law and protect the public, not to remedy a singular harm. *See FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202-03 n.7 (10th Cir. 2005). The court's powers are broader and more flexible in an enforcement action than in any private controversy, as are the remedies available to government enforcers. *See F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 170 (2004). Indeed, the remedies the Wyoming Attorney General seeks here (injunctive relief and civil penalties) are not even available to private litigants under the Wyoming Consumer Protection Act. *Compare* Wyo. Stat. Ann. §§ 40-12-106 (authorizing Attorney General to seek injunctive relief), *and* 40-12-113(c) (empowering Attorney General to recover civil penalties) *with* § 40-12-108(a) (allowing private plaintiff to recover damages suffered as a consumer). Simply put, because this government action serves an entirely different purpose and involves different remedies than a private action, *Herrig* is inapposite.

While the Wyoming Supreme Court has not yet addressed the issue, its precedents suggest it would allow such a consumer protection act claim to move forward. Namely, when a Wyoming statute is similar to a federal statute, the Wyoming Supreme Court looks to federal case law interpreting the comparable federal statute. *See, e.g.*, *Pool v. State*, 2001 WY 8, ¶ 12, 17 P.3d 1285, 1288 (Wyo. 2001); *Sublette City Rural Health Care Dist v. Miley*, 942 P.2d 1101, 1103-04 (Wyo. 1997). Here, the Wyoming Supreme Court would look to federal courts interpreting the Federal Trade Commission Act, which like the Wyoming Consumer Protection Act declares unlawful "unfair or deceptive acts or practices." *Compare* Wyo. Stat. Ann. § 40-12-105(a)(xv), *with* 15 U.S.C. § 45(a)(1). Those federal courts have consistently applied the Federal Trade Commission Act to encompass price-fixing and other antitrust-type violations. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 900 (E.D. Pa. 2012) (citing *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 454 (1986)).

In short, given the absence of direct authority from the Wyoming Supreme Court and binding authority from the Third Circuit, this Court should apply the same reasoning it has applied to other state consumer protection claims where no direct and contrary state authority exists. Wyoming's Consumer Protection Act should survive because "[w]hether [Wyoming] can ultimately prove a consumer protection claim separate and apart from [its] antitrust claim is not a question for resolution at this stage of litigation." *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 842 (E.D. Pa. 2019).

**6. Conclusion**

For the foregoing reasons, the States respectfully request that Defendants' Joint Motion to Dismiss State Law Claims be denied in its entirety.


Respectfully,

STATE OF NEW YORK                          STATE OF CONNECTICUT
LETITIA JAMES                              WILLIAM TONG
NEW YORK ATTORNEY GENERAL                  CONNECTICUT ATTORNEY GENERAL

*/s/ Robert L. Hubbard*                     */s/ Joseph Nielsen*
Robert L. Hubbard                          Joseph Nielsen
Assistant Attorney General                 Laura Martella
Jon M. Derewicz                            Assistant Attorneys General
Tyler T. Jankauskas                        55 Elm Street, P.O. Box 120
Legal Interns                              Hartford, CT 06141-0120
Office of the Attorney General             (860) 808-5040
Antitrust Bureau                           Joseph.Nielsen@ct.gov
28 Liberty Street, 20th Floor              Laura.Martella@ct.gov
New York, NY 10005
(212) 416-8267
Robert.Hubbard@ag.ny.gov