# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE STATE OF CONNECTICUT; THE STATE OF ALASKA; THE STATE OF ARIZONA; THE STATE OF ARKANSAS; THE STATE OF CALIFORNIA; THE STATE OF COLORADO; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF FLORIDA; THE STATE OF HAWAII; THE STATE OF IDAHO; THE STATE OF ILLINOIS; THE STATE OF INDIANA; THE STATE OF IOWA; THE STATE OF KANSAS; THE COMMONWEALTH OF KENTUCKY; THE STATE OF LOUISIANA; THE STATE OF MAINE; THE STATE OF MARYLAND; THE COMMONWEALTH OF MASSACHUSETTS; THE STATE OF MICHIGAN; THE STATE OF MINNESOTA; THE STATE OF MISSISSIPPI; THE STATE OF MISSOURI; THE STATE OF MONTANA; THE STATE OF NEBRASKA; THE STATE OF NEVADA; THE STATE OF NEW HAMPSHIRE; THE STATE OF NEW JERSEY; THE STATE OF NEW MEXICO; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF NORTH DAKOTA; THE STATE OF OHIO; THE STATE OF OKLAHOMA; THE STATE OF OREGON; THE COMMONWEALTH OF PENNSYLVANIA; THE COMMONWEALTH OF PUERTO RICO; THE STATE OF RHODE ISLAND; THE STATE OF SOUTH CAROLINA; THE STATE OF TENNESSEE; THE STATE OF UTAH; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; THE STATE OF WASHINGTON; THE STATE OF WEST VIRGINIA; THE STATE OF WISCONSIN; and THE STATE OF WYOMING<br><br>v.<br><br>AUROBINDO PHARMA USA, INC.; ACTAVIS HOLDCO US, INC.; ACTAVIS PHARMA, INC.; APOTEX CORP.; ASCEND LABORATORIES, LLC; CITRON PHARMA, LLC; DR. REDDY'S | No. 3:16-cv-02056 (MPS) |

LABORATORIES, INC.; EMCURE
PHARMACEUTICALS, LTD; GLENMARK
PHARMACEUTICALS INC., USA; HERITAGE
PHARMACEUTICALS, INC.; LANNETT
COMPANY, INC.; RAJIV MALIK; MAYNE
PHARMA (USA), INC.; SATISH MEHTA; MYLAN
PHARMACEUTICALS INC.; TEVA
PHARMACEUTICALS USA, INC.; SANDOZ,
INC.; SUN PHARMACEUTICAL INDUSTRIES,
INC.; and ZYDUS PHARMACEUTICALS (USA),
INC.

## RULING ON JOINT MOTION TO DISMISS STATE-LAW CLAIMS

The Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss the state-law claims

asserted by the Plaintiffs, the attorneys general of most of the States and several U.S. territories

("the States"), in this sprawling action alleging price-fixing, market allocation, and bid rigging in

the sale of generic drugs.  ECF No. 602.  For the reasons set forth below, I grant in part and deny

in part the Defendants' motion.

### I.  OVERVIEW

#### A.  Procedural Background

This is one of three cases in which the attorneys general of many states and U.S. territories

have sued scores of makers of generic drugs for alleged antitrust violations and unfair trade

practices.  All three cases were originally filed in this Court but were transferred to the Eastern

District of Pennsylvania (the "MDL court"), which was designated by the Judicial Panel on

Multidistrict Litigation (the "JPMDL") to preside over these and other cases involving similar

allegations asserted by private parties in a consolidated proceeding.  ECF No. 343.[1]  In April 2024,

---

[1] Unless otherwise indicated, all ECF numbers in this case refer to entries on the docket of this
case, not the same case when it was before the MDL court, and each page number refers to the
page number shown on the ECF stamp on the top of the cited page, not the page of the relevant
brief or pleading designated by the parties.

the JPMDL remanded these three cases to this Court, and they were assigned to me.  ECF Nos. 345, 353.  This case, which the parties refer to as the "Heritage case," involves allegations that nineteen defendants allocated customers, fixed prices, and rigged bids in the sale of fifteen generic drugs.  The Defendants filed the present motion to dismiss with the MDL court on May 31, 2019.

On November 12, 2024, I issued a ruling in one of the parallel actions on a motion to dismiss state-law claims that raise many of the same arguments as those presented here. *Connecticut v. Sandoz, Inc.*, No. 20cv802, 2024 WL 4753308 (D. Conn. Nov. 12, 2024).  Although I adopt many of my conclusions from that ruling, the parties in this action have also raised separate and additional claims and arguments, which I address below.

### B.  Allegations

The operative complaint in this case, the June 15, 2018 amended complaint (ECF No. 473 on this Court's docket), spans 191 pages and includes 889 numbered paragraphs.[2]  It alleges collusion in the pricing, market allocation, and bidding for various generic drugs.  The complaint describes a series of conspiracies, and an overarching conspiracy, between makers of generic drug-related products to collude on price, market allocation, and bids for the business of customers.  The complaint alleges that generic drug makers "communicated with each other to determine and agree on how much market share and which customers each competitor was entitled to," and "then implemented the agreement by either refusing to bid for particular customers or by providing a cover bid they knew would not be successful," thereby reducing or eliminating competition and allowing them to maintain "supra-competitive prices."  ECF No. 473 ¶ 12.  Because the factual

---

[2] By contrast, the operative complaint in *Sandoz*, No. 20cv802, spans 609 pages and includes 2,123 numbered paragraphs.

details of the alleged agreements are not critical to this ruling for reasons I explain below, however, I do not further summarize the complaint here.

### C. Rule 12(b)(6)

While the Defendants have filed previous motions attacking the federal antitrust claims in this case, this motion targets only the States' state-law claims and, as discussed below, only certain portions of those claims. In federal court, each complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. 8(a)(2), and if the complaint "fail[s] to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), the court must dismiss it. In deciding the Defendants' motion to dismiss under Rule 12(b)(6), I must determine whether the States have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I must accept as true the complaint's factual allegations, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

For the most part, however, the Defendants' motion does not involve the application of these standards—making it an unusual Rule 12(b)(6) motion. As in the similar motion filed in the parallel *Sandoz* action, most of the motion does not argue that the States' allegations under state antitrust and unfair and deceptive practice statutes "fail[ ] to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), or that the price-fixing, bid-rigging, and market allocation

4

allegations do not "plausib[ly]" plead violations of those statutes. Instead, the bulk of the motion asks me to foreclose the States from pursuing particular types of relief—such as "parens patriae" damages and disgorgement—under state law. As I explained in *Sandoz*, I attempt in this ruling to address the parties' arguments, while keeping in mind that there will be later stages of this case in which I might be in a better position to decide some of these issues. *See Sandoz, Inc.*, 2024 WL 4753308 at *2–*3. In particular, because a court is generally not in a position to assess what relief might suit a particular case until after liability is established, only where I find the relevant State's law to foreclose particular types of relief in clear terms will I "dismiss" a particular claim for relief.

## II. DISCUSSION

For ease of reference, I organize the analysis of the Defendants' motion alphabetically by state below. At the outset, however, I will address one of their arguments that seeks collectively to dismiss certain claims of eighteen States based on an alleged pleading deficiency.

### A.      Claims on Behalf of Governmental Entities

The Defendants move to dismiss all claims for damages on behalf of governmental entities brought by the District of Columbia, Florida, Illinois, Indiana, Kansas, Maine, Massachusetts, Minnesota, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Puerto Rico, Tennessee, and West Virginia. The Defendants argue that the States' complaint does not meet the pleading standard of Rule 8(a) because it fails to identify the governmental entities affected by Defendants' alleged conduct. ECF 602-2 at 22. This argument is unpersuasive, particularly because the Defendants seek only to foreclose the States from pursuing a particular type of relief. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Here, the Complaint alleges sufficient facts to give the Defendants fair notice of claims that they engaged in an antitrust conspiracy. The Defendants' request for details about the various agencies—which would go to determining the extent of damages—is a matter to be developed in discovery. While I appreciate that there might be practical value in clarifying the forms of relief available in anticipation of settlement discussions, the absence of such information does not affect the validity of the States' antitrust claims at the pleadings stage. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1039 (N.D. Cal. 2011) (states not required to specifically identify governmental entities where complaint answers basic questions about claims). Indeed, state antitrust enforcement actions are often filed under the state's name without a lengthy description of every agency on whose behalf damages are claimed. *See, e.g.*, *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1130 (N.D. Cal. 2007); *F.T.C. v. Mylan Lab'ys, Inc.*, 62 F. Supp. 2d 25, 49 (D.D.C. 1999). As I noted in *Sandoz*, "[t]here is little question that individual consumers need not be named in the pleadings[, a]nd there is no statutory basis for applying different pleading standards to certain types of victims, like government entities." *Sandoz, Inc.*, 2024 WL 4753308, at *18 (internal citation omitted).

The cases to which Defendants cite to counter this proposition are not applicable to the majority of the States' claims. *See* ECF 602-2 at 22 (citing *New York v. Cedar Park Concrete Corp.*, 665 F. Supp. 238, 242 (S.D.N.Y. 1987); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2007 WL 2517851, at *6 (N.D. Cal. Aug. 31, 2007)). Both cases relied on an interpretation of New York's antitrust law, the Donnelly Act, which permits the Attorney General to bring an action only "upon the request of a political subdivision." N.Y. Gen. Bus. Law § 342-b. Under this interpretation, the governmental entity's identity is a necessary

element of New York's standing; the state could not proceed without a specific political subdivision requesting representation.  The Defendants contend only that New York and Colorado require a request by or consent of the entity; I will address these states' claims below.

New York and Colorado aside, the complaint contains sufficient information to provide the Defendants "fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson*, 551 U.S. at 93, without identifying the specific governmental entities allegedly harmed by the Defendants' conduct.  So I deny the motion to dismiss claims for damages on behalf of governmental entities brought by the District of Columbia, Florida, Illinois, Indiana, Kansas, Maine, Massachusetts, Minnesota, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, Oregon, Puerto Rico, Tennessee, and West Virginia.

### B.      Dismissed claims: Alabama and Louisiana

I begin my analysis of the remaining claims by each State by denying the motion to dismiss Alabama's and Louisiana's state-law claims as moot.  After the Defendants filed the motion to dismiss, Alabama voluntarily dismissed its claims.  ECF No. 629.  Louisiana dismissed its claims against all defendants except for Apotex Corp. and Heritage Pharmaceuticals, Inc.  ECF No. 618. The Court has approved Heritage's settlement with the States, ECF No. 767, and a Motion for Preliminary Approval of Settlement with Apotex has been filed, ECF No. 757.  If the Court does not approve the Apotex settlement, the Defendants may renew their arguments to dismiss Louisiana's state-law claims.

### C.      State-by-State Claims

1.   <u>Alaska</u>

The Defendants move to dismiss Alaska's claims for monetary relief as parens patriae on behalf of indirect purchasers under the Alaska Restraint of Trade Act ("ARTA"), Alaska Stat. §

45.50.562 *et seq.*, and the Alaska Unfair Trade Practices and Consumer Protection Act ("AUTPA"), Alaska Stat. § 45.50.471 *et seq.*  The motion is granted in part and denied in part as follows.

First, in their reply brief, the Defendants withdrew their arguments in support of their motion to dismiss damages claims under the state's antitrust law.  ECF No. 602-2 at 14 n.4.  As such, the motion to dismiss damages claims under ARTA is denied.

Second, the Defendants argue that Alaska's consumer protection law, AUTPA, does not provide for claims for damages.  I agree.  The AUTPA permits injunctive relief as well as "additional orders or judgments that are necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of an act or practice declared to be unlawful by [the AUTPA]."  Alaska Stat. § 45.50.501(a–b).  Although the Alaska Supreme Court has never specifically precluded the State from seeking damages under the AUTPA, the court has often described the relief available under the AUTPA as "injunctive" or "restitutory."  *See, e.g.*, *Neese v. State*, 218 P.3d 983, 988–89 (Alaska 2009) (noting attorney general's authority to restrain by injunction and the court's power to order restitution); *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 412 (Alaska 1982) (noting court's authority to award restitutory relief).  Furthermore, the AUTPA does not expressly authorize the Attorney General to recover damages, as it does for private parties.  *Compare* Alaska Stat. § 45.50.537(c), *with id.* § 45.50.537(d).  I agree with the Defendants that the AUTPA does not provide for claims for damages.

In any event, injuries to Alaska consumers will be captured by any damages award under ARTA, and a plaintiff "may not recover twice for the same injury."  *Phelan v. Loc. 305 of United Ass'n of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 973 F.2d

1050, 1063 (2d Cir. 1992). Thus, while I will dismiss any claim for damages under the AUTPA, Alaska will still be able to recover damages on behalf of indirect purchasers under ARTA.

The Defendants next argue that Alaska's claims for restitution must also be dismissed because Alaska has not pled "that the funds . . . are traceable and readily identifiable." ECF 602-2 at 29. The Defendants cite no Alaska authority requiring the state to plead specifically that the funds it seeks be "traceable" or "readily identifiable." *See id.* The complaint states that Alaska seeks relief under Section 45.50.501, which provides for restitution. ECF No. 473 ¶ 615. This is sufficient to put the Defendants on notice of the type of relief Alaska seeks. It would be improper at the pleadings stage to require a plaintiff to establish the precise identification of funds, especially when the full scope of those harmed may not yet be clear. The motion to dismiss Alaska's claims for restitution under the AUTPA is denied.

### 2. <u>Arkansas</u>

In their reply brief, the Defendants withdrew their motion to dismiss Arkansas's claims for monetary relief as parens patriae on behalf of indirect purchasers. ECF No. 602-2 at 4 n.4. As such, the motion to dismiss Arkansas's claims is denied.

### 3. <u>Colorado</u>

The Defendants move to dismiss Colorado's claims under the Colorado Antitrust Act of 1992, Colo. Rev. Stat. § 6-4-101 et seq., to the extent they are brought (1) on behalf of governmental entities, and (2) for monetary relief on behalf of indirect purchasers. ECF No. 602 at 25–26. The motion is denied.

The Defendants first argue that Colorado has no standing to sue on behalf of governmental entities because it has not received written consent from any such entity, as is required under Colo. Rev. Stat. § 6-4-111(2) of the 1992 Act. ECF No. 602 at 3. Colorado clarified in its opposition

brief that it is not seeking damages on behalf of any government entity.  ECF No. 602-1 at 14.
Thus, the motion to dismiss as to this issue is denied as moot.

The Defendants next seek to dismiss Colorado's claims for monetary recovery on behalf
of indirect purchasers because they are precluded by the Supreme Court's decision in *Illinois Brick
Co. v. Illinois*, 431 U.S. 720 (1977).  ECF 602 at 25.  *Illinois Brick* "established a bright-line rule
that authorizes suits [for damages in anti-trust cases] by direct purchasers but bars [such] suits by
indirect purchasers."  *Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019).  "The bright-line rule of
*Illinois Brick* . . . means that indirect purchasers who are two or more steps removed from the
antitrust violator in a distribution chain may not sue."  *Id.* at 280.  The *Illinois Brick* direct
purchaser rule bars damages claims brought by indirect purchasers under federal antitrust laws.
Following the *Illinois Brick* decision, multiple states adopted statutes that "expressly allow[ed]
indirect purchasers to sue."  *California v. ARC America Corp.*, 490 U.S. 93, 98 & n.3 (1989).  The
Supreme Court explained that "[n]othing in *Illinois Brick* suggests that it would be contrary to
congressional purposes for States to allow indirect purchasers to recover under their own antitrust
laws."  *Id.* at 103.  Accordingly, many states have enacted *Illinois Brick*-repealer legislation.

The Colorado Antitrust Act of 1992 did not permit the attorney general to sue for damages
on behalf of indirect purchasers.  *Stifflear v. Bristol-Myers Squibb Co.*, 931 P.2d 471, 476 (Colo.
App. 1996) ("the Colorado General Assembly, in the 1992 Act, elected to repeal the direct-
purchaser rule only for suits brought by the attorney general on behalf of governmental or public
entities").  In 2023, however, the General Assembly repealed and reenacted the 1992 Act.  2023
Colo. Legis. Serv. Ch. 427 (H.B. 23-1192) (West).  But the revised statute does not apply
retroactively.  *Id.* § 7 ("This act applies to conduct occurring on or after the effective date of this
act [June 7, 2023].");  *see also* Colo. Rev. Stat. § 2-4-202 ("A statute is presumed to be prospective

in its operation."); *In re Est. of DeWitt*, 54 P.3d 849, 854 (Colo. 2002) ("Absent legislative intent to the contrary, a statute is presumed to operate prospectively."). Because the 1992 Act is operative here, *Illinois Brick* precludes Colorado from bringing a claim for damages on behalf of indirect purchasers.

Colorado, however, does not seek damages in this action, only "equitable relief, the maximum civil penalties allowed by law, attorneys' fee, and costs." ECF No. 473 ¶ 632. As I explained in the *Sandoz* ruling, *Illinois Brick* did not address equitable relief, and so it is hard to see why it should definitively resolve whether a state attorney general may seek the equitable remedy of disgorgement, even if the victims to whom the disgorged profits were ultimately paid were indirect purchasers. *Sandoz, Inc.*, 2024 WL 4753308, at *20–*21. If allowing the States to seek disgorgement or other types of monetary equitable relief on behalf of indirect purchasers would undermine the double recovery concern behind *Illinois Brick*, "I would likely have to consider the equities behind both the disgorgement remedy and the rule of *Illinois Brick* in deciding the issue. But that issue would likely not arise until after liability was decided. . . . It would be premature to decide that issue at the pleadings stage." *Id.* at *19. Because it would be premature to determine whether *Illinois Brick* precludes Colorado from seeking any form of monetary relief (aside from damages) that may be available under the Colorado Antitrust Act of 1992, the motion to dismiss Colorado's claims is denied.

4.  Connecticut

The Defendants move to dismiss Connecticut's (1) parens patriae claims for damages and (2) any claims for damages on behalf of indirect purchasers that predate October 1, 2018. The motion is denied.

Connecticut seeks "damages as parens patriae on behalf of the State of Connecticut and the People of the State of Connecticut." ECF No. 473 ¶ 608. Under the Connecticut Antitrust Act:

> The Attorney General may . . . bring an action in the name of the state as (1) parens patriae for persons residing in the state with respect to damages sustained by such persons . . . ; or (2) parens patriae with respect to damages to the general economy of the state or any political subdivision thereof; provided that such damages shall not be duplicative of those recoverable under subdivision (1) of this subsection.

Conn. Gen. Stat. § 35-32(c).

First, the Defendants argue that Connecticut may not seek damages as parens patriae on behalf of both the state and its people because those damages would be duplicative. ECF Nos. 602 at 22 n.5, 602-2 at 15. As explained in *Sandoz* and in the Colorado section above, this issue is premature at the pleading stage. *See Sandoz, Inc.*, 2024 WL 4753308, at *19; *State v. Marsh & McLennan Cos., Inc.*, 944 A.2d 315, 328 (Conn. 2008) ("defendants' arguments with respect to the potentially duplicative nature of the damages and injuries pleaded in the state's complaint implicate potential problems of proof rather than pleading"). The motion is denied as to this issue.

Second, the Defendants argue that Connecticut cannot seek monetary damages for indirect-purchaser antitrust violations occurring before October 1, 2018, the date the state legislature enacted an *Illinois Brick*-repealer statute, Conn. Gen. Stat. § 35-46a. ECF 602 at 25. Under § 35-32(c)(2), Connecticut can seek damages as parens patriae with respect to its general economy. Because such claims do not seek to recover on behalf of either direct or indirect purchasers, they are not foreclosed by *Illinois Brick*. *See State v. Liberty Mutual Holding Co.*, No. X90CV064023087, 2009 WL 943094, at *3 (Conn. Super. Ct. 2009) (finding *Illinois Brick* inapposite in declining to strike claim under Conn. Gen. Stat. § 35-32(c)(2)). Accordingly, the Defendants' motion to dismiss Connecticut's claims is denied.

5. Delaware

The Defendants move to dismiss Delaware's claims for monetary recovery on behalf of indirect purchasers under the Delaware Antitrust Act, Del. Code tit. 6, § 2101 et seq., because they are precluded by *Illinois Brick*. ECF No. 473 ¶¶ 636–38. The motion is denied.

The Defendants make two arguments under the same umbrella. First, they argue that Delaware cannot assert claims for damages on behalf of indirect purchasers. ECF No. 602 at 2. Delaware responds that it is "not asserting claims for damages on behalf of 'indirect' purchasers." ECF No. 602-1 at 31. Thus, the motion to dismiss any damages claim by Delaware is denied as moot.

The Defendants also argue that Delaware may not assert claims for disgorgement because those claims are also precluded by *Illinois Brick*. ECF No. 602-2 at 30. The Defendants point to no authority barring the Delaware Attorney General from seeking disgorgement. To the contrary, the Delaware Antitrust Act permits Delaware courts to award "appropriate equitable relief" in actions brought by the Attorney General. 6 Del. Code § 2107. Delaware seeks unspecified equitable relief. ECF No. 473 ¶ 638. As noted above in the section on Colorado, it would be premature at the pleadings stage to determine whether awarding disgorged profits to persons who were injured only as indirect purchasers is truly equitable, in light of the duplicative recovery rationale of *Illinois Brick*. Accordingly, the motion to dismiss Delaware's claims is denied.

6. Florida[3]

The Defendants move to dismiss Florida's damages claims on behalf of indirect purchasers. In *Sandoz*, I denied a similar motion to dismiss Florida's claims on behalf of indirect purchasers.

---

[3] Florida has moved to dismiss all of its claims in this action, indicating that it has reached a settlement with a number of Defendants. ECF No. 729. Other States have filed objections to this motion. ECF No. 746.

*Sandoz, Inc.*, 2024 WL 4753308 at \*5.  I adopt the reasoning from that ruling here.  As it did in

*Sandoz*, Florida has clarified that it is has not asserted indirect purchaser claims under its antitrust

statute.  Rather, Florida has brought its state-law antitrust claims under the Florida Antitrust Act as

a direct purchaser by assignment.  *See* ECF No. 602-1 at 32–33.  Florida has also brought indirect

purchaser claims under the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201

*et seq.*, which, according to the Florida courts, affords relief to indirect purchasers.  *See Mack v.*

*Bristol-Myers Squibb Co.*, 673 So. 2d 100, 108 (Fla. Dist. Ct. App. 1996).  Accordingly, the motion

to dismiss Florida's claims is denied.

### 7. <u>Indiana</u>

Indiana seeks "relief, including but not limited to damages" and "civil penalties, injunctive

relief, other equitable relief (including but not limited to disgorgement), fees and costs and any

other remedy available" under the Indiana Antitrust Act, Ind. Code § 24-1-1-1 *et seq.*, and the

Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code § 24-5-0.5-1 *et seq.*  The

Defendants move to dismiss (1) Indiana's parens patriae claims for damages; (2) its claims for

monetary relief on behalf of indirect purchasers; and (3) all its claims under the IDCSA.  The

motion is granted in part and denied in part as follows.

First, the Defendants argue that Indiana's Attorney General does not have the authority to

bring parens patriae claims for damages.  Indiana argues that it has the general authority to bring

such claims, citing *Board of Commissioners of Howard City v. Kokomo City Plan Commission*,

330 N.E.2d 92, 101 (Ind. 1975) ("a state may act as parens patriae on behalf of its citizens").  That

case says nothing about whether Indiana may bring parens patriae claims for *damages*.  Indiana

also points to three sections of the state Antitrust Act, but each section is inapposite.[4]  First, Indiana

---

[4] Indiana law now provides for parens patriae damages in antitrust cases.  *See* Ind. Code § 24-1-2-

cites Section 24-1-1-5.1, which authorizes the Attorney General to bring actions "on behalf of the state or a political subdivision . . . for injuries or damages sustained directly or indirectly as a result of a violation of [the Antitrust Act]."  This section, however, does not provide for parens patriae damages, as parens patriae claims are brought not on behalf of the state itself but instead "on behalf of [the state's] citizens."  *See Kokomo City*, 330 N.E.2d at 101.  Next, Indiana cites Section 24-1-2-5, but this section outlines the Attorney General's duty to pursue injunctive relief and criminal prosecutions.  Indiana also cites Section 24-1-1-2, which empowers the Attorney General to enforce the antitrust law against both domestic and foreign corporations.  Neither of these sections provide for parens patriae damages.  Indiana thus cannot bring these claims under the Indiana Antitrust Act.  The IDCSA does not permit the Attorney General to bring parens patriae claims for damages, either, as I found in *Sandoz Inc.*, 2024 WL 4753308 at *5–*6.[5]  I adopt the same reasoning here.  Accordingly, the motion to dismiss Indiana's parens patriae claims for damages is granted.

Next, the Defendants argue that Indiana law does not permit claims for monetary relief on behalf of indirect purchasers other than governmental entities.  ECF No. 602 at 26 n.24.  Indiana clarified that it does not seek indirect-purchaser damages for individuals.  *See* ECF No. 602-1 at 33.  The motion to dismiss is denied as moot as to this issue.

Finally, the Defendants argue that Indiana has failed to state a claim under the IDCSA because it does "not prohibit the antitrust conduct Plaintiffs allege."  ECF 602 at 27.  As I found in *Sandoz*, the IDCSA's catch-all provision, Ind. Code § 24-5-0.5-3(a), as well as the statute's

---

5.1, eff. July 1, 2023.  In *Sandoz*, Indiana conceded that this amendment is not retroactive, *see Sandoz Inc.*, 2024 WL 4753308, at *6 n.4, and I do not address it here.

[5] The IDCSA does, however, permit restitution that amounts to treble damages, *see* Ind. Code. § 24-5-0.5-4(c)(5), so this distinction may turn out to be insignificant in this case.  *See Sandoz, Inc.*, 2024 WL 4753308 at *6 n.3.

remedial purpose, and the requirement that it be "liberally construed," *id.* § 24-5-0.5-1, can encompass anticompetitive conduct. *See Sandoz Inc.*, 2024 WL 4753308, at *6–*7. I adopt the same reasoning here. In the absence of clear authority from Indiana's highest court demonstrating that Indiana's consumer protection claim is foreclosed by the statute, I decline to dismiss Indiana's consumer protection claims.

        8.  <u>Kentucky</u>

The Defendants move to dismiss Kentucky's claims for monetary relief under its consumer protection statute, Ky. Stat. Ann. § 367.200. The motion is denied.

Defendants argue that the Kentucky Attorney General has no authority to seek any type of monetary relief in consumer protection actions. ECF No. 602 at 26–27. At least one Kentucky court, however, has found that the consumer protection statute "vest[s] the Attorney General with the authority to seek restitution on behalf of defrauded consumers." *Com. ex rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 706 (Ky. Ct. App. 1981); *see also Sandoz Inc.*, 2024 WL 4753308 at *8 (citing *Ky. Laborers Dist. Council Health & Welfare Tr. Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 773 (W.D. Ky. 1998) (reasoning that Ky. Rev. Stat. § 367.200 intended to outline relief in parens patriae actions brought by attorney general); *Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016) (same)). The Defendants further argue that Kentucky may only seek civil penalties for willful violations of its consumer protection act, and only after a successful claim for injunctive relief. *See* ECF No. 602-2 at 31 n.23. But Kentucky alleges willful violations and seeks a permanent injunction. ECF No. 473 ¶¶ 686–87. The Defendants point to no authority barring the Kentucky Attorney General from seeking disgorgement. Because Kentucky's claims for civil penalties, restitution, and disgorgement are not clearly foreclosed under state law, the motion to dismiss is denied.

Defendants also appear to indicate that Kentucky is seeking monetary damages outside of restitution, disgorgement, and civil penalties. *See* ECF No. 602 at 2, 602-2 at 30–31. Kentucky makes no such demand in the complaint. *See* ECF No. 473 ¶¶ 687, 691. Thus, to the extent the motion seeks to dismiss Kentucky's claims for damages, the motion is denied as moot.

9. <u>Maine</u>

Maine seeks relief under the Maine Monopolies and Profiteering Law ("MMPL"), Me. Stat. tit. 10, § 1101 *et seq.*, and the Maine Unfair Trade Practices Act ("MUTPA"), Me. Stat. tit. 5, § 207. The Defendants move to dismiss (1) Maine's claims under MUTPA; and (2) *parens patriae* claims for damages under either statute. The motion is granted in part and denied in part.

MUTPA, which is intended to reflect the Federal Trade Commission Act, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade." Me. Rev. Stat. tit. 5 § 207. Under MUTPA, "[a] business practice is 'unfair' if the injury it produces is (1) 'substantial,' (2) not 'outweighed by any countervailing benefits to consumers or competition that the practice produces,' and (3) not reasonably avoidable by consumers." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584 (M.D. Pa. 2009) (quoting *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998)). The Maine Supreme Court has held that, "[i]n pricing cases under the Act[,] the inquiry is whether the price has the effect of deceiving the consumer, or inducing her to purchase something she would not otherwise purchase." *Tungate*, 714 A.2d at 797. But where "the purported conduct resulted in higher prices, the Maine Unfair Trade Practices Act provides no such relief, since higher prices do not induce a consumer to make purchases." *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 396 (D.N.J. 2018); *see In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1159 (N.D. Cal. 2009)

17

("Logically, charging higher prices would not deceive or induce a consumer to purchase an item he or she would not otherwise purchase").

The parties dispute whether price-fixing claims under MUTPA must show that consumers were deceived or induced to buy something they would not otherwise purchase. The States argue that *Tungate*'s consumer inducement criterion is not pertinent here because the claims here allege "unfair methods of competition," rather than "unfair or deceptive acts." *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 187 n.40 (D. Me. 2004). Although I find it to be a close call, I agree with the multitude of District Courts that have found that *Tungate* did not distinguish between "unfair methods of competition" and "unfair or deceptive acts." S*ee, e.g.*, *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 584–85 & 585 n.59; *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d at 1159; *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 787 (N.D. Ohio 2011). In pricing cases where the alleged conduct results in higher prices to consumers, MUTPA provides no relief regardless of whether the underlying conduct is alleged to be an unfair method of competition or an unfair or deceptive act. Removing the *Tungate* consumer inducement criterion for conduct comprising an unfair method of competition would allow any claim alleging anticompetitive conduct to be brought under MUTPA as well as the state's antitrust law, thereby swallowing the latter. As the alleged conduct here resulted in higher prices to consumers, I find Maine does not state a claim under MUTPA. The Defendants' motion to dismiss Maine's claims under MUTPA is granted.

The Defendants also argue that the MMPL does not provide Maine the authority to seek monetary relief as parens patriae. ECF No. 602 at 23 n.7. As I found in *Sandoz*, Maine's claim for damages as parens patriae is not clearly barred under state law. *Sandoz, Inc.*, 2024 WL 4753308 at *8 (citing *F.T.C. v. Mylan Laby's, Inc.*, 99 F. Supp. 2d 1, 7 (D.D.C. 1999) ("[T]he powers of the

Maine Attorney General [under state law] are sufficiently broad to encompass a parens patriae action on behalf of indirect purchasers.")).  As such, the motion to dismiss Maine's claims for monetary relief as parens patriae under the MMPL is denied.

        10. <u>Michigan</u>

The Defendants move to dismiss Michigan's claims under the Michigan Consumer Protection Act ("MICPA"), Mich. Comp. Laws § 445.901 et seq.  The statute authorizes "[t]he attorney general [to] bring a class action on behalf of persons residing in or injured in this state for the actual damages caused by . . . [a] method, act, or practice in trade or commerce declared by a circuit court of appeals or the supreme court of the United States to be an unfair or deceptive act or practice within the meaning of section 5(a)(1) of the [F]ederal [T]rade [C]ommission [A]ct." Mich. Comp. Laws § 445.910(1).  The Defendants argue that this provision does not apply "[b]ecause this is not a class action."  ECF No. 602-2 at 34.

In *Sandoz*, I found that class actions under § 445.910 are distinct from traditional Rule 23 class actions and that any failure to comport with the requirements of Rule 23 does not bar Michigan's MICPA claims.  *Sandoz, Inc.*, 2024 WL 4753308, at *9 (citing *Nessel ex rel. Michigan v. Amerigas Partners, L.P.*, 421 F. Supp. 3d 507, 510–13 (E.D. Mich. 2019), *aff'd,* 954 F.3d 831 (6th Cir. 2020) (explaining that Rule 23, Michigan class action rule, and CAFA did not apply to actions brought by the Michigan Attorney General under § 445.910)).  In that case, I declined to dismiss price-fixing claims because the statute permits the Attorney General to bring claims based on acts considered unfair or deceptive within the meaning of the FTC Act.  *Id.* (citing *United States v. St. Regis Paper Co.*, 285 F.2d 607, 610 n.4 (2d Cir. 1960) ("[A]ny violation of the Sherman and Clayton Acts [is] also a violation of § 5 of the Federal Trade Commission Act.").  I adopt the same

reasoning here.  Because Michigan's price-fixing claims fall squarely under the umbrella of the FTC Act, I decline to dismiss Michigan's consumer protection claims.

I note, however, that Michigan subsequently indicated to the Defendants through a supplementary interrogatory response that in all three parallel actions—including this case—it was limiting its claims to seeking civil penalties, disgorgement, and fees and costs in an enforcement capacity on behalf of the public interest, and not damages or *parens patriae* relief.  *See Sandoz, Inc.*, 2024 WL 4753308 at *10; No. 20cv802, ECF No. 367 at 132.  In *Sandoz*, Michigan reported to the Court that it was not pursuing any claims under MICPA.  No. 20cv802, ECF No. 486. Regardless of whether Michigan will still pursue some claims under MICPA in this action, Michigan is precluded from revitalizing claims or seeking relief outside of those listed in the supplementary interrogatory response.

### 11. <u>Missouri</u>

Missouri seeks "an injunction, disgorgement, civil penalties and any other relief available" under the Missouri Antitrust Law ("Antitrust Law"), Missouri Rev. Stat. §§ 416.011 *et seq.*, and Missouri's Merchandising Practices Act ("MMPA"), Missouri Rev. Stat. § 407.010 *et seq.*  ECF No. 473 ¶¶ 731–33.  The Defendants move to dismiss Missouri's claims for (1) parens patriae damages, (2) monetary relief on behalf of indirect purchasers, and (3) restitution.  The motion is granted in part and denied in part as follows.

First, the Defendants seek to dismiss Missouri's parens patriae claims for damages under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010 *et seq.*[6]  As I

---

[6] The Defendants do not challenge Missouri's *parens patriae* claims for damages under the Missouri Antitrust Law, Mo. Rev. Stat.§§ 416.011 *et seq.  See* ECF 602 at 22–23 & n.8 (identifying only the MMPA as failing to grant Missouri the right to seek *parens patriae* damages).  Regardless, the Attorney General has authority to bring *parens patriae* claims for damages to enforce the antitrust laws.  *See Clark Oil & Ref. Corp. v. Ashcroft*, 639 S.W.2d 594, 597 (Mo. 1982) ("By

noted in *Sandoz*, the MMPA provides for the Attorney General to obtain "an order of restitution," but it does not expressly provide for damages. *Sandoz, Inc.*, 2024 WL 4753308 at *12–*13; *see* Mo. Rev. Stat. § 407.100(4). As such, I find that the MMPA does not provide for claims for damages. While I will dismiss any claim for damages under the MMPA, Missouri will still be able to recover claims for restitution on behalf of Missouri consumers under § 407.100(4) and civil penalties under § 407.100(6). The Defendants also do not specifically argue that the Attorney General may not seek disgorgement. As such relief is not clearly foreclosed by Missouri law, I decline to dismiss any claims for disgorgement. *See Sandoz, Inc.*, 2024 WL 4753308 at *13.

Second, the Defendants seek to dismiss Missouri's claims for any type of monetary recovery on behalf of indirect purchasers because such claims are precluded by *Illinois Brick*. ECF No. 602 at 26 n.26. Missouri clarified that it does not seek monetary relief for indirect purchasers under its antitrust law, ECF No. 602-1 at 34. Furthermore, as I found in *Sandoz*, the *Illinois Brick* rule does not apply to claims under the MMPA. *Sandoz, Inc.*, 2024 WL 4753308 at *13. The motion as to this issue is thus denied.

Finally, the Defendants argue that Missouri's claims for restitution must also be dismissed because Missouri has not pleaded "that the funds . . . are traceable and readily identifiable." ECF 602-2 at 29. Defendants' arguments face the same problems as they did against Alaska. The Defendants cite no Missouri authority requiring the state to specifically plead that the funds it seeks are "traceable" or "readily identifiable." *See* ECF 602-2 at 29–30. The Complaint states that Missouri seeks relief under the Missouri Antitrust Law and the MMPA, which provide for

---

instituting the *parens patriae* damage actions, the attorney general has carried out his statutory and common law duty to enforce public rights and protect citizen consumers against violation of the antitrust laws."). Thus, to the extent the motion seeks to dismiss Missouri's claim for damages under its antitrust law, the motion is denied.

restitution.  *See* ECF No. 473 ¶ 732.  This is sufficient to put the Defendants on notice of the type of relief Missouri seeks.  The motion to dismiss Missouri's claims for restitution is thus denied.

12. New Jersey

New Jersey seeks treble damages for New Jersey consumers and state agencies who were direct purchasers of the drugs at issue under the New Jersey Antitrust Act ("NJATA"), N.J.S.A. 56:9-1 et seq., as well as injunctive relief, disgorgement, restitution, and civil penalties under both the NJATA and the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 et seq.  The Defendants move to dismiss (1) New Jersey's *parens patriae* claims for damages; and (2) its claims for monetary relief on behalf of indirect purchasers.  The motion to dismiss is granted in part and denied in part as follows.

The Defendants first contend that New Jersey's Attorney General does not have the authority to bring parens patriae claims for damages under the NJATA.  I agree.  The NJATA authorizes the Attorney General to recover damages "on behalf of the State or any of its political subdivisions or public agencies," but it is silent as to the State's ability to being claims on behalf of individual residents as parens patriae.  N.J.S.A. § 56:9-12.  New Jersey argues that the Attorney General has general parens patriae authority, citing *In re D.C.*, 679 A.2d 634, 644 (N.J. 1995).  But in this case, the New Jersey Supreme Court noted that "the State's parens patriae powers are not absolute.  The State's common-law power to function as protector of the public interest is subject to either enlargement or abridgment by legislative authority."  *Id.* at 643 (internal quotations omitted).  In the absence of evidence that the legislature intended to include this general authority in the antitrust statute, I must presume that the legislature abridged the Attorney General's parens patriae powers when it limited the authorization in § 56:9-12 to claims on behalf of the State and its agencies.  Underscoring this finding is the fact that New Jersey cites to no decision in which a

court has found that this general parens patriae authority supports a claim for damages under the NJATA or any other state statute.

New Jersey's alternative argument—that the NJATA's uniform construction provision provides the Attorney General's parens patriae authority to seek damages—does not get New Jersey any closer to stating a claim.  N.J.S.A. § 56:9-18 "requires State courts to consult judicial interpretations of the Sherman Act" to establish uniformity "in the manner in which the Act is applied to the conduct of parties." *Boardwalk Props., Inc. v. BPHC Acquisition, Inc.*, 602 A.2d 733, 740 (N.J. Super. Ct. App. Div. 1991).  The Sherman Act permits state attorneys general to bring parens patriae claims for damages under the federal antitrust act.  15 U.S.C. § 15c(a)(1).  It does not require states to authorize similar claims under a state antitrust law that does not otherwise provide for them.  With no statutory authority for New Jersey's parens patriae damages claims, I grant the Defendants' motion to dismiss as to this issue.

The Defendants next seek to dismiss New Jersey's claims for monetary relief on behalf of indirect purchasers.  Although New Jersey has clarified that it is not seeking damages for indirect purchasers, ECF No. 602-1 at 21, the Defendants also argue that *Illinois Brick* bars the state from seeking disgorgement.  ECF No. 602-2 at 30.  As I found in *Sandoz*, the NJATA authorizes disgorgement only in specific proceedings not present here.  *See Sandoz, Inc.*, 2024 WL 4753308, at *15–*16 (analyzing N.J.S.A. 56:9-7).  Moreover, "allegations of antitrust violations, such as price-fixing, do not state a claim under [the NJCFA.]" *Id.* at *16 (citing *Sickles v. Cabot Corp.*, 877 A.2d 267, 276–77 (N.J. App. Div. 2005).  Adopting the same reasoning here, I find that the States fail to state a claim for disgorgement.  It is not clear, however, and the Defendants do not argue, that there is a basis to bar the New Jersey Attorney General from seeking other types of monetary relief, including restitution and civil penalties, under these statues.  It remains to be seen

whether granting that relief would be equitable in light of the policies animating the rule of *Illinois Brick*. I do not dismiss any such claim now.

For these reasons, the motion to dismiss New Jersey's claims is granted only insofar as New Jersey seeks (1) parens patriae damages and (2) disgorgement. The motion is denied as to all other types of relief.

13. <u>New Mexico</u>[7]

The Defendants move to dismiss New Mexico's *parens patriae* claim for monetary relief under its antitrust and consumer protection laws. The motion is granted in part and denied in part.

First, Defendants argue that New Mexico may not seek damages as *parens patriae* under either the New Mexico Antitrust Act ("NMATA"), N.M. Stat. Ann. § 57-1-1 *et seq.*, or the New Mexico Unfair Practices Act ("NMUPA"), N.M. Stat. Ann. § 57-12-1 *et seq.* As I found in *Sandoz*, *see* 2024 WL 4753308, at *16, the NMATA does not provide the Attorney General a grant of authority to pursue parens patriae damages claims. *See* N.M. Stat. Ann. § 57-1-8 (noting Attorney General may bring action to "enjoin, restrain and prevent the doing" of an antitrust violation); *see also Infineon Techs.*, 531 F. Supp. 2d at 1168 (noting "absence of any authority specifically indicating or implying that the New Mexico Attorney General's suit for damages may go forward in a parens patriae capacity on behalf of natural persons"). Similarly, the NMUPA provides only for *parens patriae* actions seeking injunctive relief and restitution, not damages. *See* N.M. Stat. Ann. § 57-12-8.[8] The motion to dismiss New Mexico's claims for damages under either the NMATA or the NMUPA is granted.

---

[7] New Mexico voluntarily dismissed its claims against Defendants Teva Pharmaceuticals USA, Inc., Actavis Holdco US Inc., and Actavis Pharma, Inc. ECF Nos. 566, 569. The motion to dismiss as to those defendants is denied as moot.
[8] The NMUPA also authorizes the attorney general to petition for civil penalties for willful violations. N.M. Stat. Ann. § 57-12-11.

The Defendants next argue that New Mexico's claims for restitution must also be dismissed because New Mexico has not pleaded "that the funds . . . are traceable and readily identifiable." ECF No. 602-2 at 29.  Again, Defendants' arguments face the same problems as they did against Alaska.  The Defendants cite no New Mexico authority requiring the state to specifically plead that the funds it seeks are "traceable" or "readily identifiable."  *See* ECF No. 602-2 at 29–30.  The complaint states that New Mexico seeks relief under NMUPA, which provides for restitution.  ECF No. 473 ¶ 768.  This is sufficient to put the Defendants on notice of the type of relief New Mexico seeks.  The motion to dismiss New Mexico's claims for restitution is thus denied.

14. <u>New York</u>

The Defendants move to dismiss New York's claims under both the Donnelly Act (N.Y. Gen. Bus. Law §§ 340-342c) and New York Executive Law § 63(12), to the extent that they are brought (1) on behalf of its government entities; and (2) for monetary relief as parens patriae.  The motion is granted in part and denied in part as follows.

Defendants argue that New York has no standing to sue on behalf of unnamed governmental entities because the Donnelly Act requires damages claims brought on behalf of New York governmental entities to be asserted upon the entities' request.  ECF No. 602 at 20 n.3.  As multiple federal courts have found, the Donnelly Act "contemplates that these government entities must be specifically identified."  *See, e.g.*, *DRAM*, 2007 WL 2517851, at *7; *New York ex rel. Schneiderman v. Intel Corp.*, 827 F. Supp. 2d 369, 375 (D. Del. 2011); *New York v. Cedar Park Concrete Corp.*, 665 F. Supp. 238, 242 (S.D.N.Y. 1987).  In *DRAM*, the Northern District of California dismissed New York's claims under both Executive Law § 63 and § 342-b of the Donnelly Act because "the government entities on whose behalf plaintiff sue[d were] not identified in the complaint," and neither statute "vest[s] the State Attorney General with authority to bring

representative claims on behalf of unnamed government entities." 2007 WL 2517851, at *7–*8, *12. In *Sandoz*, I declined to follow *DRAM*'s holding, but only insofar as it extended to § 63 of the Executive Law. *Sandoz, Inc.*, 2024 WL 4753308, at *18 (collecting cases and noting that "[b]oth the statutory text and New York caselaw regarding § 63 indicate that the Attorney General has broad authority to seek relief on behalf of *all victims* of fraudulent or illegal acts under § 63(12)."). Thus, as I did in *Sandoz*, I find that New York has established standing to bring claims under § 63(12), including on behalf of unnamed governmental entities.

I agree with the holding in *DRAM*, however, as it applies to the Donnelly Act.[9]  "[T]he Donnelly Act contemplates that these government entities must be specifically identified, and it must affirmatively be demonstrated that they have requested that the Attorney General bring suit on their behalf." *DRAM*, 2007 WL 2517851, at *7. New York has not identified or affirmatively demonstrated a request by a government entity on its behalf. Thus, I dismiss New York's claims under the Donnelly Act on behalf of government entities.

Second, Defendants argue that New York has no authority to seek damages as parens patriae. In *Sandoz*, I found that New York had stated a valid claim for damages as parens patriae under the Executive Law.[10] *Sandoz, Inc.*, 2024 WL 4753308, at *18 (citing *Intel Corp.*, 2011 WL 6100446, at *6 ("[T]he Executive Law permits New York to recover compensatory damages for

---

[9] In *Sandoz*, I noted that New York appeared to concede that it cannot bring claims on behalf of unidentified government entities under § 342-b of the Donnelly Act, and as such I did not decide whether to follow *DRAM* as it applies to the Donnelly Act. *See* 2024 WL 4753308, at *17. New York does not so concede in this action, but rather argues that information about any government entities' requests is not required by the Federal Rules of Procedure and, alternatively, that the Attorney General's authority under the Executive Law does not require a request. ECF No. 602-1 at 14–15. I reject these arguments because I find the *DRAM* decision was correct as it applies to the Donnelly Act.

[10] Again, in *Sandoz* I found that "New York does not dispute that its claims for damages under § 342 of the Donnelly Act . . . are foreclosed." 2024 WL 4753308, at *18. In this action, however, New York does argue that it may bring parens patriae damages claims under the Donnelly Act.

harm to individuals arising from repeated violations of the Donnelly Act."). Here, the Defendants do not specifically argue that the Attorney General may not seek damages as parens patriae under the Executive Law but focus instead on the availability of such relief under the Donnelly Act. *See* ECF No. 602-2 at 19.

The Donnelly Act contains explicit language authorizing the attorney general to bring *parens patriae* claims for injunctive relief or civil penalties, but it does not similarly mention claims for damages. *See* N.Y. Gen. Bus. Law § 34. New York argues the Attorney General's authority to bring such claims is inherent, relying on *People v. Liberty Mutual Insurance Co.*, in which a New York Appellate Court held that the Attorney General stated a valid claim for treble damages under the Donnelly Act because "the State has inherent authority to act in a parens patriae capacity when it suffers an injury to a quasi-sovereign interest." 52 A.D.3d 378, 379 (N.Y. App. 2008). Since *Liberty Mutual* was decided, however, federal courts have "explicitly rejected" its brief reasoning because it did "not discuss what relief would be available in a parens patriae damages suit on behalf of individuals." *Intel Corp.*, 2011 WL 6100446, at *4 (D. Del. Dec. 7, 2011) (quoting *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 11-00711 SI, 2011 WL 3475408, at *6 (N.D. Cal. Aug. 2011), *upheld on reconsideration in relevant part*, No. C 11-00711 SI, 2011 WL 5573930 (N.D. Cal. Nov. 16, 2011). Instead, these courts adhered to the reasoning in *DRAM*, which held that the legislature deliberately decided not to include language authorizing damages suits similar to the Act's provisions for injunctive relief and civil penalties. I agree with these later decisions. New York's ability to seek damages under the Donnelly Act is "unambiguously restricted . . . to actions on behalf of any political subdivision or public authority of the state." *Flat Panel*, 2011 WL 5573930, at *1 (quoting *DRAM,* 2007 WL 2517851, at *6). In the absence of clear statutory language or caselaw expanding the scope of the Donnelly Act to

include parens patriae damages claims, I find that such relief is not available to the Attorney General here. For these reasons, I find that New York has failed to state a claim for damages as parens patriae under the Donnelly Act.

In sum, the motion to dismiss is granted only insofar as New York seeks to bring a claim under the Donnelly Act for (1) any relief on behalf of governmental entities, and (2) damages as parens patriae. The motion to dismiss is denied as to all other relief sought under the Donnelly Act. I also deny the Defendants' motion to dismiss New York's claims under § 63 of the Executive Law.

### 15. North Carolina

The Defendants move to dismiss North Carolina's parens patriae claims for damages under the North Carolina Unfair and Deceptive Trade Practices Act (NCUTPA), N.C. Gen. Stat. § 75-1 et seq. The motion is granted.

The NCUTPA expressly authorizes the Attorney General to seek restitution and civil penalties for antitrust violations, but it is silent as to the Attorney General's ability to seek damages. *See* N.C. Gen. Stat. §§ 75-15.1–.2. The NCUTPA specifically provides for damages only to injured "person[s], firm[s], or corporation[s]." *Id.* § 75-16. A North Carolina statute broadly defines "person" as encompassing "bodies politic and corporate, as well as . . . individuals, unless the context clearly shows to the contrary." N.C. Gen. Stat. 12-3(6). North Carolina courts long ago decided that "[t]here is no reason why the State as a consumer cannot take advantage of G.S. 75-16 if it is the victim of an unfair or deceptive trade practice." *F. Ray Moore Oil Co. v. State*, 341 S.E.2d 371, 374 (N.C. App. 1986). The context here does not clearly show that the state loses its status as a "person" authorized to bring damages claims under NCUTPA when it sues as parens patriae—on behalf of consumers—rather than as a consumer itself. Because North Carolina's

parens patriae claims for damages are not clearly barred under state law, the motion to dismiss is denied.[11]

### 16. North Dakota

The Defendants seek to dismiss North Dakota's parens patriae claims for damages. ECF No. 602 at 2, 23. North Dakota clarified that it is not seeking damages as parens patriae. ECF No. 602-1 at 25. The Defendants do not dispute that North Dakota may seek as parens patriae other types of monetary relief that may be available under North Dakota's Uniform State Antitrust Act, N.D. Cent. Code § 51-08.1-01 et seq., or the North Dakota Consumer Fraud Law, N.D. Cent. Code § 51-15-01 et seq. The motion to dismiss North Dakota's claims is thus denied as moot.

### 17. Ohio

The Defendants seek to dismiss Ohio's claims for monetary relief on behalf of indirect purchasers. ECF Nos. 602 at 25, 602-2 at 30. Ohio clarified that it does not seek damages for indirect purchasers, but it does not address its claims for disgorgement under the state's antitrust act, Ohio Rev. Code § 109.81. *See* ECF No. 602-1 at 31. As I found in *Sandoz*, the statute "does not on its face prevent Ohio from seeking disgorgement that ends up being awarded to persons whose injuries were incurred as indirect purchasers." *Sandoz, Inc.*, 2024 WL 4753308, at *19. I adopt the same reasoning here. I cannot determine at the pleadings stage whether the duplicative recovery rationale of *Illinois Brick* bars claims for monetary equitable relief in this case. Because it is not clear that there is a basis to bar the Ohio Attorney General from seeking disgorgement, the Defendants' motion to dismiss Ohio's claims is denied.

---

[11] In *Sandoz*, I granted the motion to dismiss North Carolina's claims for parens patriae damages because it "stated clearly that it is not seeking damages in this case, either directly or as parens patriae." *See Sandoz, Inc.*, 2024 WL 4753308, at *18 (internal quotations omitted). North Carolina has not made a similar statement in this action.

18. Oklahoma

The Defendants seek to dismiss Oklahoma's claims for monetary relief on behalf of indirect purchasers. ECF Nos. 602 at 26, 602-2 at 30. Oklahoma clarified that it does not seek damages for indirect purchasers but maintains that the Oklahoma Antitrust Reform Act ("OARA"), Okla. Stat. tit. 79 § 205, provides for other types of monetary relief, including disgorgement. ECF No. 602-1 at 30 & n.17. As I found in *Sandoz*, it is hard to see why the rule of *Illinois Brick*, which included no discussion of equitable relief, should definitively resolve the separate question whether a state attorney general may seek the equitable remedy of disgorgement. *Sandoz, Inc.*, 2024 WL 4753308, at *21. I adopt the same reasoning here. I cannot determine at the pleadings stage whether the duplicative recovery rationale of *Illinois Brick* bars claims for monetary equitable relief in this case. *Id.* Accordingly, the motion to dismiss Oklahoma's claims is denied.

19. Pennsylvania

The Defendants seek to dismiss Pennsylvania's parens patriae claims for damages. ECF No. 602 at 2, 23. Pennsylvania clarified that it is not seeking damages as parens patriae. ECF No. 602-1 at 25. The Defendants do not dispute that Pennsylvania may seek other types of monetary relief, including disgorgement and restitution, as parens patriae under Pennsylvania antitrust common law and Pennsylvania Unfair Trade Practices and Consumer Protection Law. *Id.* at 26 (citing 73 P.S. § 201-4.1). The motion to dismiss Pennsylvania's claims is thus denied as moot.

20. Puerto Rico

The Defendants move to dismiss Puerto Rico's claims for damages on behalf of indirect purchasers under the Puerto Rico Antitrust Act ("PRAA"). Puerto Rico has not adopted a statute repealing *Illinois Brick*, i.e., it has not expressly allowed indirect purchasers to sue for damages. And as I found in *Sandoz*, Puerto Rico's territorial courts have neither addressed the issue nor

"provide[d] any guidance as to what Puerto Rico's highest court would do if confronted with the question whether indirect purchasers may recover damages under the territory's antitrust law." *Sandoz, Inc.*, 2024 WL 4753308, at \*24–\*25. As such, I found that Puerto Rico has not acted to effectively repeal the *Illinois Brick* rule. *Id.* Adopting the same reasoning here, I find that *Illinois Brick* bars Puerto Rico's claims for damages on behalf of indirect purchasers, and I dismiss those claims.

As in *Sandoz*, however, to the extent Puerto Rico seeks other "appropriate monetary . . . relief" on behalf of indirect purchasers, ECF No. 473 ¶ 845, it remains to be seen whether granting that relief would be equitable in light of the policies animating the rule of *Illinois Brick*. I do not dismiss any such claim now.

21. <u>Rhode Island</u>

The Defendants move to dismiss Rhode Island's claims (1) for monetary relief on behalf of indirect purchasers and (2) as parens patriae under the Rhode Island Deceptive Trade Practices Act ("RIDTPA"), R.I. Gen. Laws § 6-13.1-1 et seq.[12] ECF No. 473 ¶¶ 846–52. The motion is granted in part and denied in part.

The Defendants argue that Rhode Island does not have standing under the RIAA to seek monetary relief for indirect-purchaser antitrust violations occurring before July 15, 2013, the date the state legislature amended the RIAA to include an *Illinois Brick*-repealer provision, R.I. Gen. Laws § 6-36-7(d). ECF 602 at 26 n.31. The Supreme Court of Rhode Island previously recognized, however, that the RIAA "reserves to the Attorney General as parens patriae, the right

---

[12] In their reply brief, the Defendants withdrew their arguments in support of their motion to dismiss Rhode Island's parens patriae claims under the Rhode Island Antitrust Act ("RIAA"), R.I. Gen. Laws § 6-36-1 et seq. ECF No. 602-2 at 14 n.4. As such, the motion to dismiss Rhode Island's parens patriae claims under the RIAA is denied.

to sue on behalf of indirect purchasers for monetary damages." *Siena v. Microsoft Corp.*, 796 A.2d 461, 464–65 (R.I. 2002) (citing R.I. Gen. Laws § 6-36-12). Thus, even though the MDL court previously found that End-Payer Plaintiffs and the Indirect-Reseller Plaintiffs could not seek claims under the RIAA, *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 839 (E.D. Pa. 2019), the same standard does not apply to claims brought by the Attorney General as parens patriae. The motion is denied as to this issue.

The Defendants also argue that Rhode Island's consumer protection claims for damages on behalf of indirect purchasers under the RIDTPA should be dismissed because the RIDTPA contemplates only restitution, not damages. ECF 602-2 at 28–30 & 28 n.20. I agree. Section 6-13.1-5(c) provides that in cases brought by the Attorney General, "the court may make any additional orders or judgments that may be necessary *to restore* to any person in interest any moneys or property, real or personal, that may have been acquired by means of any practice in this chapter declared to be unlawful" (emphasis added). This language contemplates restitution, not damages.[13] It also stands in contrast to the RIDTPA provision for private actions, which explicitly permits actions for "actual damages." R.I. Gen. Laws § 6–13.1–5.2(a). The motion to dismiss damages claims on behalf of indirect purchasers under the RIDTPA is therefore granted.

The Defendants also argue that Rhode Island's claims for restitution under the RIDTPA must be dismissed because Rhode Island has not pled "that the funds . . . are traceable and readily

---

[13] In the time since this action began, and since this motion was filed, the Rhode Island legislature has amended this section of the RIDTPA to add language permitting the Attorney General "to seek any other relief that may be appropriate." R.I. Gen. Laws § 6-13.1-5(a). This amendment, however, took effect upon its passage on July 7, 2021. 2021 R.I. Laws Ch. 21-206 0167 § 2 (21-S 684); *see also State v. Jennings*, 944 A.2d 171, 173 (R.I. 2008) ("statutes and their amendments are construed to operate prospectively unless a specific contrary intent is expressed by the Legislature, or retroactivity must necessarily be inferred from the language employed by the law makers."). I find the amendment is prospective, not retroactive, and therefore not applicable in this case.

identifiable." ECF 602-2 at 29. Defendants' arguments face the same problems as they did against Alaska. The Defendants cite no Rhode Island authority requiring the state to specifically plead that the funds it seeks are "traceable" or "readily identifiable." *See* ECF 602-2 at 29–30. Indeed, in their other arguments, the Defendants point to R.I. Gen. Laws § 6-13.1-5(c), which confirms Rhode Island's ability to seek restitution for violations of the RIDTPA. *See* ECF 602-2 at 30 n.21. The motion to dismiss Rhode Island's claims for restitution under the RIDTPA is denied.

In sum, the motion to dismiss Rhode Island's claims is granted only as to Rhode Island's claims for damages on behalf of indirect purchasers under the RIDTPA. The motion to dismiss is denied as to all other forms of relief available under the RIDPTA and as to all types of relief available under the RIAA.

22. South Carolina[14]

The Defendants seek to dismiss South Carolina's claims for monetary relief under the state's consumer protection statue, S.C. Code Ann. § 39-5-20 *et seq.*, arguing that its remedies are limited to injunctive relief. ECF Nos. 602 at 26–27; 602-2 at 30–32. On the face of the Complaint, South Carolina does not seek damages, but only restitution, injunctive relief, and civil penalties. *See* ECF No. 473 ¶¶ 854–55. The statute plainly provides for these remedies. *See* S.C. Code Ann. §§ 39-5-50(a)–(b); 39-5-110(a). The South Carolina Supreme Court has held that restitution is an equitable remedy that differs from damages. *Verenes v. Alvanos*, 690 S.E.2d 771, 774 (S.C. 2010) ("Restitution and disgorgement are equitable remedies. . . . [T]he remedy sought by Respondent is more akin to restitution than money damages."); *see also In re Lehman Bros. Holdings Inc.*, 855 F.3d 459, 480 n.29 (2d Cir. 2017) ("Restitution . . . provides for a measure of recovery that is

---

[14] South Carolina has filed a Notice of Settlement but has not moved to dismiss its claims. *See* ECF No. 783.

analytically distinct from that of damages."). Thus, to the extent the Defendants seek to dismiss South Carolina's claims for damages, the motion is denied as moot. To the extent they seek to dismiss South Carolina's claims for restitution, injunctive relief, and civil penalties, the motion is denied.

      23. <u>Tennessee</u>

      The Defendants move to dismiss Tennessee's parens patriae claim for monetary relief under its antitrust law, the Tennessee Trade Practice Act ("TTPA"), Tenn. Code Ann. §§ 47-25-101 et seq. In *Sandoz*, I denied a similar motion to dismiss Tennessee's parens patriae claims for monetary relief. No. 20cv802, ECF No. 645. I adopt that ruling in full here. The Tennessee legislature amended the TTPA in 2024 to permit the Attorney General to "bring an action in any court of competent jurisdiction in the name of this state, any of this state's political subdivisions or agencies, or as parens patriae on behalf of natural persons residing in this state" for injunctive relief, equitable relief, and monetary damages. Tenn. Ann. Code § 47-25-106(b) (2024). These cases, however, predate the amendment, and I found in *Sandoz* that the amended TTPA did not apply retroactively. No. 20cv802, ECF No. 645 at 5–6. I also determined that Tennessee's ability to bring its claims as parens patriae were not clearly foreclosed under the operative version of the TTPA when the case was filed.[15] *Id.* at 6–7. Accordingly, I declined to dismiss the claims in *Sandoz*. The same result is appropriate here. The motion to dismiss Tennessee's state law parens patriae claims for monetary relief is denied.

---

[15] Specifically, I found that prior district court cases that analyzed the Attorney General's ability to bring cases as parens patriae under the TTPA were split, and that Tennessee state courts had never followed the only Tennessee state court opinion to speak to the matter in the forty years since it was published. No. 20cv802, ECF No. 645, at 6–7.

24. Virginia

The Defendants seek to dismiss Virginia's claims for monetary relief on behalf of indirect purchasers. ECF Nos. 602 at 26, 602-2 at 30. Virginia clarified that it does not seek damages for indirect purchasers, but it does not address its claims for disgorgement or other types of monetary relief under the under the Virginia Antitrust Act, Virginia Code 59.1 et seq. *See* ECF No. 473 ¶ 872; ECF No. 602-1 at 31. As I found in *Sandoz*, the Virginia Antirust Act permits the Attorney General to bring actions on behalf of the state for "injunctive relief, disgorgement, and other forms of equitable monetary relief as the court deems appropriate, and civil penalties for violations." Virginia Code 59.1-9.15(A); *see Sandoz, Inc.*, 2024 WL 4753308, at *29. Because it is not clear that there is a basis to bar the Virginia Attorney General from seeking disgorgement, the Defendants' motion to dismiss Virginia's claims is denied.

25. Wisconsin

The Defendants move to dismiss Wisconsin's parens patriae claims for damages under Wisconsin's antitrust act, Wis. Stat. Ch. § 133.03 et seq., arguing that it does not authorize the Wisconsin attorney general to recover damages on behalf of the state's injured citizens. ECF No. 602 at 23–24 & 24 n.17.

Although the complaint seeks "all remedies available at law or in equity" under Wisconsin's antitrust act, ECF No. 473 ¶ 884, Wisconsin states in its opposition brief that it "is not suing as parens patriae on behalf of individual consumers." ECF No. 602-1 at 28; *see also id.* at 5 n.7. To the extent the complaint may be construed as stating a claim for damages as parens patriae, I find that Wisconsin has abandoned that claim. The motion to dismiss Wisconsin's parens patriae claims for damages is granted. Wisconsin may still seek other forms of relief, monetary or otherwise, available under its antitrust act.

26. <u>Wyoming</u>

The Defendants move to dismiss Wyoming's claims of price fixing or market allocation under its consumer protection statute, the Wyoming Consumer Protection Act ("WCPA"). Wyo. Stat. § 40-12-105 et seq. The motion is denied.

The Defendants argue that Wyoming has failed to state a claim under the WCPA because the enumerated conduct that the statute defines as deceptive trade practices does not include the Complaint's allegations of price fixing or market allocation. ECF Nos. 602 at 28–29; 602-2 at 35. The WCPA, however, includes a catch-all provision for "unfair or deceptive acts or practices." Wyo. Stat. § 40-12-105(a)(xv). The Complaint alleges that the Defendants "engaged in deceptive acts or practices by, among other things, misrepresenting or omitting material facts about the price and cost of merchandise," ECF No. 473 ¶ 887, and "unfair acts or practices by, among other things, entering into agreements or becoming parties to plans to prevent competition or to control or influence prices," *id.* ¶ 888.

The Wyoming Supreme Court has yet to consider whether the WCPA covers allegations of price fixing, market allocation, or other antitrust violations. In the time since the parties filed their briefs before the MDL court in 2019, however, the Wyoming Supreme Court has addressed the statute's catch-all "unfair or deceptive acts or practices" provision and adopted definitions of "'deceptive practice' . . . as one that is likely to mislead consumers" and "'unfair practice' as one that offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit*, 486 P.3d 964, 972 (Wyo. 2021) (quoting *Nicklas v. Pro. Assistance, LLC*, No. 18-CV-0066-SWS, 2018 WL 8619646, at *3 (D. Wyo. Sept. 26, 2018)).[16] The practices alleged in the complaint fit

---

[16] This instruction postdates District Court cases that dismissed claims brought under the WCPA

these descriptions. For example, the complaint alleges that Defendants Heritage and Teva conspired in raising the price of the generic drug Theophylline, and that upon receiving an email from a consumer, Teva then discussed providing a deceptive response to the public. ECF No. 473 ¶¶ 431–34. Moreover, contrary to the Defendants' argument, the WCPA's scope is not limited to fraudulent marketing practices. *See, e.g.*, Wyo. Stat. § 40-12-105(a)(xvi) (refusal to remove arrest photographs); *id.* § 40-12-105(a)(xvii) (noncompliance with virtual currency regulation). Absent direct clear authority from Wyoming's highest court demonstrating that the state's consumer protection statute forecloses claims for price fixing or market allocation, I decline to dismiss Wyoming's consumer protection claim at this stage of the proceedings.

The Defendants also argue that Wyoming may not pursue a claim for damages under the WCPA because that statute does not authorize Wyoming to recover damages on behalf of itself or its injured citizens. ECF No. 602 at 24. Wyoming has clarified that it "seeks no such damages" in this action. ECF No. 602-1 at 19. Accordingly, the Defendants' motion as to this issue is denied as moot.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in part and denied in part.

IT IS SO ORDERED.

/s/
_____
Michael P. Shea, U.S.D.J
Hartford, Connecticut
April 25, 2025

---

for alleged antitrust conduct. *Cf. In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1119 (N.D. Cal. 2007).